David A. Ward
**KLUGER HEALEY, LLC**
521 Newman Springs Road, Suite 23
Lincroft, New Jersey 07738
732-852-7500
Attorneys for Plaintiff
  Dward@klugerhealey.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| QUANTUM TECHNOLOGY INNOVATIONS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>SHOWTIME NETWORKS, INC., SHOWTIME DIGITAL, INC. and PARAMOUNT GLOBAL,<br><br>*Defendants*. | CIV. NO.   24-cv-1103<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Quantum Technology Innovations, LLC (hereinafter "QTI"), by and through its undersigned attorneys, files this Complaint for Patent Infringement against Defendants Showtime Networks, Inc., Showtime Digital, Inc. and Paramount Global and alleges as follows.

**NATURE OF ACTION**

1. This is an action for infringement of United States Letters Patent No. under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

**THE PARTIES**

2. Plaintiff QTI is a limited liability corporation organized and existing under the laws of the State of Wyoming with its principal place of business at 1712 Pioneer Ave Suite 500,

Cheyenne, Wyoming 82001. QTI is in the business of licensing patented technology. QTI is the assignee of all right, title, and interest in United States Letters Patent No. 7,650,376.

3. On information and belief, Defendant Showtime Networks, Inc, is a Delaware corporation with a place of business in this District at 1515 Broadway, New York, NY 10036. Defendant can be served with process through its registered agent, Corporation Service Company, 80 State Street, Albany, NY 12207.

4. On information and belief, Defendant Showtime Digital, Inc, is a Delaware corporation with a place of business in this District at 51 W 52nd Street, New York, NY 10019. Defendant can be served with process through its registered agent, Corporation Service Company, 80 State Street, Albany, NY 12207.

5. On information and belief, Defendant Paramount Global, is a Delaware corporation with a place of business in this District at 1515 Broadway, New York, NY 10036. Defendant can be served with process through its registered agent, Corporation Service Company, 80 State Street, Albany, NY 12207.

## **JURISDICTION**

6. The claims in this action arise under the Patent Laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction over the patent infringement claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. Defendants are subject to this Court's specific and general personal jurisdiction, due at least to their substantial business conducted in this forum, directly and/or through one or more of its subsidiaries, affiliates, and/or agents, including (i) having solicited business in the State of New York, including this District, transacted business within the State of New York,

including this District, and/or attempted to derive financial benefit from residents of the State of New York, including this District, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in New York and in this District; and (iii) either alone or in conjunction with others, having committed acts of infringement within this District and/or induced others to commit acts of infringement within this District. Defendants have, directly and/or through a network of subsidiaries, affiliates, and/or agents, purposefully and voluntarily placed infringing products and services in the stream of commerce knowing and expecting them to be purchased and used by consumers in New York and in this District.

8. On information and belief, Defendants, directly and/or through one or more subsidiaries, affiliates, and/or agents, have advertised and continue to advertise (including through websites), used, offered to sell, sold, distributed, and/or induced the sale and/or use of infringing products and services in the United States and in this District. Defendants have, directly and/or through a distribution network, purposefully and voluntarily placed such products and services in the stream of commerce via established channels knowing and expecting them to be purchased and used by consumers in the United States and this District. Defendants have committed acts of direct infringement in New York and in this District and/or committed indirect infringement based on acts of direct infringement by others in New York and in this District, including Defendants' subsidiaries, affiliates, and/or agents and Defendants' customer-users.

9. On information and belief, Defendants maintain a corporate presence in New York and in this District directly and/or through their subsidiaries, affiliates, and agents. On information

3

and belief, Defendants, directly and/or through one or more subsidiaries, affiliates, and/or agents, have regularly conducted and/or solicited business, engaged in other persistent courses of conduct, and/or derived substantial revenue from products and services provided to businesses and/or individuals in New York and in this District.

