**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| QUANTUM TECHNOLOGY INNOVATIONS, LLC, <br><br><br> Plaintiff, <br><br><br> v. <br><br><br> SHOWTIME NETWORKS INC., SHOWTIME DIGITAL INC., AND PARAMOUNT GLOBAL, <br><br> Defendants. | Civil Action No. 24-cv-1103 <br><br> **ORAL ARGUMENT REQUESTED** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>

<u>**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.........................................................................................................i

TABLE OF AUTHORITIES ................................................................................................ ii

I.      Introduction and Summary of Argument ...................................................... 1

II.     Background .......................................................................................................... 3

III.    Legal Standards ................................................................................................... 7

        A.      Rule 12(b)(6) Motion to Dismiss ........................................................ 7

        B.      Patent Eligibility Under 35 U.S.C. § 101 ........................................... 7

        C.      Patent Eligibility is Properly Decided on a Motion to Dismiss ......... 8

        D.      Pleading Requirements for Patent Infringement Allegations ............. 9

IV.     Argument ........................................................................................................... 10

        A.      The '376 Patent is Invalid under 35 U.S.C. § 101 ........................... 10

        B.      The Complaint Fails to State a Claim Because It Does Not Plausibly Allege
                All Limitations of the Asserted Claim ............................................. 18

        C.      Plaintiff's Direct Infringement Allegations are Insufficient ........... 20

V.      Conclusion ........................................................................................................ 23

## **TABLE OF AUTHORITIES**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016) ..................... 13

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ............................................... passim

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 7

*AuthWallet, LLC v. Block, Inc.*, 602 F. Supp. 3d 620 (S.D.N.Y. 2022), aff'd sub nom. *In re*

   *AuthWallet, LLC,* No. 2022-1842, 2023 WL 3330298 (Fed. Cir. May 10, 2023)..... 8, 12, 14, 17

*Automated Tracking Sols., LLC v. The Coca-Cola Co.*, 723 Fed. Appx. 989 (Fed. Cir. 2018) ... 18

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012)9, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 7, 20

*Bilski v. Kappos*, 561 U.S. 593 (2010)................................................................... 1, 14

*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021) ...................................... 3, 9, 19

*Bridge & Post, Inc. v. Verizon Commc'ns*, Inc., 778 F. App'x 882 (Fed. Cir. 2019).................... 15

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018)................................ 1, 11, 15

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014).................................................... 16

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) ................................. 13

*Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352 (Fed. Cir. 2017)......... 9

*Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015) ......................................... 22

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed.

   Cir. 2014)..................................................................................................... 18

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) ........................... 14

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) .................................................... 8, 17

*Diamond v. Diehr*, 450 U.S. 175 (1981).......................................................................... 1

*Diatek Licensing LLC v. AccuWeather, Inc.*, 1:21-cv-11144-JPC (S.D.N.Y. Mar. 24, 2023) ....... 9

*DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271 (S.D.N.Y. 2014), aff'd, 599

    F. App'x 956 (Fed. Cir. 2015) (per curiam) ................................................................................ 9

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018)) ............................... 10

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178 (Fed. Cir. 2020) ........ 9

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) .................... 11, 13, 16, 17

*EscapeX IP LLC v. Block, Inc.*, 652 F. Supp. 3d 396 (S.D.N.Y. 2023) .......................................... 9

*In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607 (Fed. Cir. 2016) ........................................... 13

*Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015) ....................... 14

*Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315 (Fed. Cir. 2017) ................................ 16

*Invincible IP LLC v. SAS Inst. Inc.*, No. 22 CIV. 4490 (AKH), 2022 WL 3668322 (S.D.N.Y.

    Aug. 25, 2022) ........................................................................................................................ 3

*Kickstarter, Inc. v. Fan Funded, LLC*, No. 11 CIV. 6909 KPF, 2015 WL 3947178 (S.D.N.Y.

    June 29, 2015), aff'd, 654 F. App'x 481 (Fed. Cir. 2016) ...................................................... 11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) ............................ 8, 15

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ............................................ 7

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314 (Fed. Cir. 2016)) ............. 18

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) ........................................ 8

*Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382 (S.D.N.Y. 2018), aff'd, 792 F. App'x

    949 (Fed. Cir. 2020). ............................................................................................................. 18

*Realtime Tracker, Inc. v. RELX, Inc.*, 659 F. Supp. 3d 384 (S.D.N.Y. 2023) ................... 9, 15, 18

*Sanderling Management, Ltd., v. Snap, Inc.*, 65 F.4th 698 (Fed. Cir. 2023) ................................. 8

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) .......................................... 8, 17

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017) ........................ 7

*Stylitics, Inc. v. Findmine, Inc.*, 1:22-cv-02983-PGG (S.D.N.Y. Feb 21, 2023) ........................... 9

*Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358 (Fed. Cir. 2021) ............................... 10

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014).................................................. 13

*Verint Sys. Inc. v. Red Box Recorders Ltd.*, 226 F. Supp. 3d 190 (S.D.N.Y. 2016) .................... 12

*WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929 (Fed. Cir. 2020) ......................................... 7, 12

**Statutes**

35 U.S.C. § 101 ................................................................................................................... passim

35 U.S.C. § 271 ................................................................................................................... passim

Defendants Showtime Networks Inc., Showtime Digital Inc., and Paramount Global (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint of Plaintiff Quantum Technology Innovations, LLC ("Plaintiff") for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff alleges that Defendants infringe U.S. Patent No. 7,650,376 (the "'376 Patent") by distributing media content via the website https://www.sho.com and paying a third-party (*e.g.*, Akamai Technologies) for hosting the content. *See* Dkt. 1-2, pp. 1, 16-17. Defendants move to dismiss the claims asserted against them for three reasons.