10. On information and belief, Defendants and their subsidiaries and affiliates have operated as agents of one another and vicariously as parts of the same business group to work in concert together. On information and belief, Defendants' subsidiaries and affiliates advertise, promote, use, offer to sell, distribute, and/or sell infringing products and services in the United States and this District at the direction and under the control of Defendant.

11. On information and belief, Defendants, directly and/or and through the activities of at least their subsidiaries, affiliates, and agents, conduct business in New York, including advertising, using, offering to sell, distributing, and selling infringing products and services in this District. Defendants, directly and/or through at least their subsidiaries, affiliates, and agents, place such infringing products and services into the stream of commerce via established channels knowing or understanding that such services would be offered for sale, sold, and/or used in the United States, including in the State of New York, and in this District. The exercise of jurisdiction over Defendants would therefore not offend the traditional notions of fair play and substantial justice.

## **VENUE**

12. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(c)(2) and 1400(b) because Defendants each have a regular and established place of business in this District.

**THE PATENT IN SUIT**

13. On January 19, 2010, United States Letters Patent No. 7,650,376 ("the '376 patent"), entitled "CONTENT DISTRIBUTION SYSTEM FOR DISTRIBUTING CONTENT OVER A NETWORK, WITH PARTICULAR APPLICABILITY TO DISTRIBUTING HIGH-BANDWIDTH CONTENT," was duly and legally issued by the United States Patent & Trademark Office. A copy of the '376 patent is attached hereto as Exhibit 1.

14. The '376 Patent issued from U.S. Patent Application No. 09/717,184, which was filed on November 20, 2000. The inventor of the '376 patent has assigned all of his rights, title, and interest in and to the '376 patent to QTI.

15. QTI is the current and sole owner of all rights, title and interest in and to the '376 patent and, at a minimum, of all substantial rights in the '376 patent, including the exclusive right to enforce the patent and all rights to pursue past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the '376 patent.

14. Defendants have had actual notice of the '376 Patent and Defendants' infringing activities since at least the filing of this Complaint.

**Overview of the State of the Art**

15. The '376 patent relates to the provision of content over a network by a content provider. In particular, the invention relates to the provision over a network of high-bandwidth content and to the provision of content over a network by enlisting one or more network sites to facilitate the distribution of content on behalf of a content provider.

16. As described in the specification of the '376 patent, at the time of the invention, an ongoing problem for content delivery networks was the delivery of high-bandwidth content in a satisfactory manner. High-bandwidth content is any content that requires relatively (as compared to the bandwidth capabilities of the network) large data transmission rates in order to effect transmission of the content within an acceptable period of time. High-bandwidth content can be, for example, a single set of data intensive content (*e.g.*, video content, three-dimensional visual still images). High-bandwidth content can also be multiple sets of content that are to be transmitted at the same time (*e.g.*, customized content) so that, together, the sets of content are data intensive.

**The Patented Invention**

17. As described in the specification of the '376 patent, the systems and methods of the present invention enable the distribution of content (in particular, data intensive content such as video content) by a content provider over a network (*e.g.*, a computer network such as the Internet, a television network) by making use of network site(s) throughout the network to dispense some part or all of the content on behalf of the content provider to network site(s) that desire to receive the content.

18. According to certain embodiments, the provision of content over a network is effected by 1) receiving a request from a client for specified content; 2) communicating to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server; and 3) ascertaining that the node server transmitted the specified content to the client, wherein an owner of the node server is offered an incentive as compensation for transmission of the specified content to the

client.

## The Claims are Directed to Patentable Subject Matter

19. The inventions claimed in the '376 patent include a computer readable storage medium (or media) encoded with at least one computer program that includes instructions for effecting the provision of content over a network, those instructions comprising: instructions for receiving a request from a client for specified content; instructions for communicating to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server; and instructions for ascertaining that the node server transmitted the specified content to the client, wherein an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client.