First, the claims of the '376 Patent are not patent-eligible under 35 U.S.C. § 101. As explained below, the only asserted claim (claim 37) is directed to the abstract idea of incentivizing performance of a service—in particular, "an owner of [a] node server is offered an incentive as compensation for transmission of the specified content." *See* Section IV(A). In other words, Plaintiff's claims are directed to the most fundamental of all business practices—compensation for services—in the field of content distribution. Thus, the asserted claim falls squarely in the category of claims related to traditional business practices, applied in a given technology area, that the courts have repeatedly found to be directed to abstract ideas. *See id.*; *see also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285-86 (Fed. Cir. 2018) ("fundamental practices long prevalent in our system of commerce are abstract ideas"); *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010) ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment.") (citing *Diamond v. Diehr*, 450 U.S. 175, 191-92 (1981)). Claims directed to abstract ideas are not eligible for patent protection. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

Nothing that Plaintiff has alleged in its Complaint, or that Plaintiff could plausibly assert, transforms this abstract claim into patentable subject matter.  This patent does not involve any new hardware, software, or other computer technology for content distribution over a network.  To the contrary, the specification of the '376 Patent admits that content delivery networks using a "multiplicity of servers at key places (nodes)" were generally known at the time of filing the patent.  *See* Ex. A, '376 Patent at 1:40-56.[1]  The asserted claim also does not recite any hardware more specific than a generic network, *i.e.*, a network with a "node server" and "client."  Rather, it simply recites an existing and known network system to implement the abstract idea of incentivization as compensation, and patent claims directed to traditional business practices without improving the underlying computer technology are ineligible for patent protection as a matter of law.  Because the '376 Patent is the only patent asserted in the Complaint, and the asserted claim is not patent-eligible under 35 U.S.C. § 101, this case should be dismissed with prejudice.

<u>Second</u>, the Complaint fails to state a claim because it does not plausibly allege infringement of all limitations of the asserted claim.  Specifically, Plaintiff did not plausibly allege in either the Complaint or the attached claim charts that the last limitation of claim 37—requiring "instructions for ascertaining that the node server transmitted the specified content to the client" and that "an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client"—is met by the Defendants' accused streaming app.  *See* Section IV(B).  Instead of providing facts that could plausibly support an allegation that Defendants' product includes these specific limitations, Plaintiff points to unrelated facts and relies on assumptions regarding the business practices of third parties.  *See id.*  Plaintiff merely argues that

---

[1] Exhibits cited in this memorandum refer to Exhibits A-C to the Declaration of Michael H. Jones, submitted concurrently herewith.

content is received by clients, and then assumes that Defendants "must" satisfy the claim because an unrelated party, Akamai Technologies, charges for its web-hosting services—irrespective of whether said charges are tied to transmission of the specified content from a particular node server, as required by the claim. *See* Dkt. 1-2, p. 16. This is insufficient and fails to provide notice as to any specific actions that allegedly meet the claim requirements. *See Invincible IP LLC v. SAS Inst. Inc.*, No. 22-4490, 2022 WL 3668322, at *1 (S.D.N.Y. Aug. 25, 2022) ("at a bare minimum, to survive a motion to dismiss, a complaint alleging patent infringement must … allege that that the accused products meet each and every element of at least one claim of the asserted patents."); *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) ("Under *Iqbal/Twombly*, allegations that are 'merely consistent with' infringement are insufficient.").

Third, Plaintiff's direct infringement allegations are insufficient for the additional reasons that: (i) neither the Complaint nor the claim chart identify a "tangible object" that Defendants make, use, sell, or offer to sell, as would be required for direct infringement under 35 U.S.C. § 271(a); (ii) the claim chart inconsistently maps the claimed "instructions" to both the client's device and a "main server," without connection to the accused streaming app; and (iii) the indirect infringement allegations highlight the strained nature of Plaintiff's direct infringement theory, confirming that direct infringement by any of the Defendants is implausible.

## II.    BACKGROUND

### A.  Parties

Defendants are leading producers of premium entertainment content and provide popular video streaming platforms. For instance, Defendants were early adopters of online streaming of original content, feature films, comedy specials, documentaries, and sports programming—first launching a streaming website in 2010 (as "Showtime Anytime") and a counterpart app on the iOS

App Store and on the Google Play platform in 2011 and 2012, respectively. Defendants' streaming services have since evolved, expanding the ever-growing libraries of content and enhancing user experience in terms of accessibility and quality.

Plaintiff, which does not offer any products or services of its own, is a patent assertion entity. Dkt. 1, ¶ 2 ("QTI is in the business of licensing patented technology."). Plaintiff was incorporated in June 2021 and purportedly acquired the '376 Patent from High Bandwidth, LLC in the same month.[2] Since acquiring the '376 Patent, Plaintiff has asserted it in nine different actions—five of which settled prior to any defendant's answer.