## The claims are directed to a solving an existing problem with content distribution

20. The inventions claimed in the '376 patent are directed to systems and methods of distributing data intensive content. This is a substantial improvement over prior art systems and methods.

21. More specifically, as described in the specification of the '376 patent, by using other sites on a network (node servers) as servers from which to distribute content on behalf of a core server, a very powerful system for distribution of content (and, in particular, high-bandwidth content) over a network is created. For example, with prior art systems, it was generally not possible to distribute high-bandwidth content (e.g., video content) from a single network site so that the content is delivered rapidly enough to another network site to produce a satisfying experience for the content user (*e.g.*, viewer) at that network site. The claimed invention, however,

can be used to facilitate the distribution of a single set of data intensive content over a network, *e.g.*, any type of video content distribution on the Internet.

### The claims are not directed to an abstract idea or law of nature

22. The claims of the '376 patent are not directed to an abstract idea or law of nature.

23. Claim 37 of the '376 patent is directed to a computer readable storage medium, which is a tangible object and therefore neither an abstract idea or law of nature. The instructions contained on that computer storage medium relate to an improved method for content distribution, which is also not an abstract idea or law of nature.

### The claims do not preempt their field

24. The claims of the '376 patent do not merely recite a generic way of distributing content. Rather, the claimed inventions are directed to a specific way of distributing content using other sites on a network as node servers.

25. Alternative ways exist and are known for distributing content on a network.

### DEFENDANTS' SYSTEM AND SERVICES

26. On information and belief, Defendants offer an app that includes instructions for effecting the provision of content (*e.g.*, music, comedy, podcasts, etc.) over a network (*e.g*, the internet).

27. Despite not having a license to the '376 patent, Defendants offer an app that incorporates the technology covered by the claims of the '376 patent.

### FIRST CAUSE OF ACTION
### (Direct Infringement of the '376 Patent)

28. QTI hereby repeats and re-alleges the allegations contained in paragraphs 1 to 27 as if fully set forth herein.

29. The '376 patent is presumed valid under 35 U.S.C. § 282.

30. QTI has complied with the requirements of 35 U.S.C. § 287 as have all prior owners of the '376 patent.

31. The accused products and services are covered by one or more claims of the '376 patent and therefore infringe the '376 patent. Claim charts attached as Exhibit 2 identify specifically how each element of at least claim 37 of the '376 patent is practiced by the app offered by Defendant.

32. Defendants' direct infringement of the '376 patent has injured and continues to injure QTI and QTI is entitled to recover damages adequate to compensate for that infringement in an amount to be proven at trial, but not less than a reasonable royalty.

33. Despite Defendants' knowledge of the '376 patent and its infringing activities, Defendants have continued to use, sell, and/or offer for sale products and services falling within the scope of one or more claims of the '376 patent, without authority from QTI. Defendants have therefore acted recklessly and Defendants' direct infringement of the '376 patent has been willful, egregious, deliberate and intentional, justifying an award to QTI of increased damages and attorneys' fees and costs.

34. Even after becoming aware of its direct infringement of the '376 patent, on information and belief, Defendants have made no effort to alter its services or otherwise attempt to design around the claims of the '376 patent in order to avoid infringement. These actions demonstrate Defendants' blatant and egregious disregard for QTI's patent rights.

35. As a result of Defendants' unlawful activities, QTI has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Defendants' continued

direct infringement of the '376 patent causes harm to QTI in the form of loss of goodwill, damage to reputation, loss of business opportunities, lost profits, inadequacy of monetary damages, and/or direct and indirect competition. Monetary damages are insufficient to compensate QTI for these harms. Accordingly, QTI is entitled to preliminary and permanent injunctive relief.

## SECOND CAUSE OF ACTION
**(Indirect Infringement of the '376 Patent)**

36. QTI hereby repeats and re-alleges the allegations contained in paragraphs 1 to 35 as if fully set forth herein.

37. Defendants' customer end-users directly infringe the claims of the '376 patent, including at least claim 37 through their use of the app offered by Defendant in the United States.