### B.  The '376 Patent

The '376 Patent is titled "Content distribution system for distributing content over a network, with particular applicability to distributing high-bandwidth content." The specification and claims are directed to the "provision of content over a network by a content provider" and "enlisting one or more network sites to facilitate the distribution of content," where the enlisted network sites are "offered an incentive as compensation" for their distribution of the content. Ex. A, '376 Patent at 1:20-26; *id.* at claims 1, 35-37, 55-57, 90. The '376 Patent expires later this year.

In the "Background of the Invention," the specification describes well-known network systems for delivering content over the Internet using a "multiplicity of servers at key places (nodes)." Ex. A, '376 Patent at 1:40-56 ("[S]everal servers on which copies of the content are stored have been connected worldwide at different nodes on the Internet to effect distribution of the content."). The specification describes the alleged invention as the distribution of content,

---

[2] *See* Ex. B, Assignment at p. 5. The attachment to the assignment cover sheet does not actually reference the asserted '376 Patent or Plaintiff. Rather, it relates to the assignment of unrelated patents between different parties.

"facilitated by making use of network site(s) throughout the network to dispense some part or all of the content on behalf of the content provider."  Ex. A, '376 Patent at 2:8-24.  Network sites are recruited to dispense content by offering incentives:

> In one particularly advantageous aspect of the invention, **the owner of a site on the network can be provided with one or more incentives to make that network site a node server**. Such incentives can include, for example, access to premium content from the core server (or other content providing site), access to free content from a content providing site (e.g., a free movie, free software, a free software upgrade), access to content that has been modified in a desirable way (e.g., content without advertising), loyalty program credits (e.g., frequent flyer miles), cash, or some combination of such incentives…. [T]he invention contemplates the use of any incentive or combination of **incentives to induce a network site owner to allow their site to be used as a node server**.

*Id.* at 4:34-47 (emphasis added); *see also id.* at 2:25-34.

> Independent claim 37 is the only claim identified in the Complaint and reads:

> 37. A computer readable storage medium or media encoded with one or more computer programs including instructions for effecting the provision of content over a network, comprising:

>> instructions for receiving a request from a client for specified content;

>> instructions for communicating to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server; and

>> instructions for ascertaining that the node server transmitted the specified content to the client, **wherein an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client**.

Ex. A, '376 Patent at 27:62-28:9 (emphasis added).  As illustrated above, the asserted claim recites conventional instructions for handling requests for content, and then echoes the purported advancement of the specification—offering an incentive for transmission of specified content.

### C.  Prosecution History of the '376 Patent

The '376 Patent issued from Pat. Appl. No. 09/717,184 (the "'184 Application), which was filed on March 27, 2000, and claims priority to Provisional Appl. No. 60/192,165 as a "continuation-in-part."  Ex. A, '376 Patent at 1:10-16.

The '376 Patent includes 123 claims, all of which were rejected by the Examiner under 35 U.S.C. §§ 102 and 103 as anticipated by or obvious in view of prior art, or as directed to ineligible subject matter under § 101, at various points during prosecution.  *See* Ex. C, File History at pp. 1-16 (12-02-2005 Non-Final Rejection); pp. 29-52 (06-01-2006 Final Rejection); pp. 73-88 (02-04-2009 Final Rejection); pp. 89-96 (03-17-2009 Non-Final Rejection).  The applicant was able to gain allowance in two ways:

First, the applicant emphasized the "incentive as compensation" aspect of the claims to distinguish the prior art.  *See, e.g.*, Ex. C, File History at pp. 17-28 (03-02-2006 Applicant Arguments), p. 20 ( "Kenner et al. also do not teach or suggest that an owner of a node server can be offered an incentive as compensation for transmission of specified content to a client."); pp. 53-72 (12-01-2006 Applicant Arguments), p.61 (arguing that the prior art was directed to "compensation to a content owner for allowing its content to be provided to others" and "not compensation for transmitting specified content to others" as required by the claims), pp. 61-62 ("[E]ven assuming arguendo that provision of a free subscription and/or a free clip is compensation, that compensation is to a client, not a node server owner…. Moreover, such 'compensation' is not given for transmitting content via a network.").

Second, the applicant was able to overcome the subject matter eligibility rejections based on § 101 by adding limitations related to specific hardware, such as servers.  *See, e.g., id.* at pp. 97-139 (06-17-2009 Applicant's Amendments to the Claims and Arguments), p. 137 (arguing

addition of limitations relating to a "core server" and "node server" overcomes §101 rejection). While this may have been a defensible argument in 2009 when the patent was allowed, the legal framework for assessing patent eligibility has changed significantly since that time. In particular, the Federal Circuit has made clear that invoking the use of computers and familiar networks as a tool to perform a fundamental economic practice does not make the claims any less abstract. *See, e.g., WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929, 933 (Fed. Cir. 2020) (collecting cases). The '376 Patent would not have been allowed under the current law regarding patent eligibility.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, a court "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," such as the patent claims, specification, or prosecution materials. *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017).

### B.   Patent Eligibility Under 35 U.S.C. § 101

Section 101 allows inventors to obtain patents on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C.