38. Defendants indirectly infringe by inducing infringement of the claims of the '376 patent by aiding and abetting consumer end-users to use Defendants' app in its normal and customary way in the United States and in this District and by contributing to infringement of the claims of the '376 patent by supplying an app to consumer end-users and providing instructions to those consumer end-users for using that app.

39. Defendants aid and abet consumer end-users in infringing the claims of the '376 patent with the knowledge of, and the specific intent to cause, the acts of direct infringement performed by these consumer end-users. On information and belief, despite having knowledge of the '376 patent, Defendants continue and will continue to provide and support the app through which customer end-users directly infringe the '376 patent.

40. Defendants' indirect infringement of the '376 Patent has injured and continues to injure QTI and QTI is entitled to recover damages adequate to compensate for that infringement in an amount to be proven at trial, but not less than a reasonable royalty.

41. Despite Defendants' knowledge of the '376 patent and its infringing activities and the infringing activities of consumer end-users of Defendants' app, Defendants have continued to provide and support products and services falling within the scope of one or more claims of the '376 Patent, without authority from QTI. Defendants have therefore acted recklessly and Defendants' indirect infringement of the '376 patent has been willful, egregious, deliberate and intentional, justifying an award to QTI of increased damages and attorneys' fees and costs.

42. Even after becoming aware of its indirect infringement of the '376 patent, on information and belief, Defendants have made no effort to alter its services or otherwise attempt to design around the claims of the '376 patent in order to avoid infringement. These actions demonstrate Defendants' blatant and egregious disregard for QTI's patent rights.

43. As a result of Defendants' unlawful activities, QTI has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Defendants' continued indirect infringement of the '376 patent causes harm to QTI in the form of loss of goodwill, damage to reputation, loss of business opportunities, lost profits, inadequacy of monetary damages, and/or direct and indirect competition. Monetary damages are insufficient to compensate QTI for these harms. Accordingly, QTI is entitled to preliminary and permanent injunctive relief.

## PRAYER FOR RELIEF

Wherefore, QTI respectfully prays this Court enter judgment in its favor on each and every Claim for Relief and award to QTI relief, including, but not limited to, the following:

A. Entry of judgment in favor of QTI, and against Defendants, on each and every Claim in this Complaint;

B.   Entry of judgment in favor of QTI, and against Defendants, that Defendants have directly infringed the claims of the '376 patent;

C.   Entry of judgment in favor of QTI, and against Defendants, that Defendants gave indirectly infringed the claims of the '376 patent by inducing the infringement thereof and/or contributing to the infringement thereof;

D.   Entry of judgment in favor of QTI, and against Defendants, that this case is an exceptional case and awarding QTI its reasonable attorney fees and costs pursuant to 35 U.S.C. § 285 and any other applicable statutes, laws, and/or rules; and

E.   Entry of preliminary and permanent injunctions against Defendants, and their respective officers, directors, principals, agents, sales representatives, servants, employees, successors, assigns, affiliates, divisions, subsidiaries, and all those acting in concert or participation with them, from directly infringing, inducing infringement and/or contributing to the infringement of any claim of the '376 patent.

F.   A determination that QTI is the prevailing party and therefore entitled to its taxable costs; and

G.   Entry of judgment in favor of QTI, and against Defendants, awarding QTI such other relief the Court deems just, equitable, and proper.

## **DEMAND FOR A JURY TRIAL**

QTI requests a trial by jury, under Rule 38 of the Federal Rules of Civil Procedure, for all issues so triable.

Dated: February 15, 2024

Respectfully submitted,
**KLUGER HEALEY, LLC**
521 NEWMAN SPRINGS ROAD, SUITE 23
LINCROFT, NJ  07738
Tel:     (973) 307-0800
Fax:    (888) 635-1653
dward@klugerhealey.com


By:   /s David A. Ward
          DAVID A. WARD