§ 101.  However, "this provision contains an important implicit exception: Laws of nature, natural phenomena, or abstract ideas are not patentable."  *Alice*, 573 U.S. at 216 (citations omitted).  To guide the inquiry into whether a patent is drawn from patent-ineligible subject matter, the Supreme Court has established a two-step framework, known as the *Alice* test, in which a court determines: (1) "whether the claims at issue are directed to one of those patent-ineligible concepts," *i.e.*, a law of nature, natural phenomenon, or abstract idea, and, if so, (2) whether the elements of the claim, considered "both individually and 'as an ordered combination' … 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)).  The Supreme Court has described step two of this analysis as a search for an "inventive concept."  *Id.* at 217-18 (citations omitted).  The focus of a § 101 inquiry is on the asserted claims, and not what is disclosed in the specification or alleged in the pleadings.  *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012); *see also AuthWallet, LLC v. Block, Inc.*, 602 F. Supp. 3d 620, 635 (S.D.N.Y. 2022), aff'd sub nom. *In re AuthWallet, LLC,* No. 22-1842, 2023 WL 3330298 (Fed. Cir. May 10, 2023).

### C.    Patent Eligibility Is Properly Decided on a Motion to Dismiss

The Federal Circuit has affirmed that subject matter eligibility under Section 101 is a question of law suitable for resolution at the pleading stage of a patent case.  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) ("Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law.").  And, because patent eligibility is a matter of law, "courts are not required to defer to Patent Office determinations as to eligibility." *Sanderling Mgmt., Ltd., v. Snap, Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023) (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) ("Patent eligibility under 35 U.S.C. §

101 is an issue of law reviewed de novo.")).   Indeed, courts in this district have routinely invalidated patents under § 101 pursuant to Rule 12(b)(6).  *See, e.g., Realtime Tracker, Inc. v. RELX, Inc.*, 659 F. Supp. 3d 384 (S.D.N.Y. 2023); *EscapeX IP LLC v. Block, Inc.*, 652 F. Supp. 3d 396 (S.D.N.Y. 2023); *Diatek Licensing LLC v. AccuWeather, Inc.*, 1:21-cv-11144-JPC, Dkt. 31 (S.D.N.Y. Mar. 24, 2023); *Stylitics, Inc. v. Findmine, Inc.*, 1:22-cv-02983-PGG, Dkt. 48 (S.D.N.Y. Feb 21, 2023).

Likewise, claim construction "is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012); *see also, e.g., Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (collecting cases).  And where the invention disclosed is invalid "under any reasonable construction," there is no need for the Court to undertake claim construction.  *Realtime Tracker, Inc.*, 659 F. Supp. 3d at 401 (quoting *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 289–90 (S.D.N.Y. 2014), aff'd, 599 F. App'x 956 (Fed. Cir. 2015) (per curiam)).  Here, there are no claim construction issues that would affect the patent eligibility analysis.

### D.   Pleading Requirements for Patent Infringement Allegations

A patent infringement plaintiff "cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."  *Bot M8 LLC*, 4 F.4th at 1353-54  ("[A]llegations that are merely consistent with infringement are insufficient," and where "the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim.") (emphasis in original).  "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Id.* at 1353.

Direct infringement of a claim under 35 U.S.C. § 271(a) requires a plaintiff show the accused infringer's manufacture, sale, offer to sale, or use "of each and every element of the [claim]." *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1368-69 (Fed. Cir. 2021). Thus, to survive a motion to dismiss, a complaint must "allege that the accused products meet each and every element of at least one claim of the asserted patents." *Invincible IP LLC*, 2022 WL 3668322 at *1 (citing *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018)).

## IV.     ARGUMENT

### A.     The '376 Patent Is Invalid Under 35 U.S.C. § 101

Despite Plaintiff's framing of the claims as relating to distribution of content, the patent was allowed over prior art for its inclusion of the limitation requiring "incentivization as compensation." *See, supra,* Section II(C). Indeed, Plaintiff's allegations of infringement are based on the assumption that Defendants "must" pay the owner of a node server (e.g., Akamai Technologies). Dkt. 1-2, p. 16. But providing compensation in return for performance of a service is a fundamental economic practice long prevalent in our system of commerce. And the claims' recitation of generic network elements does not transform said abstract idea into a patent-eligible application. Accordingly, the claims are not patent-eligible under 35 U.S.C. § 101 as a matter of law, and the Complaint should be dismissed with prejudice.

### i.     *Alice* Step One: The '376 Patent Is Directed to an Abstract Idea

The claims are directed to the abstract idea of providing compensation for a service. This abstract idea is found in claim 37's requirement that "an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client." *See* Ex. A, '376 Patent at 28:5-9.

At *Alice* step one, a court analyzes the claims to "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. 208 at 217 (citation omitted).

The Federal Circuit has "described the first-stage inquiry as looking at the focus of the claims, their character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citations and internal quotation marks omitted). Where, as here, the claims at issue involve computers, the Federal Circuit has instructed that courts must "consider whether the focus of the claims is on a specific asserted improvement in computer capabilities, or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *BSG Tech LLC*, 899 F.3d at 1286 (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016)).

The '376 Patent is not directed to a specific improvement in computer functionality, but, instead, to incentivization as compensation for the distribution of content. The '376 Patent references modern-day technology like "servers," "Internet," "latency," "bandwidth," etc., but providing compensation for a service is a fundamental business practice that existed well before content distribution via networks. Parties have relied upon the sort of negotiated compensation for services described in the patent for centuries. *See* Ex. A, '376 Patent, 10:11-16 ("Node server owners can, for example, visit the core server site to **work out an arrangement** with the core server owner regarding which video programs or parts of video programs are to be distributed by the node server **and the incentive arrangement** associated with distribution of those video programs.") (emphasis added); *id.* at 4:37-44 ("incentives can include … cash"). "The Supreme Court has held that fundamental practices long prevalent in our system of commerce are abstract ideas." *BSG Tech* LLC, 899 F.3d at 1285 (citing *Alice*, 573 U.S. at 219).

Here, the focus of the claims is providing "an incentive as compensation" for a service. Courts have routinely held that incentivization or compensation are abstract ideas. *See, e.g., Kickstarter, Inc. v. Fan Funded, LLC*, No. 11-6909 KPF, 2015 WL 3947178, at *11 (S.D.N.Y. June 29, 2015), aff'd, 654 F. App'x 481 (Fed. Cir. 2016) (finding "concept of incentive-based

funding is incontestably similar to other fundamental economic concepts, and to other types of organizing human activity, both of which have been found to be abstract ideas by the Supreme Court and the Federal Circuit") (internal citations omitted) (collecting cases); *AuthWallet, LLC*, 602 F. Supp. 3d at 631 (finding patent "directed to the abstract idea and well-established business practice of processing payments during a sales transaction where a benefit, such as a discounted payment, is given to the purchaser for use in future transactions").

Moreover, the addition of conventional computer components to well-known business practices does not change the *Alice* step one analysis. The Federal Circuit and Supreme Court have repeatedly held that "use of standard computers and networks to carry out [fundamental economic practices]—more speedily, more efficiently, more reliably, does not make the claims any less directed to that abstract idea." *WhitServe LLC*, 809 F. App'x at 933 (collecting cases); *see also Verint Sys. Inc. v. Red Box Recorders Ltd.*, 226 F. Supp. 3d 190, 194–95 (S.D.N.Y. 2016) (collecting cases). For example, in *AuthWallet, LLC v. Block, Inc.*, this Court held, and the Federal Circuit affirmed, that a patent relating to novel and improved methods and systems for processing financial transaction data was "directed to the abstract idea and well-established business practice of processing payments during a sales transaction where a benefit, such as a discounted payment, is given to the purchaser for use in future transactions." *AuthWallet, LLC*, 602 F. Supp. 3d at 631 (further reasoning that patent described use of computer technology to provide the same "discounted transaction that is common among brick-and-mortar retailers"). Indeed, in *Alice* itself, the Supreme Court found the patent-at-issue to be directed to the abstract concept of intermediated settlement, "a fundamental economic practice long prevalent in our system of commerce," despite the claim's recitation of a generic computer. *Alice*, 573 U.S. at 218-23 (emphasizing long-held precedent that "the prohibition against patenting abstract ideas cannot be

circumvented by attempting to limit the use of the idea to a particular technological environment"). Here, the '376 Patent attempts to do the same—claiming the abstract idea of incentivization or compensation for a service by incorporating a generic network system.

Even assuming, *arguendo*, that the network system described as claimed in the '376 Patent is not a recitation of a generic environment, courts have routinely found claims regarding content distribution to be directed to abstract ideas. *See, e.g., Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) (holding "delivering user-selected media content to portable devices is an abstract idea"); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) (determining claims directed to an abstract idea when "drawn to the idea of capturing and transmitting data from one device to another"); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (concluding claims reciting "recording ... transmitting ... and storing" digital images were directed to an abstract idea); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (finding the "process of receiving copyrighted media,…offering the media in exchange for watching the selected ad,…allowing the consumer access to the media, and receiving payment from the sponsor of the ad all describe an abstract idea"). Moreover, combining abstract ideas—e.g., content distribution and incentivization or compensation for service—does not render the claims patent-eligible. *See Elec. Power Grp., LLC*, 830 F.3d at 1354 (determining claims were "clearly focused on the combination of [multiple] abstract-idea processes," rather than on "an improvement in computers as tools").

In anticipation of a § 101 argument, the Complaint alleges that claim 37 "is directed to a computer readable storage medium, which is a tangible object and therefore neither an abstract idea or law of nature" and that the "instructions contained on that computer storage medium relate to an improved method for content distribution, which is also not an abstract idea or law of nature."

Dkt. 1, ¶ 23.  Both arguments are legally wrong.  First, merely including a computer readable storage medium as a "tangible object" in a claim does not render the claim patent eligible.  *See, e.g.*, *Bilski*, 561 U.S. at 610-11 (2010).  Moreover, changing the form of a claim—e.g., from a method claim to an apparatus or system claim—does not alter the underlying abstract idea.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011) ("[T]he basic character of a process claim drawn to an abstract idea *is not changed* by claiming only its performance by computers, *or by claiming the process embodied in program instructions on a computer readable medium*.") (emphasis added).  Second, simply stating that the "instructions contained on that computer storage medium relate to an improved method for content distribution" does not salvage an otherwise patent-ineligible claim.  *See Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) ("A simple instruction to apply an abstract idea on a computer is not enough.") (citing *Alice*, 573 U.S. at 222).  Regardless, an "improved method for content distribution" is not present in the claims—which instead uses conventional activities previously known to the industry—and thus irrelevant to the § 101 analysis.  *See AuthWallet*, 602 F. Supp. 3d at 635 ("The focus of a Section 101 inquiry is on the asserted claims.").

As a last defense, the Complaint alleges that the claims of the '376 Patent do not preempt their field because they are "directed to a specific way of distributing content using other sites on a network as node servers."  Dkt. 1, ¶ 24.  Again, this is legally irrelevant.  Just because the claims do not preempt all ways of distributing content does not make them any less abstract.  *See OIP Techs., Inc*, 788 F.3d at 1362–63 ("This concept of 'offer based pricing' is similar to other fundamental economic concepts found to be abstract ideas by the Supreme Court and this court…And that the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract.") (internal citations

omitted); *see also Realtime Tracker, Inc.*, 659 F. Supp. at 403; *BSG Tech LLC*, 899 F.3d at 1287 ("a claim is not patent eligible merely because it applies an abstract idea in a narrow way").

> ### ii.    *Alice* Step Two: The '376 Patent Does Not Recite an Inventive Concept

At *Alice* step two, a court must search for an "inventive concept," *i.e.*, an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–18 (quoting *Mayo*, 566 U.S. at 72-73). Specifically, the courts assess "whether the claim limitations *other than* the invention's use of the ineligible concept to which it was directed were well-understood, routine, and conventional." *Bridge & Post, Inc. v. Verizon Commc'ns*, Inc., 778 F. App'x 882, 892 (Fed. Cir. 2019) (citing *BSG Tech LLC*, 899 F.3d at 1290) (emphasis in original).

Claim 37 of the '376 Patent does not contain an "inventive concept" and there is no element or combination of elements that adds "significantly more" to the claim. Importantly, the abstract idea itself—the offer of an incentive as compensation for the transmission of the content—cannot provide this inventive concept to save the claim. *See BSG Tech LLC*, 899 F.3d at 1290 ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention "significantly more" than that ineligible concept."). Thus, the inventive concept must be present in the remainder of the claim in order to survive *Alice* step two.

The Complaint alleges that claimed invention is directed to "systems and methods of distributing data intensive content" and that, in comparison to prior art systems, the claimed invention "can be used to facilitate the distribution of a single set of data intensive content over a network." Dkt. 1, ¶¶ 20-21. Such boilerplate allegations are insufficient to overcome the fact that the claim language itself, when stripped of the limitation requiring "incentivization as

compensation," merely recites receiving and delivering data between devices.  Courts have found such features to be routine computer functions, insufficient to provide an inventive concept.  *See, e.g., Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1329 (Fed. Cir. 2017) (finding "the sending and receiving information to execute the database search, e.g., receiving a request for information and delivering record" to be "routine computer functions"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (holding "[t]hat a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Elec. Power Grp.*, 830 F.3d at 1355 ("[I]nvocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea.") (internal quotations omitted).

Moreover, contrary to Plaintiff's attempt to frame the claimed invention as "a very powerful system for distribution of content (and, in particular, high-bandwidth content) over a network," the only claimed network components are routine servers, fulfilling requests from clients.  Dkt. 1, ¶ 21; *see, supra,* Section II(B) (highlighting the specification's description of known network systems).  Indeed, the '376 Patent goes to great lengths to explain that the claimed features regarding the network and content distribution were conventional:

> "In general, the invention can be implemented using any content distribution network. For example, the invention can be implemented to facilitate distribution of content over a computer network such as the Internet (and, in particular, the World Wide Web portion of the Internet)." (4:63-67)

> "[W]hen the invention is implemented on the Internet, conventional software and hardware, as is well known, can be used to transmit an appropriate Web page or pages from a computer at a core server network site to a computer at the client network site in response to a request received by the core server from the client for an identification of the content available for transmission to the client." (8:36-43)

> "Any network site other than one that is part of the core server can potentially perform the functions of a node server in a system according to the invention." (10:19-22)

> "[T]hese functions can be accomplished using a conventional Web browser that enables a prospective client to access a Web site maintained on the core server. The core server can be implemented to enable the client to communicate with the core server prior to requesting particular content to learn about characteristics of that content and/or possible node servers from which that content can be obtained, so that the client owner can make a preliminary assessment regarding whether it is feasible or desirable to obtain the content." (14:1-10)

Ex A., '376 Patent.  For instance, both the "node server" and "client" of the claim can be implemented on a personal computer.  *See id.* at 11:39-55, 11:61-67, 13:38-44, 13:50-54; *SAP Am., Inc.*, 898 F.3d at 1168 ("the specification makes clear that off-the-shelf computer technology is usable to carry out the analysis").  In light of the specification, the claims require nothing more than "off-the-shelf, conventional computer ... technology for gathering, sending, and presenting the desired information."  *Elec. Power Grp.*, 830 F.3d at 1355.

Further, the unclaimed technical improvements explored in the specification of the '376 Patent are legally irrelevant.  The patent owner did not connect "a powerful system" capable of handling "data intensive" or "high bandwidth content" to the claims, let alone claim 37.  *See generally* Section II(C).  Rather, the patent owner chose to draft the claims with generic network components.  And a court need not consider unclaimed elements in a Section 101 inquiry, as the focus is solely on the claims.  *See Dealertrack, Inc.*, 674 F.3d at 1334; *see also AuthWallet, LLC*, 602 F. Supp. 3d at 635.

### iii.    Claim 37 Is Representative of the Claims of the '376 Patent

Claim 37 of the '376 Patent is the sole claim identified and charted in the Complaint; therefore, only claim 37 is explicitly addressed herein.  However, even if Plaintiff were to assert one or more of the other independent claims of the '376 Patent, those claims are functionally identical in that they are all linked to the same abstract idea as claim 37 and fail to claim eligible subject matter for the same reasons.  *See* Ex. A, '376 Patent at claims 1, 35-37, 55-57, 90 (all

independent claims requiring that the owner of the "node server is offered an incentive as compensation"). The only difference is the form in which the claims were drafted, which does not affect the subject matter eligibility analysis. *See, e.g., Realtime Tracker, Inc.*, 659 F. Supp. 3d at 408 (quoting *Bancorp Servs., L.L.C.*, 687 F.3d at 1277). Some dependent claims recite features that are not explicitly mentioned in their corresponding independent claims, such as topological proximity considerations. But, as compared to claim 37 and the other independent claims all requiring "incentive as compensation," these claims do not "differ in any manner that is material to the patent-eligibility inquiry." *See Realtime Tracker, Inc.*, 659 F. Supp. 3d at 395 (quoting *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016)). Thus, the Court may treat claim 37 as representative. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348-49 (Fed. Cir. 2014); *Automated Tracking Sols., LLC v. The Coca-Cola Co.*, 723 Fed. Appx. 989, 991 (Fed. Cir. 2018); *Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382, 386 (S.D.N.Y. 2018), aff'd, 792 F. App'x 949 (Fed. Cir. 2020).

## B.     The Complaint Fails to State a Claim Because It Does Not Plausibly Allege All Limitations of the Asserted Claim

Plaintiff's Complaint fails to state a plausible claim for patent infringement under the *Iqbal*/*Twombly* standard because Plaintiff has not sufficiently alleged that all limitations of the claim are covered by the accused streaming app.

Claim 37 requires "instructions for ascertaining that **the node server** transmitted **the specified content** to the client, wherein an owner of **the node server** is offered an incentive as compensation for transmission of **the specified content** to the client." Ex. A, '376 Patent, 28:5-10 (emphasis added). In other words, the claim requires that the computer program includes instructions to verify that a particular node server ("the node server") delivered particular content

("the specified content") to a client, and that the owner of that particular node server is compensated for the delivery of the particular content to the client. Plaintiff has failed to plausibly allege these required features of the claim. Instead, Plaintiff broadly alleges that content is *received* by a client using the app, and that there "must" be compensation for third-party storage and transmission services. *See* Dkt. 1-2, pp. 13-17. This is plainly deficient.

As to "instructions for ascertaining that the node server transmitted the specific content to the client," Plaintiff alleges that this is shown by the *client's receipt* of specified content—i.e., transmission of data packets and a URL. *See* Dkt. 1-2, pp. 13-15. There are no factual allegations nor support relating to "ascertaining," let alone facts that would support an allegation that Defendants' streaming app includes "instructions" to confirm whether a particular node server has delivered the requested content to a given client. Plaintiff does include the unsupported assertion that "instructions stored on the main server ascertain[] that the specified content is being transmitted to the user from the requested node server." *Id.* at p. 14. However, boilerplate statements that merely track the claim language, without support, are insufficient to survive a motion to dismiss. *See, e.g., Bot M8 LLC*, 4 F.4th at 1355 (affirming district court's dismissal when "allegations are conclusory, merely track the claim language, and do not plausibly allege" limitations of the claim).

As to "compensation," Plaintiff argues that Defendants' streaming app performs the step of "offer[ing] an incentive as compensation [to an owner of a node server] for transmission of the specified content to the client" by citing non-party Akamai's pricing plans. *See* Dkt. 1-2, p. 16. Plaintiff assumes, without supporting factual allegations, that "it must be Showtime offers an incentive as compensation to the owner of the node server (e.g., Akamai Technologies) for storage and transmission of the content to the user." *Id.* There are no facts or plausible allegations, for

instance, that any "incentive as compensation" is provided to Akamai for the transmission of "the specified content to the client." That is, Plaintiff has failed to link any alleged incentivization to providing particular content to a particular client, as opposed to payment for generic hosting functions.

In sum, Plaintiff's allegations in the Complaint and attached claim chart do not plausibly allege infringement of the '376 Patent, warranting dismissal of the Complaint.

### C.    Plaintiff's Direct Infringement Allegations Are Insufficient

Under the *Iqbal/Twombly* pleading standards, a claim for infringement must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiff's direct infringement allegations are deficient, and the flaws in its reasoning are apparent in three ways: (i) according to Plaintiff, the claim requires a "tangible object" in the form of a computer readable storage medium or media, but Plaintiff has not alleged that Defendants make, use, sell, or offer to sell any such object as would be required for direct infringement under 35 U.S.C. §271(a); (ii) Plaintiff inconsistently mapped the "instructions" to both the client's device and the "main server," thereby undermining its direct infringement allegations; and (iii) Plaintiff's explanation of the allegedly infringing activity provided with its *indirect* infringement allegations underscore the deficiencies of its attempted *direct* infringement read.

First, Plaintiff alleges that "[c]laim 37 of the '376 patent is directed to a computer readable storage medium, **which is a tangible object**." Dkt. 1, ¶ 23 (emphasis added). In the claim chart, Plaintiff further alleges that Defendants provide a streaming app that is "the media encoded with

a computer program." *See* Dkt. 1-2, p. 1.[3]  Thus, if accepting Plaintiff's own assertions as true, there must exist a single, tangible object with all of the accused "instructions," and there must be a plausible allegation that Defendants have made, used, sold, or offered for sale this object.  *See* 35 U.S.C. § 271(a).  However, Plaintiff fails to specifically identify any such tangible object, or articulate plausible facts showing that such an object contains the claimed instructions.  *See Bot M8 LLC*, 4 F.4th at 1354 ("it is possible that, in pleading its claims, a plaintiff may find it has pleaded itself out of court").  For at least this reason, the direct infringement claim fails.

Second, Plaintiff provided inconsistent mapping throughout the claim charts, alleging the presence of the claimed "instructions" on both the client device and a "main server."  Because Plaintiff's allegations rely on instructions in at least two places, it is not plausible that Defendants have made, used, sold, or offered to sell a "computer readable storage medium or media encoded" with all of the "instructions" recited in the claim.

For example, Plaintiff alleges that the user interface at https://www.sho.com/, which is presented in a browser on the user's device, demonstrates "instructions for receiving a request from a client." *See* Dkt. 1-2, pp. 3-4 (showing use of "the Showtime global navigation menu or search bar to receive an input request from a user for specified content like movies, series, sports, comedy, etc.") ("instructions within the app").  For other aspects of the claim, Plaintiff summarily argues that the evidence shows "the instructions stored on the main server." *Id.*, pp. 11, 14.  Thus, according to the Plaintiff, the claimed "instructions" are both evidenced by client-side code and the Showtime website, and also present on a "main server."  These allegations are inconsistent with Plaintiff's direct infringement claims.  Moreover, Plaintiff does not allege or provide any

---

[3] As discussed in Section IV(A) above, the inclusion of "instructions" on a "computer readable storage medium," or that the claim may require a tangible object, does not affect the § 101 analysis.

evidence linking the presence of the "instructions" on a "main server" to the accused streaming app, which forms the basis of Plaintiff's direct infringement claim. *See* Complaint, ¶ 31 ("the '376 patent is practiced by the app offered by defendant"). Plaintiff's own incomplete, and inconsistent, allegations show that the direct infringement claims are not plausible.

<u>Third</u>, the deficiencies of the direct infringement claim are highlighted by Plaintiff's indirect infringement claims. With respect to indirect infringement, Plaintiff explains its position that Defendants are allegedly inducing and contributing to infringement of the '376 Patent by "supplying an app to consumer end-users." Dkt. 1, ¶¶ 38-39. Thus, Plaintiff appears to argue that Defendants are providing the means, via the streaming app, for the *client* to directly infringe the claim. This underscores Plaintiff's failure to sufficiently allege the presence of "instructions" on any computer readable storage medium or media made, used, sold, or offered for sale *by Defendants*, as would be required to directly infringe the claim.

The deficiencies of Plaintiff's allegations with respect to direct infringement are significant for the scope of this case. Plaintiff pleads two types of infringement, direct (35 U.S.C. § 271(a)) and indirect (35 U.S.C. §§ 271(b) and (c)). Dkt. 1, ¶¶ 28-43. Dismissal of the direct infringement claims would properly narrow the scope of the case to post-filing activities, excluding the earlier time period where Defendants were unaware of the '376 Patent. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) (holding indirect infringement claims of "induced infringement [and] contributory infringement require[] knowledge of the patent in suit and knowledge of patent infringement."); *see also* Dkt. 1, ¶ 14. (alleging knowledge only as of the filing of the Complaint). Leaving Plaintiff's indefensible direct infringement claims in the case would needlessly multiply discovery costs. For this reason, the direct infringement claims should be dismissed at these early stages.

**V.      CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court grant their

motion to dismiss the Plaintiff's Complaint with prejudice.


Dated: April 29, 2024                                Respectfully submitted,

                                      By:      _/s/ Sharon L. Davis_
                                               Sharon L. Davis (*pro hac vice*)
                                               sdavis@rothwellfigg.com
                                               Steven M. Lieberman (Bar No. SL8687)
                                               slieberman@rothwellfigg.com
                                               Michael H. Jones (*pro hac vice*)
                                               mjones@rothwellfigg.com
                                               Rothwell, Figg, Ernst & Manbeck P.C.
                                               901 New York Avenue, N.W. Suite 900 E
                                               Washington, DC 20001
                                               Telephone: (202) 783-6040
                                               Facsimile: (202) 783-6031

                                               *Attorneys for Defendants Showtime*
                                               *Networks Inc., Showtime Digital Inc., and*
                                               *Paramount Global*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2024, I filed the foregoing with the Clerk of Court using

the CM/ECF system which will provide notification of such filing to the following:

David A. Ward
**KLUGER HEALEY, LLC**
521 Newman Springs Road, Suite 23
Lincroft, New Jersey 07738
Tel: (973) 307-0800
Fax: (888) 635-1653
dward@klugerhealy.com

*/s/ Nasri V. B. Hage*
Nasri V. B. Hage
Rothwell Figg Ernst & Manbeck, P.C.

24