# EXHIBIT C



 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/717,184 | 11/20/2000 | Trevor I. Blumenau | BLU-005 | 9528 |

7590 12/02/2005

David R. Graham
1337 Chewpon Avenue
Milpitas, CA 95035

| EXAMINER | |
|---|---|
| TRAN, PHILIP B | |
| **ART UNIT** | **PAPER NUMBER** |
| 2155 | |

DATE MAILED: 12/02/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/717,184 | BLUMENAU, TREVOR I. |
| | Examiner | Art Unit |
| | Philip B. Tran | 2155 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *10 January 2003*.

2a)☐ This action is **FINAL**. 2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-123* is/are pending in the application.

4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-123* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on *20 November 2000* is/are: a)☒ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date *5/01,10/01,1/03*.
4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application (PTO-152)
6) ☐ Other: _____.

**DETAILED ACTION**

***Claim Rejections - 35 USC § 102***

1. The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

2. Claims 1-20, 22-25, 27-33 and 35-123 are rejected under 35 U.S.C. 102(e) as being anticipated by Kenner et al (Hereafter, Kenner), U.S. Pat. No. 5,956,716.

Regarding claim 1, Kenner teaches apparatus for effecting the provision of content over a network, comprising:

means for receiving a request from a client for specified content (= requesting and retrieving video clips by the user at the user multimedia terminal) [see Abstract and Col. 4, Lines 43-64];

means for communicating to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server (= communicating between the web server and the user terminal for transmitting web page and video clips to the user terminal) [see Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49]; and

means for ascertaining that the node server transmitted the specified content to the client (= locating audio/video content on servers to transmit to the users) [see Col. 5, Lines 16-64], wherein an owner of the node server is offered an incentive as

compensation for transmission of the specified content to the client (= placing advertisements and promotions) [see Col. 4, Lines 7-34 and Col. 19, Lines 8-37].

Regarding claims 2-8, Kenner further teaches wherein the incentive varies in accordance with the bandwidth and/or latency performance of the node server in transmitting the specified content to the client, in accordance with the bandwidth and/or latency performance of the node server relative to the bandwidth and/or latency characteristics of one or more other node servers that can provide the specified content to the client, in accordance with the number and/or topological proximity of one or more other node servers that can provide the specified content to the client, in accordance with the time of day at which the node server transmits the specified content to the client, wherein obtaining information regarding the characteristics of the transmission of the content such as when the content was delivered and regarding the bandwidth and/or latency performance associated with the transmission of the content (= bandwidth and/or latency performance and geographical proximity and timestamp) [see Col. 5, Lines 39-64 and Col. 12, Lines 14-55 and Col. 23, Lines 25-65 and Col. 25, Lines 21-54].

Regarding claims 9-11, Kenner further teaches means for identifying a plurality of node servers within the network that can act as a node server for distribution of the specified content, means for selecting from the plurality of node servers one or more candidate node servers, means for communicating the identity of the candidate node

servers to the client to enable the client to request transmission of the specified content via the network from one of the candidate node servers, means for determining the location of the client within the network, means for identifying the locations of the plurality of node servers that can act as a node server for distribution of the specified content, wherein the means for selecting one or more candidate node servers further comprises means for selecting from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client, wherein the determination of topological proximity to the client is performed using a breadth-first search to identify node servers that satisfy a criterion regarding topological proximity to the client [see Fig. 4 and Abstract and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

Regarding claims 12-14, Kenner further teaches means for identifying a network site that will act as a node server for distribution of the specified content, means for providing the specified content to the node server, means for identifying the location of a prospective node server that desires to act as a node server for distribution of the specified content, means for identifying the location of one or more other existing node servers that can act as a node server for distribution of the specified content, means for determining the topological proximity of the prospective node server to the existing node servers, wherein the prospective node server is selected as a node server for distribution of the specified content if the prospective node server satisfies a criterion regarding topological proximity to the existing node servers, wherein the means for

determining the topological proximity of the prospective node server to the existing node servers is performed using an annealing method [see Fig. 4 and Col. 23, Lines 3-65].

Regarding claims 15-17, Kenner further teaches means for storing data identifying available content that can be obtained by a client, means for providing an identification of available content to the client, and means for storing data identifying the location of the node server and wherein the content comprises visual content including moving images [see Fig. 4 and Col. 4, Line 43 to Col. 6, Line 16].

Regarding claims 18-20, Kenner further teaches the network is a computer network, the Internet, a television network [see Fig. 4 and Col. 8, Lines 14-50].

Regarding claims 22-25 and 27-28, Kenner further teaches a core server and a node server wherein the node server comprises means for storing the specified content and means for receiving a request to transmit the specified content to the client, means for transmitting the specified content to the client, and wherein the core server comprises means for identifying a network site that will act as a node server for distribution of the specified content, means for providing the specified content to the node server, means for receiving the specified content from the core server, wherein the core server and the node server are each implemented at least in part in a computer, wherein the node server is implemented at least in part in a television set-top box or at least in part in a portable device, wherein the client comprising means for transmitting

the request for the specified content to the core server, means for receiving the identity of the node server from the core server and means for receiving the specified content from the node server, wherein the node server and the client are each implemented at least in part in a television set-top box [see Fig. 4 and Abstract and Col. 8, Lines 14-50 and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

Regarding claims 29-33, Kenner further teaches the apparatus is a core server and the client comprising means for transmitting the request for the specified content to the core server, means for receiving the identity of the node server from the core server, means for receiving the specified content from the node server, means for transmitting a request to the node server to transmit the specified content to the client, means for monitoring the characteristics of the transmission of the specified content from the node server to obtain auditing information regarding the transmission of the specified content from the node server to the client, and means for transmitting the auditing information to the core server, wherein the core server and the client are each implemented at least in part in a computer, wherein the client is implemented at least in part in a television set-top box [see Fig. 4 and Col. 8, Lines 14-50 and Col. 23, Lines 3-65].

Regarding claim 35, Kenner teaches apparatus for effecting the provision of content over a network, comprising:

means for receiving a request for content from a client (= requesting and retrieving video clips by the user at the user multimedia terminal) [see Abstract and Col. 4, Lines 43-64]; and

means for determining the location of the client within the network, means for identifying the location of a plurality of node servers within the network that have at least part of the requested content stored thereon, means for selecting from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client, and means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers (= determining the closest server containing the request video clips and geographical distribution) [see Fig. 4 and Abstract and Col. 5, Lines 39-64 and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

Regarding claims 36-38, Kenner further teaches wherein the determination of topological proximity to the client is performed using a breadth-first search to identify node servers that satisfy a criterion regarding topological proximity to the client, and further comprising means for storing a topological database including a topological map of the network, wherein the means for selecting uses the topological map in making determinations of topological proximity to the client, wherein the topological database further includes data regarding bandwidth capacity and/or latency between at least

some of the network sites included in the topological map [see Fig. 4 and Col. 23, Lines 3-65].

Regarding claim 39, Kenner further teaches apparatus as in claim 35, further comprising means for ascertaining which of the one or more of the candidate node servers transmitted requested content to the client (= locating audio/video content on servers to transmit to the users) [see Col. 5, Lines 16-64], wherein an owner of such node server is offered an incentive as compensation for transmission of requested content to the client (= placing advertisements and promotions) [see Col. 4, Lines 7-34 and Col. 19, Lines 8-37].

Claims 40-42 are rejected under the same rationale set forth above to claims 12-14.

Claims 43-45 are rejected under the same rationale set forth above to claims 15-17.

Claims 46-48 are rejected under the same rationale set forth above to claims 18-20.

Regarding claims 49-51, Kenner further teaches wherein the apparatus is a core server, the system further comprising one of the plurality of node servers, the node server comprising means for storing at least part of the requested content, means for receiving a request to transmit content to the client, and means for transmitting the

requested content to the client and the client comprising means for transmitting a request for content to the core server, means for receiving the identity of one or more candidate node servers from the core server, means for selecting one or more of the candidate node servers from which to obtain content, means for transmitting a request to a selected node server to transmit content to the client, and means for receiving content in response to the request transmitted to the node server [see Fig. 4 and Abstract and Col. 5, Lines 17-64 and Col. 23, Lines 3-65].

Regarding claim 52, Kenner teaches apparatus for effecting the provision of content over a network, comprising:

means for identifying which of a plurality of sets of content or parts of the plurality of sets of content are stored by each of a plurality of node servers that are part of the network, wherein at least one of the plurality of sets of content or parts of the plurality of sets of content is stored on redundant node servers (= locating audio/video content on servers to transmit to the users) [see Fig. 4 and Abstract and Col. 5, Lines 16-64 and Col. 16, Lines 14-61 and Col. 23, Lines 3-65];

means for receiving a request from a client that is part of the network for transmission of a set of content to the client, wherein at least part of the requested set of content is stored on redundant node servers (= requesting and retrieving video clips by the user at the user multimedia terminal) [see Abstract and Col. 4, Lines 43-64]; and

means for selecting from the plurality of node servers one or more candidate node servers that have stored thereon at least part of the requested set of content, and

means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers (= communicating the user to the servers for requesting contents) [see Fig. 4 and Col. 23, Lines 3-65].

Regarding claims 53-55, Kenner further teaches wherein the candidate node servers do not include all of the redundant node servers on which requested content is stored, and further comprising means for storing data representing a topological map of the network and means for determining the location of the client within the network, and wherein the means for selecting one or more candidate node servers further comprises means for selecting one or more candidate node servers that are determined to be topologically proximate to the client, wherein the determination of topological proximity to the client is performed using a breadth-first search to identify node servers that satisfy a criterion regarding topological proximity to the client [see Fig. 4 and Abstract and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

Regarding claim 56, Kenner further teaches means for ascertaining which of the one or more of the candidate node servers transmitted requested content to the client (= locating audio/video content on servers to transmit to the users) [see Col. 5, Lines 16-64], wherein an owner of such node server is offered an incentive as compensation for transmission of requested content to the client (= placing advertisements and promotions) [see Col. 4, Lines 7-34 and Col. 19, Lines 8-37].

Claims 57-59 are rejected under the same rationale set forth above to claims 11-13.

Claims 60-62 are rejected under the same rationale set forth above to claims 15-17.

Claims 63-65 are rejected under the same rationale set forth above to claims 18-20.

Regarding claims 66-68, Kenner further teaches the node server comprising means for storing a set of content or part of a set of content, means for receiving a request to transmit a set of content or part of a set of content to the client, and means for transmitting the requested set of content or part of a set of content to the client and the client comprising means for transmitting a request for a set of content to the core server, means for receiving the identity of one or more candidate node servers from the core server, means for selecting one or more of the candidate node servers from which to obtain content, means for transmitting a request to a node server to transmit a set of content or part of a set of content to the client, and means for receiving a set of content or part of a set of content in response to the request transmitted to the node server [see Fig. 4 and Abstract and Col. 5, Lines 17-64 and Col. 23, Lines 3-65].

Claim 69 is rejected under the same rationale set forth above to claim 52.

Claim 70 is rejected under the same rationale set forth above to claim 56.

Claims 71-72 are rejected under the same rationale set forth above to claims 57-59.

Regarding claim 73, Kenner further teaches the content comprises visual content including moving images [see Col. 6, Lines 1-16].

Claims 74-76 are rejected under the same rationale set forth above to claims 66-68.

Claim 77 is rejected under the same rationale set forth above to claim 1.

Claims 78-80 are rejected under the same rationale set forth above to claims 2-8.

Claims 81-83 are rejected under the same rationale set forth above to claims 9-11.

Claims 84-86 are rejected under the same rationale set forth above to claims 12-14.

Claims 87-88 are rejected under the same rationale set forth above to claims 15-17.

Claims 89-91 are rejected under the same rationale set forth above to claims 22-25 and 27-28.

Claims 92-94 are rejected under the same rationale set forth above to claims 29-33.

Claim 95 is rejected under the same rationale set forth above to claim 35.

Claims 96-98 are rejected under the same rationale set forth above to claims 36-38.

Claim 99 is rejected under the same rationale set forth above to claim 39.

Claims 100-102 are rejected under the same rationale set forth above to claims 40-42.

Claims 103-104 are rejected under the same rationale set forth above to claims 43-45.

Claims 105-107 are rejected under the same rationale set forth above to claims 49-51.

Claim 108 is rejected under the same rationale set forth above to claim 52.

Claims 109-111 are rejected under the same rationale set forth above to claims 53-55.

Claim 112 is rejected under the same rationale set forth above to claim 56.

Claims 113-115 are rejected under the same rationale set forth above to claims 57-59.

Claims 116-117 are rejected under the same rationale set forth above to claims 60-62.

Claims 118-120 are rejected under the same rationale set forth above to claims 66-68.

Claim 121 is rejected under the same rationale set forth above to claim 1.

Claim 122 is rejected under the same rationale set forth above to claim 35.

Claim 123 is rejected under the same rationale set forth above to claim 52.

***Claim Rejections - 35 USC § 103***

3. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

4. Claims 21, 26 and 34 are rejected under 35 U.S.C. 103(a) as being unpatentable over Kenner et al (Hereafter, Kenner), U.S. Pat. No. 5,956,716.

Regarding claims 21 and 26 and 34, Kenner does not explicitly teach the network is a wireless communications network and the node server is implemented at least in part in a portable device and the client is implemented at least in part in a portable device. However, it would have been obvious to one of skilled in the art to implement a wireless communications network and devices in the networks are portable devices because it would have enabled the user to be mobilized while efficiently communicating with other devices wirelessly in the network from the remote area.

***Other References Cited***

5. The following references cited by the examiner but not relied upon are considered pertinent to applicant's disclosure.

A) Bonnaure et al, U.S. Pat. No. 5,862,339.

B) Auerbach, U.S. Pat. No. 6,832,253.

C) Koss, U.S. Pat. No. 6,731,612.

D) Starnes et al, U.S. Pat. No. 6,510,469.

E) Borella et al, U.S. Pat. No. 6,182,125.

6. A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS ACTION IS SET TO EXPIRE THREE MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION. FAILURE TO RESPOND WITHIN THE PERIOD FOR RESPONSE WILL CAUSE THE APPLICATION TO BECOME ABANDONED (35 U.S.C. § 133). EXTENSIONS OF TIME MAY BE OBTAINED UNDER THE PROVISIONS OF 37 CAR 1.136(A).

7. Any inquiry concerning this communication or earlier communications from the examiner should be directed to Philip Tran whose telephone number is (571) 272-3991. The Group fax phone number is (571) 273-8300. If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Saleh Najjar, can be reached on (571) 272-4006.

8. Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

Philip Tran
Philip B. Tran
Primary Examiner
Art Unit 2155
November 25, 2005

REMARKS

Claims 1-123 were filed and are pending. Claims 1-20, 22-25, 27-33 and 35-123 were rejected under 35 U.S.C. § 102. Claims 21, 26 and 34 were rejected under 35 U.S.C. § 103. Reconsideration and allowance of Claims 1-123 is requested.

Rejection of Claims under 35 U.S.C. § 102

In the Office Action, Claims 1-20, 22-25, 27-33 and 35-123 were rejected under 35 U.S.C. § 102 as being anticipated by Kenner et al. (U.S. Patent No. 5,956,716).

Regarding Claim 1, the Office Action stated:

> Kenner teaches apparatus for effecting the provision of content over a network, comprising:
>
> means for receiving a request from a client for specified content (= requesting and retrieving video clips by the user at the user multimedia terminal) [see Abstract and Col. 4, Lines 43-64];
>
> means for communicating to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server (= communicating between the web server and the user terminal for transmitting web page and video clips to the user terminal) [see Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49]; and
>
> means for ascertaining that the node server transmitted the specified content to the client (= locating audio/video content on servers to transmit to the users) [see Col. 5, Lines 16-64], wherein an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client (= placing advertisements and promotions) [see Col. 4, Lines 7-34 and Col. 19, Lines 8-37].

PAGE 5/16 * RCVD AT 3/2/2006 9:45:33 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/15 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):04-48

Claim 1 recites (emphasis added):

> Apparatus for effecting the provision of content over a network, comprising:
> means for receiving a request from a client for specified content;
> means for communicating to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server; and
> means for ascertaining that the node server transmitted the specified content to the client, wherein an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client.

Kenner et al. teach a video clip storage and retrieval system (column 4, lines 37-38 of the Kenner et al. patent). Kenner et al. teach that "[t]he video clip retrieval system is a distributed computer system or network whereby video clips and text information, stored locally and at a remote location, can be requested and viewed at a user's multimedia terminal" (column 4, lines 43-46 of the Kenner et al. patent). Kenner et al. further teach, at column 7, lines 14-35 of the Kenner et al. patent (emphasis added):

> FIG. 1 illustrates a preferred embodiment of the video clip storage and retrieval system, showing its structural hierarchy and the various modules which comprise the system. As shown, the system comprises one or more user terminals 14, a local storage and retrieval unit ("local SRU") 18, a data sequencing interface (DSI) 30, one or more extended storage and retrieval units ("extended SRUs") 26, and one or more index managers ("IM") 22.
>
> By way of a system overview, video clips are stored primarily on extended SRUs 26, and are tracked and distributed by the IMs 22. A user obtains videos of interest by communicating with a primary index manager ("PIM") 22 via a local SRU 18. The PIM 22 locates the requested video clips and creates a DSI 30 to direct the efficient download of the video clips to the user terminal 14. The connections between terminal 14 and

PAGE 6/16 * RCVD AT 3/2/2006 9:45:33 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/15 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):04-48

> the local SRU 18 can be within the same computer, or between two or more computers located within a building, which are linked together on a local area network.

Kenner et al. do not teach or suggest "means for communicating to [a] client the identity of a node server having ... specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server," as recited in Claim 1. Rather, Kenner et al. teach that an entity (PIM 22) to which a user terminal (analogous to the "client" in Claim 1) communicates a request for a video (content) creates another entity (DSI 30) which requests transmission of video clips of the video to the user terminal.

An architecture for effecting the provision of content over a network as in Claim 1 provides advantages not provided by an architecture as taught by Kenner et al. For example, with an architecture as in Claim 1, the client can evaluate the capabilities of node server(s) to deliver content and request transmission of the content from node server(s) that can best provide the content to the client. For instance, as described in Applicant's specification at page 27, lines 16-35, the client can determine topological proximity of node server(s), evaluate the bandwidth and/or latency performance of node server(s), consider other scheduled content delivery by node server(s), and/or analyze (e.g., trend analysis) operation of node server(s), then select node server(s) for delivery of content to the client based on one or more of those evaluations.

PAGE 7/16 * RCVD AT 3/2/2006 9:45:33 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/15 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):04-48

Kenner et al. also do not teach or suggest that an owner of a node server can be offered an incentive as compensation for transmission of specified content to a client, as recited in Claim 1. This aspect of Applicant's invention is discussed, for example, at page 7, line 29 to page 8, line 7 of Applicant's specification:

> In one particularly advantageous aspect of the invention, the owner of a site on the network can be provided with one or more incentives to make that network site a node server. Such incentives can include, for example, access to premium content from the core server (or other content providing site), access to free content from a content providing site (e.g., a free movie, free software, a free software upgrade), access to content that has been modified in a desirable way (e.g., content without advertising), loyalty program credits (e.g., frequent flyer miles), cash, or some combination of such incentives. However, as can be readily understood, the invention contemplates the use of any incentive or combination of incentives to induce a network site owner to allow their site to be used as a node server.

In the Office Action it is contended that this limitation of Claim 1 is taught at column 4, lines 7-34 and column 19, lines 8-37 of the Kenner et al. patent. However, that is not the case. The Kenner et al. patent teaches, at column 4, lines 7-34:

> In one embodiment of the invention, the user, a real estate agent, has the capability of receiving up-to-date audio-visual information about a listed property. Presently, a real estate agent spends hours researching relevant aspects of available property, to include, inspecting the property, taking photographs of the property, and accumulating information about the property. In fact, the typical agent sees less than 50 percent of the new homes listed because of time constraints. Additional time and effort is spent ascertaining the prospective buyer's desires, introducing the buyer to the range of communities available within a chosen region, researching properties that the potential buyer may be interested in, and then showing these properties to the potential buyer.

PAGE 8/16 * RCVD AT 3/2/2006 9:45:33 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/15 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):04-48

> According to the invention, a realtor's time will be more effectively used on activities directly related to selling property, and not on time intensive, activities necessary to stay abreast with market conditions. For example, by being able to view the property on a video terminal the realtor will reduce significantly the time spent researching potential properties. The time spent visiting properties with the potential buyer is likewise reduced by being able to introduce the property to the buyer via the video clip. This allows the realtor to devote more time to closings and other administrative duties associated with selling the property. Also, having the video retrieval capability allows the realtor to constantly refresh the customer's memory without having to revisit the property.

As can be seen, that section of the Kenner et al. patent does not discuss the provision of an incentive to a network site owner to allow their site to be used as a node server. Kenner et al. do not teach or suggest that a real estate agent, the agent's client, or the owner of a property being reviewed by the agent and/or client is an owner of a network site that can be incentivized to allow their network site to be used as a node server. The Kenner et al. patent further teaches, at column 19, lines 8-37:

> Another application of the invention is directed towards providing online drug prescription information to physicians. Traditionally, pharmaceutical companies have utilized very expensive detail forces to physically meet with physicians to educate them about proprietary medications. However, recently, with the tremendous downward pressure on prescription pricing, the rapidly rising costs of drug discovery and development, the speed of reverse engineering by competitors and the more liberal generic drug approval policy, drug companies can no longer afford a full detail force to market their proprietary drugs. At present, high quality video cassettes are produced about the drug, and are sent directly to the physician in an attempt to supplement the sales force.
>
> One embodiment of the invention provides ready access to audio-visual information about various drugs available to the physician. As with the real estate

PAGE 9/16 * RCVD AT 3/2/2006 9:45:33 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/15 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):04-48

> application, a third party text database may be used, for example, an on-line version of the "Physicians Desk Reference." The physician may simply search through the on-line database and select a list of drugs that the physician would like to view on video. The system will search for, locate, and download the requested audio-visual information. The drug videos may serve a variety of functions. For example, the physician may use this audio-visual information to learn about new drugs, or simply to refresh or update their knowledge about existing drugs. Also, drug companies may place advertisements about promotional drugs on the video clips for use by the physician.

As can be seen, that section of the Kenner et al. patent also does not discuss the provision of an incentive to a network site owner to allow their site to be used as a node server. Kenner et al. do not teach or suggest that a physician, drug company, or owner of a third party text database (e.g., on-line version of the "Physicians Desk Reference") is an owner of a network site that can be incentivized to allow their network site to be used as a node server.

In view of the foregoing, Claim 1 is allowable over the teaching of Kenner et al. Claims 2-20, 22-25 and 27-34 each depend, either directly or indirectly, on Claim 1 and are therefore allowable as dependent on an allowable claim.

Regarding Claim 35, the Office Action stated:

> Kenner teaches apparatus for effecting the provision of content over a network, comprising:
>
> means for receiving a request for content from a client (- requesting and retrieving video clips by the user at the user multimedia terminal) [see Abstract and Col. 4, Lines 43-64]; and
>
> means for determining the location of the client within the network, means for identifying the location of a plurality of node servers within the network that have at least part of the requested content stored thereon, means for selecting from the plurality of node servers

PAGE 10/16 * RCVD AT 3/2/2006 9:45:33 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/15 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):04-48

one or more candidate node servers that are determined to be topologically proximate to the client, and means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers (- determining the closest server containing the request video clips and geographical distribution) [see Fig. 4 and Abstract and Col. 5, Lines 39-64 and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

Claim 35 recites (emphasis added):

> Apparatus for effecting the provision of content over a network, comprising:
>
> means for receiving a request for content from a client;
>
> means for determining the location of the client within the network;
>
> means for identifying the location of a plurality of node servers within the network that have at least part of the requested content stored thereon;
>
> means for selecting from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client; and
>
> <u>means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers</u>.

As discussed above with respect to Claim 1, Kenner et al. do not teach or suggest "means for communicating the identity of ... candidate node servers to [a] client to enable the client to request transmission of ... requested content via [a] network from one or more of the candidate node servers," as recited in Claim 35. In view of the foregoing, Claim 35 is allowable over the teaching of Kenner et al. Claims 36-51 each depend, either directly or indirectly, on Claim 35 and are therefore allowable as dependent on an allowable claim.

Regarding Claim 52, the Office Action stated:

Kenner teaches apparatus for effecting the provision of content over a network, comprising:

means for identifying which of a plurality of sets of content or parts of the plurality of sets of content are stored by each of a plurality of node servers that are part of the network, wherein at least one of the plurality of sets of content or parts of the plurality of sets of content is stored on redundant node servers (= locating audio/video content on servers to transmit to the users) [see Fig. 4 and Abstract and Col. 5, Lines 16-64 and Col. 16, Lines 14-61 and Col. 23, Lines 3-65];

means for receiving a request from a client that is part of the network for transmission of a set of content to the client, wherein at least part of the requested set of content is stored on redundant node servers (= requesting and retrieving video clips by the user at the user multimedia terminal) [see Abstract and Col. 4, Lines 43-64];

means for selecting from the plurality of node servers one or more candidate node servers that have stored thereon at least part of the requested set of content, and means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers (= communicating the user to the servers for requesting contents) [see Fig. 4 and Col. 23, Lines 3-65].

Claim 52 recites (emphasis added):

Apparatus for effecting the provision of content over a network, comprising:

means for identifying which of a plurality of sets of content or parts of the plurality of sets of content are stored by each of a plurality of node servers that are part of the network, wherein at least one of the plurality of sets of content or parts of the plurality of sets of content is stored on redundant node servers;

means for receiving a request from a client that is part of the network for transmission of a set of content to the client, wherein at least part of the requested set of content is stored on redundant node servers;

means for selecting from the plurality of node servers one or more candidate node servers

PAGE 12/16 * RCVD AT 3/2/2006 9:45:33 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/15 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):04-48

> that have stored thereon at least part of the requested set of content; and
>
> means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers.

As discussed above with respect to Claim 1, Kenner et al. do not teach or suggest "means for communicating the identity of ... candidate node servers to [a] client to enable the client to request transmission of ... requested content via [a] network from one or more of the candidate node servers," as recited in Claim 52. In view of the foregoing, Claim 52 is allowable over the teaching of Kenner et al. Claims 53-68 each depend, either directly or indirectly, on Claim 52 and are therefore allowable as dependent on an allowable claim.

Regarding Claim 69, the Office Action stated that "Claim 69 is rejected under the same rationale set forth above to claim 52."

Claim 69 recites (emphasis added):

> Apparatus for effecting the provision of content over a television network, comprising:
>
> means for identifying which of a plurality of sets of content or parts of the plurality of sets of content are stored by each of a plurality of node server television set-top boxes that are part of the network;
>
> means for receiving a request from a client television set-top box that is part of the network for transmission of a set of content to the client television set-top box, wherein at least part of the requested set of content is stored on one or more node server television set-top boxes;
>
> means for selecting from the one or more node server television set-top boxes one or more candidate node server television set-top boxes; and
>
> means for communicating the identity of the candidate node server television set-top boxes to

PAGE 13/16 * RCVD AT 3/2/2006 9:45:33 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/15 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):04-48

the client television set-top box to enable the client television set-top box to request transmission of the requested content via the network from one or more of the candidate node server television set-top boxes.

As discussed above with respect to Claim 1, Kenner et al. do not teach or suggest "means for communicating the identity of ... candidate node server television set-top boxes to [a] client television set-top box to enable the client television set-top box to request transmission of ... requested content via [a] network from one or more of the candidate node server television set-top boxes," as recited in Claim 69. In view of the foregoing, Claim 69 is allowable over the teaching of Kenner et al. Claims 70-76 each depend, either directly or indirectly, on Claim 69 and are therefore allowable as dependent on an allowable claim.

Regarding Claim 77, the Office Action stated that "Claim 77 is rejected under the same rationale set forth above to claim 1." Claim 77 is allowable over the teaching of Kenner et al. for the same reasons as given above with respect to Claim 1. Claims 78-94 each depend, either directly or indirectly, on Claim 77 and are therefore allowable as dependent on an allowable claim.

Regarding Claim 95, the Office Action stated that "Claim 95 is rejected under the same rationale set forth above to claim 35." Claim 95 is allowable over the teaching of Kenner et al. for the same reasons as given above with respect to Claim 35. Claims 96-107 each depend, either directly or indirectly, on Claim 95 and are therefore allowable as dependent on an allowable claim.

Regarding Claim 108, the Office Action stated that "Claim 108 is rejected under the same rationale set forth above to claim 52." Claim 108 is allowable over the teaching of Kenner et al. for the same reasons as given above with respect to Claim 52. Claims 109-120 each depend, either directly or indirectly, on Claim 108 and are therefore allowable as dependent on an allowable claim.

Regarding Claim 121, the Office Action stated that "Claim 121 is rejected under the same rationale set forth above to claim 1." Claim 121 is allowable over the teaching of Kenner et al. for the same reasons as given above with respect to Claim 1.

Regarding Claim 122, the Office Action stated that "Claim 122 is rejected under the same rationale set forth above to claim 35." Claim 122 is allowable over the teaching of Kenner et al. for the same reasons as given above with respect to Claim 35.

Regarding Claim 123, the Office Action stated that "Claim 123 is rejected under the same rationale set forth above to claim 52." Claim 123 is allowable over the teaching of Kenner et al. for the same reasons as given above with respect to Claim 52.

In view of the foregoing, it is requested that the rejection of Claims 1-20, 22-25, 27-33 and 35-123 under 35 U.S.C. § 102 be withdrawn.

Rejection of Claims under 35 U.S.C. § 103

In the Office Action, Claims 21, 26 and 34 were rejected under 35 U.S.C. § 103 as unpatentable over Kenner et al. (U.S. Patent No. 5,956,716).

PAGE 15/16 * RCVD AT 3/2/2006 9:45:33 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/15 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):04-48

Claims 21, 26 and 34 each depend, either directly or indirectly, on Claim 1 and are therefore allowable over the teaching of Kenner et al. for at least the reasons given above with respect to Claim 1.

In view of the foregoing, it is requested that the rejection of Claims 21, 26 and 34 under 35 U.S.C. § 103 be withdrawn.

CONCLUSION

Claims 1-123 were pending and were rejected. In view of the foregoing, it is requested that Claims 1-123 be allowed. If the Examiner wants to discuss any aspect of this application, the Examiner is invited to telephone Applicant's undersigned attorney at (408) 945-9912.

I hereby certify that this correspondence is being transmitted via facsimile to the U.S. Patent and Trademark Office, Group Art Unit 2155, facsimile number (571) 273 8300, on March 2, 2006.

3-2-06 [signature]
Date Signature

Respectfully submitted,

[signature]
David R. Graham
Reg. No. 36,150
Attorney for Applicant

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/717,184 | 11/20/2000 | Trevor I. Blumenau | BLU-005 | 9528 |

7590 06/01/2006

David R. Graham
1337 Chewpon Avenue
Milpitas, CA 95035

| EXAMINER | |
|---|---|
| TRAN, PHILIP B | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2155 | |

DATE MAILED: 06/01/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/717,184 | BLUMENAU, TREVOR I. |
| | **Examiner** | **Art Unit** |
| | Philip B. Tran | 2155 |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *02 March 2006*.

2a)☒ This action is **FINAL**. 2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-123* is/are pending in the application.

4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-123* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on *30 March 2006* is/are: a)☒ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
5) ☐ Notice of Informal Patent Application (PTO-152)
6) ☐ Other: _____.

## *Response to Request for Reconsideration*

1. This office action is in response to the Request for Reconsideration filed on 03/02/2006. Claims 1-123 are presented for further examination.

### *Claim Rejections - 35 USC § 102*

2. The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

3. Claims 1-20, 22-25, 27-33 and 35-123 are rejected under 35 U.S.C. 102(e) as being anticipated by Kenner et al (Hereafter, Kenner), U.S. Pat. No. 5,956,716.

Regarding claim 1, Kenner teaches apparatus for effecting the provision of content over a network, comprising:

means for receiving a request from a client for specified content (= requesting and retrieving video clips by the user at the user multimedia terminal) [see Abstract and Col. 4, Lines 43-64];

means for communicating to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server (= communicating between the web server and the user terminal for transmitting web page and video clips to the user terminal) [see Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49]; and

means for ascertaining that the node server transmitted the specified content to the client (= locating audio/video content on servers to transmit to the users) [see Col. 5, Lines 16-64], wherein an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client (= placing advertisements and promotions) [see Col. 4, Lines 7-34 and Col. 19, Lines 8-37].

Regarding claims 2-8, Kenner further teaches wherein the incentive varies in accordance with the bandwidth and/or latency performance of the node server in transmitting the specified content to the client, in accordance with the bandwidth and/or latency performance of the node server relative to the bandwidth and/or latency characteristics of one or more other node servers that can provide the specified content to the client, in accordance with the number and/or topological proximity of one or more other node servers that can provide the specified content to the client, in accordance with the time of day at which the node server transmits the specified content to the client, wherein obtaining information regarding the characteristics of the transmission of the content such as when the content was delivered and regarding the bandwidth and/or latency performance associated with the transmission of the content (= bandwidth and/or latency performance and geographical proximity and timestamp) [see Col. 5, Lines 39-64 and Col. 12, Lines 14-55 and Col. 23, Lines 25-65 and Col. 25, Lines 21-54].

Regarding claims 9-11, Kenner further teaches means for identifying a plurality of node servers within the network that can act as a node server for distribution of the specified content, means for selecting from the plurality of node servers one or more candidate node servers, means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the specified content via the network from one of the candidate node servers, means for determining the location of the client within the network, means for identifying the locations of the plurality of node servers that can act as a node server for distribution of the specified content, wherein the means for selecting one or more candidate node servers further comprises means for selecting from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client, wherein the determination of topological proximity to the client is performed using a breadth-first search to identify node servers that satisfy a criterion regarding topological proximity to the client [see Fig. 4 and Abstract and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

Regarding claims 12-14, Kenner further teaches means for identifying a network site that will act as a node server for distribution of the specified content, means for providing the specified content to the node server, means for identifying the location of a prospective node server that desires to act as a node server for distribution of the specified content, means for identifying the location of one or more other existing node servers that can act as a node server for distribution of the specified content, means for determining the topological proximity of the prospective node server to the existing node

servers, wherein the prospective node server is selected as a node server for distribution of the specified content if the prospective node server satisfies a criterion regarding topological proximity to the existing node servers, wherein the means for determining the topological proximity of the prospective node server to the existing node servers is performed using an annealing method [see Fig. 4 and Col. 23, Lines 3-65].

Regarding claims 15-17, Kenner further teaches means for storing data identifying available content that can be obtained by a client, means for providing an identification of available content to the client, and means for storing data identifying the location of the node server and wherein the content comprises visual content including moving images [see Fig. 4 and Col. 4, Line 43 to Col. 6, Line 16].

Regarding claims 18-20, Kenner further teaches the network is a computer network, the Internet, a television network [see Fig. 4 and Col. 8, Lines 14-50].

Regarding claims 22-25 and 27-28, Kenner further teaches a core server and a node server wherein the node server comprises means for storing the specified content and means for receiving a request to transmit the specified content to the client, means for transmitting the specified content to the client, and wherein the core server comprises means for identifying a network site that will act as a node server for distribution of the specified content, means for providing the specified content to the node server, means for receiving the specified content from the core server, wherein the

core server and the node server are each implemented at least in part in a computer, wherein the node server is implemented at least in part in a television set-top box or at least in part in a portable device, wherein the client comprising means for transmitting the request for the specified content to the core server, means for receiving the identity of the node server from the core server and means for receiving the specified content from the node server, wherein the node server and the client are each implemented at least in part in a television set-top box [see Fig. 4 and Abstract and Col. 8, Lines 14-50 and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

Regarding claims 29-33, Kenner further teaches the apparatus is a core server and the client comprising means for transmitting the request for the specified content to the core server, means for receiving the identity of the node server from the core server, means for receiving the specified content from the node server, means for transmitting a request to the node server to transmit the specified content to the client, means for monitoring the characteristics of the transmission of the specified content from the node server to obtain auditing information regarding the transmission of the specified content from the node server to the client, and means for transmitting the auditing information to the core server, wherein the core server and the client are each implemented at least in part in a computer, wherein the client is implemented at least in part in a television set-top box [see Fig. 4 and Col. 8, Lines 14-50 and Col. 23, Lines 3-65].

Regarding claim 35, Kenner teaches apparatus for effecting the provision of content over a network, comprising:

means for receiving a request for content from a client (= requesting and retrieving video clips by the user at the user multimedia terminal) [see Abstract and Col. 4, Lines 43-64]; and

means for determining the location of the client within the network, means for identifying the location of a plurality of node servers within the network that have at least part of the requested content stored thereon, means for selecting from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client, and means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers (= determining the closest server containing the request video clips and geographical distribution) [see Fig. 4 and Abstract and Col. 5, Lines 39-64 and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

Regarding claims 36-38, Kenner further teaches wherein the determination of topological proximity to the client is performed using a breadth-first search to identify node servers that satisfy a criterion regarding topological proximity to the client, and further comprising means for storing a topological database including a topological map of the network, wherein the means for selecting uses the topological map in making determinations of topological proximity to the client, wherein the topological database

further includes data regarding bandwidth capacity and/or latency between at least some of the network sites included in the topological map [see Fig. 4 and Col. 23, Lines 3-65].

Regarding claim 39, Kenner further teaches apparatus as in claim 35, further comprising means for ascertaining which of the one or more of the candidate node servers transmitted requested content to the client (= locating audio/video content on servers to transmit to the users) [see Col. 5, Lines 16-64], wherein an owner of such node server is offered an incentive as compensation for transmission of requested content to the client (= placing advertisements and promotions) [see Col. 4, Lines 7-34 and Col. 19, Lines 8-37].

Claims 40-42 are rejected under the same rationale set forth above to claims 12-14.

Claims 43-45 are rejected under the same rationale set forth above to claims 15-17.

Claims 46-48 are rejected under the same rationale set forth above to claims 18-20.

Regarding claims 49-51, Kenner further teaches wherein the apparatus is a core server, the system further comprising one of the plurality of node servers, the node server comprising means for storing at least part of the requested content, means for

receiving a request to transmit content to the client, and means for transmitting the requested content to the client and the client comprising means for transmitting a request for content to the core server, means for receiving the identity of one or more candidate node servers from the core server, means for selecting one or more of the candidate node servers from which to obtain content, means for transmitting a request to a selected node server to transmit content to the client, and means for receiving content in response to the request transmitted to the node server [see Fig. 4 and Abstract and Col. 5, Lines 17-64 and Col. 23, Lines 3-65].

Regarding claim 52, Kenner teaches apparatus for effecting the provision of content over a network, comprising:

means for identifying which of a plurality of sets of content or parts of the plurality of sets of content are stored by each of a plurality of node servers that are part of the network, wherein at least one of the plurality of sets of content or parts of the plurality of sets of content is stored on redundant node servers (= locating audio/video content on servers to transmit to the users) [see Fig. 4 and Abstract and Col. 5, Lines 16-64 and Col. 16, Lines 14-61 and Col. 23, Lines 3-65];

means for receiving a request from a client that is part of the network for transmission of a set of content to the client, wherein at least part of the requested set of content is stored on redundant node servers (= requesting and retrieving video clips by the user at the user multimedia terminal) [see Abstract and Col. 4, Lines 43-64]; and

means for selecting from the plurality of node servers one or more candidate node servers that have stored thereon at least part of the requested set of content, and means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers (= communicating the user to the servers for requesting contents) [see Fig. 4 and Col. 23, Lines 3-65].

Regarding claims 53-55, Kenner further teaches wherein the candidate node servers do not include all of the redundant node servers on which requested content is stored, and further comprising means for storing data representing a topological map of the network and means for determining the location of the client within the network, and wherein the means for selecting one or more candidate node servers further comprises means for selecting one or more candidate node servers that are determined to be topologically proximate to the client, wherein the determination of topological proximity to the client is performed using a breadth-first search to identify node servers that satisfy a criterion regarding topological proximity to the client [see Fig. 4 and Abstract and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

Regarding claim 56, Kenner further teaches means for ascertaining which of the one or more of the candidate node servers transmitted requested content to the client (= locating audio/video content on servers to transmit to the users) [see Col. 5, Lines 16-64], wherein an owner of such node server is offered an incentive as compensation for

transmission of requested content to the client (= placing advertisements and promotions) [see Col. 4, Lines 7-34 and Col. 19, Lines 8-37].

Claims 57-59 are rejected under the same rationale set forth above to claims 11-13.

Claims 60-62 are rejected under the same rationale set forth above to claims 15-17.

Claims 63-65 are rejected under the same rationale set forth above to claims 18-20.

Regarding claims 66-68, Kenner further teaches the node server comprising means for storing a set of content or part of a set of content, means for receiving a request to transmit a set of content or part of a set of content to the client, and means for transmitting the requested set of content or part of a set of content to the client and the client comprising means for transmitting a request for a set of content to the core server, means for receiving the identity of one or more candidate node servers from the core server, means for selecting one or more of the candidate node servers from which to obtain content, means for transmitting a request to a node server to transmit a set of content or part of a set of content to the client, and means for receiving a set of content or part of a set of content in response to the request transmitted to the node server [see Fig. 4 and Abstract and Col. 5, Lines 17-64 and Col. 23, Lines 3-65].

Claim 69 is rejected under the same rationale set forth above to claim 52.

Claim 70 is rejected under the same rationale set forth above to claim 56.

Claims 71-72 are rejected under the same rationale set forth above to claims 57-59.

Regarding claim 73, Kenner further teaches the content comprises visual content including moving images [see Col. 6, Lines 1-16].

Claims 74-76 are rejected under the same rationale set forth above to claims 66-68.

Claim 77 is rejected under the same rationale set forth above to claim 1.

Claims 78-80 are rejected under the same rationale set forth above to claims 2-8.

Claims 81-83 are rejected under the same rationale set forth above to claims 9-11.

Claims 84-86 are rejected under the same rationale set forth above to claims 12-14.

Claims 87-88 are rejected under the same rationale set forth above to claims 15-17.

Claims 89-91 are rejected under the same rationale set forth above to claims 22-25 and 27-28.

Claims 92-94 are rejected under the same rationale set forth above to claims 29-33.

Claim 95 is rejected under the same rationale set forth above to claim 35.

Claims 96-98 are rejected under the same rationale set forth above to claims 36-38.

Claim 99 is rejected under the same rationale set forth above to claim 39.

Claims 100-102 are rejected under the same rationale set forth above to claims 40-42.

Claims 103-104 are rejected under the same rationale set forth above to claims 43-45.

Claims 105-107 are rejected under the same rationale set forth above to claims 49-51.

Claim 108 is rejected under the same rationale set forth above to claim 52.

Claims 109-111 are rejected under the same rationale set forth above to claims 53-55.

Claim 112 is rejected under the same rationale set forth above to claim 56.

Claims 113-115 are rejected under the same rationale set forth above to claims 57-59.

Claims 116-117 are rejected under the same rationale set forth above to claims 60-62.

Claims 118-120 are rejected under the same rationale set forth above to claims 66-68.

Claim 121 is rejected under the same rationale set forth above to claim 1.

Claim 122 is rejected under the same rationale set forth above to claim 35.

Claim 123 is rejected under the same rationale set forth above to claim 52.

***Claim Rejections - 35 USC § 103***

4. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

5. Claims 21, 26 and 34 are rejected under 35 U.S.C. 103(a) as being unpatentable over Kenner et al (Hereafter, Kenner), U.S. Pat. No. 5,956,716.

Regarding claims 21 and 26 and 34, Kenner does not explicitly teach the network is a wireless communications network and the node server is implemented at least in part in a portable device and the client is implemented at least in part in a portable device. However, it would have been obvious to one of skilled in the art to implement a wireless communications network and devices in the networks are portable devices because it would have enabled the user to be mobilized while efficiently communicating with other devices wirelessly in the network from the remote area.

***Response to Arguments***

6. Applicant's arguments have been fully considered but they are not persuasive because of the following reasons:

Applicant argues that Kenner does not teach or suggest "means for communicating to a client the identity of a node server having the specified content

stored thereon, thereby enabling the client to request transmission of the specified

content from the node server" as recited in claim 1 [see Remarks, Pages 4-6].

The examiner respectfully disagrees. Kenner explicitly teaches apparatus for

effecting the provision of content over a network comprising means for receiving a

request from a client for specified content. For example, Kenner discloses requesting

and retrieving video clips by the user at the user multimedia terminal [see Kenner,

Abstract and Col. 4, Lines 43-64]. In addition, Kenner further teaches means for

communicating to the client the identity of a node server having the specified content

stored thereon, thereby enabling the client to request transmission of the specified

content from the node server. For example, Kenner discloses communications between

the web server and the user terminal for transmitting web page and video clips to the

user terminal [see Kenner, Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49].

Applicant further argues that an architecture for effecting the provision of content

over a network as in claim 1 provides advantages not provided by an architecture as

taught by Kenner et al. For example, with an architecture as in claim 1, the client can

evaluate the capabilities of node server(s) to deliver content and request transmission of

the content from node server(s) that can best provide the content to the client. For

instance, as described in Applicant's specification at page 27, lines 16-35, the client can

determine topological proximity of node server(s), evaluate the bandwidth and/or

latency performance of node server(s), consider other scheduled content delivery by

node server(s), and/or analyze (e.g., trend analysis) operation of node server(s), then

select node server(s) for delivery of content to the client based on one or more of those evaluations [see Remarks, Page 6].

The examiner respectfully disagrees. *In response to applicant's argument that the references fail to show certain features of applicant's invention, it is noted that the features upon which applicant relies* (i.e., the client can evaluate the capabilities of node server(s) to deliver content and request transmission of the content from node server(s) that can best provide the content to the client. For instance, as described in Applicant's specification at page 27, lines 16-35, the client can determine topological proximity of node server(s), evaluate the bandwidth and/or latency performance of node server(s), consider other scheduled content delivery by node server(s), and/or analyze (e.g., trend analysis) operation of node server(s), then select node server(s) for delivery of content to the client based on one or more of those evaluations) *are not recited in the rejected claim(s). Although the claims are interpreted in light of the specification, limitations from the specification are not read into the claims.* See ***In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993).**

It is noted that if the features upon which applicant relies are not recited in the rejected claim 1 as argued by the applicant, then an architecture for effecting the provision of content over a network as in claim 1 cannot provides advantages over an architecture as taught by Kenner.

Applicant also argues that Kenner does not teach or suggest "an owner of a node server can be offered an incentive as compensation for transmission of specified content to a client" as recited in claim 1 [see Remarks, Pages 7-9].

The examiner respectfully disagrees. Kenner further teaches means for ascertaining that the node server transmitted the specified content to the client. That is, Kenner discloses locating audio/video content on servers to transmit to the users [see Kenner, Col. 5, Lines 16-64]. Last but not least, Kenner does teach an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client. For example, Kenner discloses, based on broadest interpretation, drug companies (owner of on-line website) placing advertisements and promotions for downloading the requested audio-visual information of their products [see Kenner, Col. 19, Lines 8-37]. In addition, Kenner discloses the subscription to access to the services may be free (incentive) and some clips might be free (incentive) with an appropriate subscription [see Kenner, Col. 33, Lines 34-57 and Col. 34, Lines 16-28].

In view of the foregoing, the examiner asserts that the cited reference (Kenner et al, U.S. Pat. No. 5,956,716) does teach or suggest the subject matter recited in independent claim 1. Claims 2-20, 22-25 and 27-34 depend, either directly or indirectly, on claim 1 and are therefore rejected at least by virtue of their dependency on independent claim 1 and by other reasons set forth above.

In addition, applicant further argues that Kenner does not teach or suggest "means for communicating the identity of the candidate node servers to the client to

enable the client to request transmission of the requested content via the network from one or more of the candidate node servers" as recited in claim 35 [see Remarks, Pages 9-10].

The examiner respectfully disagrees. Kenner explicitly teaches apparatus for effecting the provision of content over a network comprising means for receiving a request from a client for specified content. For example, Kenner discloses requesting and retrieving video clips by the user at the user multimedia terminal [see Kenner, Abstract and Col. 4, Lines 43-64]. In addition, Kenner further teaches means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers. For example, Kenner discloses communications between the web server and the user terminal for transmitting web page and video clips to the user terminal [see Kenner, Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49] and determining the closest server containing the request video clips and geographical distribution [see Kenner, Fig. 4 and Abstract and Col. 5, Lines 39-64 and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

In view of the foregoing, the examiner asserts that the cited reference (Kenner et al, U.S. Pat. No. 5,956,716) does teach or suggest the subject matter recited in independent claim 35. Claims 36-51 depend, either directly or indirectly, on claim 35 and are therefore rejected at least by virtue of their dependency on independent claim 35 and by other reasons set forth above.

Similarly, applicant repeatedly argues that Kenner does not teach or suggest "means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers" as recited in claim 52 [see Remarks, Pages 11-12].

The examiner respectfully disagrees. Kenner explicitly teaches apparatus for effecting the provision of content over a network comprising means for receiving a request from a client for specified content. For example, Kenner discloses requesting and retrieving video clips by the user at the user multimedia terminal [see Kenner, Abstract and Col. 4, Lines 43-64]. In addition, Kenner further teaches means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers. For example, Kenner discloses communications between the web server and the user terminal and the web server for requesting contents [see Kenner, Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49].

In view of the foregoing, the examiner asserts that the cited reference (Kenner et al, U.S. Pat. No. 5,956,716) does teach or suggest the subject matter recited in independent claim 52. Claims 53-68 depend, either directly or indirectly, on claim 52 and are therefore rejected at least by virtue of their dependency on independent claim 52 and by other reasons set forth above.

Similarly, applicant repeatedly argues that Kenner does not teach or suggest "means for communicating the identity of the candidate node server television set-top boxes to the client television set-top box to enable the client television set-top box to request transmission of the requested content via the network from one or more of the candidate node server television set top boxes" as recited in claim 69 [see Remarks, Pages 12-13].

The examiner respectfully disagrees. Kenner explicitly teaches apparatus for effecting the provision of content over a network comprising means for receiving a request from a client for specified content. For example, Kenner discloses requesting and retrieving video clips by the user at the user multimedia terminal [see Kenner, Abstract and Col. 4, Lines 43-64]. In addition, Kenner further teaches means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers. For example, Kenner discloses communications between the web server and the user terminal and the web server for requesting contents [see Kenner, Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49].

In view of the foregoing, the examiner asserts that the cited reference (Kenner et al, U.S. Pat. No. 5,956,716) does teach or suggest the subject matter recited in independent claim 69. Claims 70-76 depend, either directly or indirectly, on claim 69 and are therefore rejected at least by virtue of their dependency on independent claim 69 and by other reasons set forth above.

Claim 77 is rejected under the same rationale set forth above to claim 1. Claims 78-94 depend, either directly or indirectly, on claim 77 and are therefore rejected at least by virtue of their dependency on independent claim 77 and by other reasons set forth above.

Claim 95 is rejected under the same rationale set forth above to claim 35. Claims 96-107 depend, either directly or indirectly, on claim 95 and are therefore rejected at least by virtue of their dependency on independent claim 95 and by other reasons set forth above.

Claim 108 is rejected under the same rationale set forth above to claim 52. Claims 109-120 depend, either directly or indirectly, on claim 108 and are therefore rejected at least by virtue of their dependency on independent claim 108 and by other reasons set forth above.

Claim 121 is rejected under the same rationale set forth above to claim 1. Claim 122 is rejected under the same rationale set forth above to claim 35. Claim 123 is rejected under the same rationale set forth above to claim 52.

Claims 21, 26 and 34 depend, either directly or indirectly, on claim 1 and are therefore rejected at least by virtue of their dependency on independent claim 1 and by other reasons set forth above.

In view of the foregoing, the examiner asserts that the cited reference (Kenner et al, U.S. Pat. No. 5,956,716) does teach or suggest the subject matter recited in claims 1-123. Accordingly, the examiner respectfully maintains the rejections for claims 1-123 as shown above.

***Conclusion***

7. THIS ACTION IS MADE FINAL. Applicant is reminded of the extension of time policy as set forth in 37 CAR 1.136(a).

**A SHORTENED STATUTORY PERIOD FOR REPLY TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE MAILING DATE OF THIS ACTION. IN THE EVENT A FIRST REPLY IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 CAR 1.136(A) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT, HOWEVER, WILL THE STATUTORY PERIOD FOR REPLY EXPIRE LATER THAN SIX MONTHS FROM THE MAILING DATE OF THIS FINAL ACTION.**

8. Any inquiry concerning this communication or earlier communications from the examiner should be directed to Philip Tran whose telephone number is (571) 272-3991. The Group fax phone number is (571) 273-8300. If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Saleh Najjar, can be reached on (571) 272-4006.

9. Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

Philip Tran

Philip B. Tran
Primary Examiner
Art Unit 2155
May 24, 2006

BEST AVAILABLE COPY

REMARKS

Rejection of Claims and Summary of Response

Claims 1-123 were pending. Claims 1-20, 22-25, 27-33 and 35-123 were rejected under 35 U.S.C. § 102. Claims 21, 26 and 34 were rejected under 35 U.S.C. § 103. Claims 124-127 have been added. Reconsideration and allowance of Claims 1-123, and allowance of Claims 124-127, is requested.

Rejection of Claims under 35 U.S.C. § 102

In the Office Action, Claims 1-20, 22-25, 27-33 and 35-123 were rejected under 35 U.S.C. § 102 as being anticipated by Kenner et al. (U.S. Patent No. 5,956,716).

In response to Applicant's remarks in the previous Office Action response regarding the rejection of Claim 1, the Office Action states:

> Applicant argues that Kenner does not teach or suggest "means for communicating to a client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server" as recited in Claim 1 [see Remarks, Pages 4-6].
>
> The examiner respectfully disagrees. Kenner explicitly teaches apparatus for effecting the provision of content over a network comprising means for receiving a request from a client for specified content. For example, Kenner discloses requesting and retrieving video clips by the user at the user multimedia terminal [see Kenner, Abstract and Col. 4, Lines 43-64]. In addition, Kenner further teaches means for communicating to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server. For example, Kenner discloses communications between the web server and the user terminal for transmitting web page and video clips to the user terminal [see Kenner, Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49].

PAGE 49/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

In the previous Office Action response, Applicant contended that "Kenner et al. do not teach or suggest 'means for communicating to [a] client the identity of a node server having ... specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server,' as recited in Claim 1," as stated in the above-quoted section of the Office Action. Whether "Kenner explicitly teaches apparatus for effecting the provision of content over a network, comprising means for receiving a request from a client for specified content," as further stated in the above-quoted section of the Office Action is inapposite with respect to that contention.

Moreover, it is not the case that "Kenner ... teaches means for communicating to [a] client the identity of a node server having ... specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server," as further stated in the above-quoted section of the Office Action. As pointed out in the previous Office Action response, "[r]ather, Kenner et al. teach that an entity (PIM 22) to which a user terminal (analogous to the "client" in Claim 1) communicates a request for a video (content) creates another entity (DSI 30) which requests transmission of video clips of the video to the user terminal" (see the detailed discussion of the teaching of Kenner et al. at pages 5-6 of the previous Office Action response and, in particular, the teaching of Kenner et al. at column 7, lines 14-35 of the Kenner et al. patent that is quoted there). As indicated by that teaching, the PIM 22 does

PAGE 50/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

not communicate the identity of an entity (the DSI 30 or any other entity) to a user terminal to enable the user terminal to request the transmission of specified content from that entity (or another entity with which that entity communicates).

The above-discussed teaching of Kenner et al., and the remarks in the previous Office Action response regarding that teaching, have not been addressed in the present Office Action. Instead, the present Office Action merely repeats the contention from the previous Office Action that "Kenner discloses communications between [a] web server and [a] user terminal for transmitting web page and video clips to the user terminal [see Kenner, Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49]." Even assuming arguendo that Kenner et al. do so teach, such teaching does not constitute teaching or suggestion of the "means for communicating to [a] client the identity of a node server" recited in Claim 1. Column 22, line 63 to column 23, line 49 of the Kenner et al. patent states:

> The user can, using the browser software 82 on the user terminal 50, browse the Web, accessing Web pages and selecting links as is known in the art. At some point, the user may wish to access a video clip handled by the subscription service. This is done by accessing a Web page on a content provider's Web server 83 or elsewhere. The desired clip may or may not be among those the user has subscribed to.
>
> The content provider's Web server 83 can automatically, on the basis of a combination of the user's and the ISP's subscription parameters known to the content provider, create customized Web pages for each user. This procedure is known in the art. Preferably, the custom Web pages can be created on the ISP's regional Web server 68 (part of the PIM 64). Such an action can be undertaken at regular intervals, for example daily or whenever new content is made available to the system, or immediately upon access by a user. By

PAGE 51/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

> accessing custom Web pages, the user will be informed of what subscription content is available, based on subscription information, contained in the user database discussed above. In this way, the ISP can create a "video guide" set of Web pages containing information the user is interested in, including subscribed-to video clips. The information contained in the ISP's "video guide" can be integrated with the information stored on the user's local SRU 51, thereby providing a seamless view of all content available. By selecting a link on the custom Web pages, the user can request a Web page containing subscription content, which will then be delivered by the system of the invention, even if it is not present within the user's region 81.
>
> At that time, the ISP's Web server 68 (or other Web server 83 or 93) begins to transmit the Web page to the user terminal 50 via traditional means over the Internet 56. Accordingly, data moves from the server (e.g. server 83) to the corresponding router 86 to the Internet 56 (across potentially many nodes) to the user's ISP's router 112 to the head-end communication interface 54, and eventually to the terminal 50. A reference to a desired clip is embedded within the HTML of the Web page. When the user's browser 82, e.g. Netscape Navigator, receives the reference, supplied for example within an EMBED tag, an immediate request is made of the Web server 83 to transmit the embedded file.
>
> The type or format of the embedded file is analyzed by the browser 82. Typically, this is indicated by an extension on the filename of the embedded file and is known in the art. If the desired file is a video clip, the local SRU 51 belonging to the terminal 50 and the browser extension 84 are invoked to receive the data. First, the local SRU 51 intercepts a video ID, a unique identifier specifying the selected clip, which is stored within the EMBED field in the Web page. The local SRU 51 first determines if the desired clip is already stored locally. If not, the local SRU 51 passes the video ID to the PIM 64 associated with the user's terminal 50. The local SRU 51 then awaits authorization from the PIM 64 to proceed with a data transfer.

As can be seen, the foregoing section of the Kenner et al. patent does not teach or suggest the "means for communicating to [a] client the identity of a node server" recited in Claim 1. After

PAGE 52/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

content is requested by the user terminal 50, the next communication the user terminal receives is a download of the content (or a communication that the content is not available); the user terminal 50 does not receive an identification of an entity from which the content can be downloaded so that the user terminal 50 can then communicate with that entity to effect the content download. If the Examiner continues to contend that the foregoing section of the Kenner et al. patent teaches the "means for communicating to [a] client the identity of a node server" recited in Claim 1, the Examiner is requested to more particularly identify that teaching.

Further in response to Applicant's remarks in the previous Office Action response regarding the rejection of Claim 1, the Office Action states:

> Applicant further argues that an architecture for effecting the provision of content over a network as in Claim 1 provides advantages not provided by an architecture as taught by Kenner et al. For example, with an architecture as in Claim 1, the client can evaluate the capabilities of node server(s) to deliver content and request transmission of the content from node server(s) that can best provide the content to the client. For instance, as described in Applicant's specification at page 27, lines 16-35, the client can determine topological proximity of node server(s), evaluate the bandwidth and/or latency performance of node server(s), consider other scheduled content delivery by node server(s), and/or analyze (e.g., trend analysis) operation of node server(s), then select node server(s) for delivery of content to the client based on one or more of those evaluations [see Remarks, Page 6].
>
> The examiner respectfully disagrees. <u>In response to applicant's argument that the references fail to show certain features of applicant's invention, it is noted that the features upon which applicant relies</u> (i.e., the client can evaluate the capabilities of node server(s) to deliver content and request transmission

PAGE 53/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

of the content from node server(s) that can best provide the content to the client. For instance, as described in Applicant's specification at page 27, lines 16-35, the client can determine topological proximity of node server(s), evaluate the bandwidth and/or latency performance of node server(s), consider other scheduled content delivery by node server(s), and/or analyze (e.g., trend analysis) operation of node server(s), then select node server(s) for delivery of content to the client based on one or more of those evaluations) <u>are not recited in the rejected claims. Although the claims are interpreted in light of the specification, limitations from the specification are not read into the claims</u>. See In re Van Guens, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993).

It is noted that if the features upon which applicant relies are not recited in the rejected claim 1 as argued by the applicant, then an architecture for effecting the provision of content over a network as in claim 1 cannot provides advantages over an architecture as taught by Kenner.

In the previous Office Action response, Applicant stated that "[a]n architecture for effecting the provision of content over a network as in Claim 1 provides advantages not provided by an architecture as taught by Kenner et al." Applicant then identified advantageous capabilities that are enabled by that architecture. Applicant did not argue that those capabilities are recited in Claim 1, and the statements in the Office Action to the contrary misrepresent Applicant's remarks in the previous Office Action response. Rather, Applicant noted that the architecture for effecting the provision of content over a network as in Claim 1 (i.e., apparatus that includes "means for communicating to [a] client the identity of a node server having ... specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server") enables, for example, the client to evaluate the

PAGE 54/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

capabilities of node server(s) to deliver content and request transmission of the content from node server(s) that can best provide the content to the client (e.g., the client can determine topological proximity of node server(s), evaluate the bandwidth and/or latency performance of node server(s), consider other scheduled content delivery by node server(s), and/or analyze operation of node server(s), then select node server(s) for delivery of content to the client based on one or more of those evaluations). <u>Applicant identified these advantageous capabilities, which are not enabled by the invention taught by Kenner et al., to highlight the aspect of Claim 1 not taught or suggested by Kenner et al. (as had been previously discussed), i.e., means for communicating to a client the identity of a node server having requested content stored thereon</u>.

Further in response to Applicant's remarks in the previous Office Action response regarding the rejection of Claim 1, the Office Action states:

> Applicant also argues that Kenner does not teach or suggest "an owner of a node server can be offered an incentive as compensation for transmission of specified content to a client" as recited in claim 1 [see Remarks, Pages 7-9].
>
> The examiner respectfully disagrees. Kenner further teaches means for ascertaining that the node server transmitted the specified content to the client. That is, Kenner discloses locating audio/video content on servers to transmit to the users [see Kenner, Col. 5, Lines 16-64]. Last but not least, Kenner does teach an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client. For example, Kenner discloses, based on broadest interpretation, drug companies (owner of on-line website) placing advertisements and promotions for downloading the requested audio-visual information of their products [see Kenner, Col. 19, Lines 8-37]. In

addition, Kenner discloses the subscription to access to the services may be free (incentive) and some clips might be free (incentive) with an appropriate subscription [see Kenner, Col. 33, Lines 34-57 and Col. 34, Lines 16-28].

In the above-quoted section of the Office Action, it is contended that "Kenner discloses locating audio/video content on servers to transmit to the users" and that such description constitutes teaching of means for ascertaining that a node server transmitted specified content to a client. However, that is clearly not the case. Locating audio/video content on servers to transmit to the users simply is not ascertaining that a node server transmitted specified content to a client: identifying that a server has content stored thereon indicates nothing about whether that server actually transmitted the content to another entity. Moreover, whether "Kenner discloses locating audio/video content on servers to transmit to the users" is clearly inapposite with respect to Applicant's contention in the previous Office Action response, discussed in the above-quoted section of the Office Action, that "Kenner et al. also do not teach or suggest that an owner of a node server can be offered an incentive as compensation for transmission of specified content to a client, as recited in Claim 1."

Further, contrary to the contention in the Office Action, the statement at column 19, lines 35-37 of the Kenner et al. patent that "drug companies may place advertisements about promotional drugs on the video clips for use by the physician" does not constitute teaching that an owner of a node server can be offered an incentive as compensation for transmission of

PAGE 56/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

specified content to a client, as recited in Claim 1. In Example 2 described in the Kenner et al. patent at column 19, lines 8-37, the third party text database can be analogous to the apparatus recited in Claim 1 (i.e., receives requests for content), the physician can be analogous to the client recited in Claim 1 (i.e., makes requests for content), and a drug video can be analogous to the specified content recited in Claim 1. However, the drug companies are not analogous to node server owners and do not operate node servers. The drug companies do not receive requests for content from physicians nor provide content to physicians. To the extent that the capability of placing an advertisement in a drug video is compensation to a drug company, that is compensation for allowing the drug video (which is produced by the drug company) to be provided to physicians (i.e., compensation to a content owner for allowing its content to be provided to others), not compensation for the physical act of providing the drug videos to physicians (i.e., not compensation for transmitting specified content to others).

Additionally, the contention in the Office Action that Kenner et al.'s teaching that "[a] subscription to access to [s]ervices may be free (incentive) and some clips might be free (incentive) with an appropriate subscription [see Kenner, Col. 33, Lines 34-57 and Col. 34, Lines 16-28]" constitutes compensation to a node server is clearly incorrect. Those sections of the Kenner et al. patent concern aspects of subscriptions by end users, i.e., clients. Thus, even assuming arguendo that provision of a free subscription and/or a free clip

PAGE 57/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

is compensation, that compensation is to a client, not a node server owner as in the method of Claim 1. Moreover, such "compensation" is not given for transmitting content via a network, as is the case in the method of Claim 1.

Finally, in response to Applicant's remarks in the previous Office Action response regarding the rejection of Claim 1, the Office Action states:

> In view of the foregoing, the examiner asserts that the cited reference (Kenner et al, U.S. Pat. No. 5,956,716) does teach or suggest the subject matter recited in independent claim 1. Claims 2-20, 22-25 and 27-34 depend, either directly or indirectly, on claim 1 and are therefore rejected at least by virtue of their dependency on independent claim 1 and by other reasons set forth above.

As discussed above, Kenner et al. do not teach or suggest a method as recited in Claim 1. Further, even if Kenner et al. did teach or suggest a method as recited in Claim 1, that would not then necessarily render claims dependent on Claim 1 unpatentable over the teaching of Kenner et al., as erroneously contended in the Office Action. (In contrast, dependency on an allowable claim does make a claim allowable, as pointed out in the previous Office Action response with respect to the dependent claims of this application and again below in this Response.)

In view of the foregoing, Claim 1 is allowable over the teaching of Kenner et al. Claims 2-20, 22-25 and 27-34 each depend, either directly or indirectly, on Claim 1 and are therefore allowable as dependent on an allowable claim.

In response to Applicant's remarks in the previous Office Action response regarding the rejection of Claim 35, the Office Action states:

> In addition, applicant further argues that Kenner does not teach or suggest "means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers," as recited in claim 35 [see Remarks, Pages 9-10].
>
> The examiner respectfully disagrees. Kenner explicitly teaches apparatus for effecting the provision of content over a network comprising means for receiving a request from a client for specified content. For example, Kenner discloses requesting and retrieving video clips by the user at the user multimedia terminal [see Kenner, Abstract and Col. 4, Lines 43-64]. In addition, Kenner further teaches means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers. For example, Kenner discloses communications between the web server and the user terminal for transmitting web page and video clips to the user terminal [see Kenner, Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49] and determining the closest server containing the request video clips and geographical distribution [see Kenner, Fig. 4 and Abstract and Col. 5, Lines 39-64 and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].
>
> In view of the foregoing, the examiner asserts that the cited reference (Kenner et al, U.S. Pat. No. 5,956,716) does teach or suggest the subject matter recited in independent claim 35. Claims 36-51 depend, either directly or indirectly, on claim 35 and are therefore rejected at least by virtue of their dependency on independent claim 35 and by other reasons set forth above.

For reasons as discussed above with respect to Claim 1, Kenner et al. do not teach or suggest "means for communicating the identity of candidate node servers to [a] client to enable the client to request transmission of ... requested content via [a] network from one or more of the candidate node servers," as

PAGE 59/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

recited in Claim 35. In view of the foregoing, Claim 35 is allowable over the teaching of Kenner et al. Claims 36-51 each depend, either directly or indirectly, on Claim 35 and are therefore allowable as dependent on an allowable claim.

In response to Applicant's remarks in the previous Office Action response regarding the rejection of Claim 52, the Office Action states:

> Similarly, applicant repeatedly argues that Kenner does not teach or suggest "means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers" as recited in Claim 52 [see Remarks, Pages 11-12].
>
> The examiner respectfully disagrees. Kenner explicitly teaches apparatus for effecting the provision of content over a network comprising means for receiving a request from a client for specified content. For example, Kenner discloses requesting and retrieving video clips by the user at the user multimedia terminal [see Kenner, Abstract and Col. 4, Lines 43-64]. In addition, Kenner further teaches means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers. For example, Kenner discloses communications between the web server and the user terminal and the web server for requesting contents [see Kenner, Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49].
>
> In view of the foregoing, the examiner asserts that the cited reference (Kenner et al, U.S. Pat. No. 5,956,716) does teach or suggest the subject matter recited in independent claim 52. Claims 53-68 depend, either directly or indirectly, on claim 52 and are therefore rejected at least by virtue of their dependency on independent claim 52 and by other reasons set forth above.

For reasons as discussed above with respect to Claim 1, Kenner et al. do not teach or suggest "means for communicating the identity of ... candidate node servers to [a] client to

PAGE 60/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

enable the client to request transmission of ... requested content via [a] network from one or more of the candidate node servers," as recited in Claim 52. In view of the foregoing, Claim 52 is allowable over the teaching of Kenner et al. Claims 53-68 each depend, either directly or indirectly, on Claim 52 and are therefore allowable as dependent on an allowable claim.

In response to Applicant's remarks in the previous Office Action response regarding the rejection of Claim 69, the Office Action states:

> Similarly, applicant repeatedly argues that Kenner does not teach or suggest "means for communicating the identity of the candidate node server television set-top boxes to the client television set-top box to enable the client television set-top box to request transmission of the requested content via the network from one or more of the candidate node server television set top boxes," as recited in Claim 69 [see Remarks, Pages 12-13].
>
> The examiner respectfully disagrees. Kenner explicitly teaches apparatus for effecting the provision of content over a network comprising means for receiving a request from a client for specified content. For example, Kenner discloses requesting and retrieving video clips by the user at the user multimedia terminal [see Kenner, Abstract and Col. 4, Lines 43-64]. In addition, Kenner further teaches means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers. For example, Kenner discloses communications between the web server and the user terminal and the web server for requesting contents [see Kenner, Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49].
>
> In view of the foregoing, the examiner asserts that the cited reference (Kenner et al, U.S. Pat. No. 5,956,716) does teach or suggest the subject matter recited in independent claim 69. Claims 70-76 depend, either directly or indirectly, on claim 69 and are therefore rejected at least by virtue of their dependency on independent claim 69 and by other reasons set forth above.

DEC-01-2006 21:20 From:DAVID GRAHAM 4089459912 To:USPTO P.62/68

For reasons as discussed above with respect to Claim 1, Kenner et al. do not teach or suggest "means for communicating the identity of ... candidate node server television set-top boxes to [a] client television set-top box to enable the client television set-top box to request transmission of ... requested content via [a] network from one or more of the candidate node server television set-top boxes," as recited in Claim 69. In view of the foregoing, Claim 69 is allowable over the teaching of Kenner et al. Claims 70-76 each depend, either directly or indirectly, on Claim 69 and are therefore allowable as dependent on an allowable claim.

Regarding Claim 77, the Office Action stated that "Claim 77 is rejected under the same rationale set forth above to claim 1." Claim 77 is allowable over the teaching of Kenner et al. for the same reasons as given above with respect to Claim 1. Claims 78-94 each depend, either directly or indirectly, on Claim 77 and are therefore allowable as dependent on an allowable claim.

Regarding Claim 95, the Office Action stated that "Claim 95 is rejected under the same rationale set forth above to claim 35." Claim 95 is allowable over the teaching of Kenner et al. for the same reasons as given above with respect to Claim 35. Claims 96-107 each depend, either directly or indirectly, on Claim 95 and are therefore allowable as dependent on an allowable claim.

Regarding Claim 108, the Office Action stated that "Claim 108 is rejected under the same rationale set forth above to claim 52." Claim 108 is allowable over the teaching of Kenner

- 59 -

PAGE 62/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

Page 66 of 139

et al. for the same reasons as given above with respect to Claim 52. Claims 109-120 each depend, either directly or indirectly, on Claim 108 and are therefore allowable as dependent on an allowable claim.

Regarding Claim 121, the Office Action stated that "Claim 121 is rejected under the same rationale set forth above to claim 1." Claim 121 is allowable over the teaching of Kenner et al. for the same reasons as given above with respect to Claim 1.

Regarding Claim 122, the Office Action stated that "Claim 122 is rejected under the same rationale set forth above to claim 35." Claim 122 is allowable over the teaching of Kenner et al. for the same reasons as given above with respect to Claim 35.

Regarding Claim 123, the Office Action stated that "Claim 123 is rejected under the same rationale set forth above to claim 52." Claim 123 is allowable over the teaching of Kenner et al. for the same reasons as given above with respect to Claim 52.

In view of the foregoing, it is requested that the rejection of Claims 1-20, 22-25, 27-33 and 35-123 under 35 U.S.C. § 102 be withdrawn.

Rejection of Claims under 35 U.S.C. § 103

In the Office Action, Claims 21, 26 and 34 were rejected under 35 U.S.C. § 103 as unpatentable over Kenner et al. (U.S. Patent No. 5,956,716).

PAGE 63/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

Claims 21, 26 and 34 each depend, either directly or indirectly, on Claim 1 and are therefore allowable over the teaching of Kenner et al. for at least the reasons given above with respect to Claim 1.

In view of the foregoing, it is requested that the rejection of Claims 21, 26 and 34 under 35 U.S.C. § 103 be withdrawn.

New Claims

Claims 124-127 have been added.

Claim 124 recites:

> Apparatus for effecting the provision of content over a network, comprising:
>
> a receiver, wherein:
>
> the receiver is adapted to receive a request from a client for specified content; and
>
> the receiver is adapted to receive an identification of a node server that transmitted the specified content to the client, wherein an owner of the node server so identified is offered an incentive as compensation for transmission of the specified content to the client; and
>
> a transmitter, wherein the transmitter is adapted to communicate to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server so identified.

For reasons similar to those discussed above, Kenner et al. do not teach or suggest "[a]pparatus for effecting the provision of content over a network, comprising ... a transmitter ... adapted to communicate to [a] client the identity of a node server having ... specified content [requested by the client] stored thereon, thereby enabling the client to request transmission of the specified content from the node server so

identified," as recited in Claim 124. Likewise, for reasons similar to those discussed above, Kenner et al. also do not teach or suggest that an owner of a node server identified, using a receiver of the apparatus, as having transmitted the specified content to the client is offered an incentive as compensation for transmission of the specified content to the client, as recited in Claim 124. Thus, Claim 124 is allowable.

Claim 125 recites:

> Apparatus for effecting the provision of content over a network, comprising:
>
> a receiver, wherein the receiver is adapted to receive a request for content from a client;
>
> a processor, wherein:
>
> the processor is adapted to determine the location of the client within the network;
>
> the processor is adapted to identify the location of a plurality of node servers within the network that have at least part of the requested content stored thereon; and
>
> the processor is adapted to select from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client; and
>
> a transmitter, wherein the transmitter is adapted to communicate the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers.

For reasons similar to those discussed above, Kenner et al. do not teach or suggest "[a]pparatus for effecting the provision of content over a network, comprising ... a transmitter ... adapted to communicate the identity of ... candidate node servers to [a] client to enable the client to request transmission of ... requested content via the network from one or more of the

PAGE 65/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

candidate node servers," as recited in Claim 125. Thus, Claim 125 is allowable.

Claim 126 recites:

> Apparatus for effecting the provision of content over a network, comprising:
>
> a receiver, wherein the receiver is adapted to receive a request from a client that is part of the network for transmission of a set of content to the client, wherein at least part of the requested set of content is stored on redundant node servers;
>
> a processor, wherein:
>
> the processor is adapted to identify which of a plurality of sets of content or parts of the plurality of sets of content are stored by each of a plurality of node servers that are part of the network, at least one of the plurality of sets of content or parts of the plurality of sets of content being stored on redundant node servers; and
>
> the processor is adapted to select from the plurality of node servers one or more candidate node servers that have stored thereon at least part of the requested set of content; and
>
> a transmitter, wherein the transmitter is adapted to communicate the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers.

For reasons similar to those discussed above, Kenner et al. do not teach or suggest "[a]pparatus for effecting the provision of content over a network, comprising ... a transmitter ... adapted to communicate the identity of ... candidate node servers to [a] client to enable the client to request transmission of ... requested content via the network from one or more of the candidate node servers," as recited in Claim 126. Thus, Claim 126 is allowable.

DEC-01-2006 21:22 From:DAVID GRAHAM 4089459912 To:USPTO P.67/68

Claim 127 recites:

> Apparatus for effecting the provision of content over a television network, comprising:
>
> a receiver, wherein the receiver is adapted to receive a request from a client television set-top box that is part of the network for transmission of a set of content to the client television set-top box, wherein at least part of the requested set of content is stored on one or more node server television set-top boxes;
>
> a processor, wherein:
>
> the processor is adapted to identify which of a plurality of sets of content or parts of the plurality of sets of content are stored by each of a plurality of node server television set-top boxes that are part of the network; and
>
> the processor is adapted to select from the one or more node server television set-top boxes one or more candidate node server television set-top boxes; and
>
> a transmitter, wherein the transmitter is adapted to communicate the identity of the candidate node server television set-top boxes to the client television set-top box to enable the client television set-top box to request transmission of the requested content via the network from one or more of the candidate node server television set-top boxes.

For reasons similar to those discussed above, Kenner et al. do not teach or suggest "[a]pparatus for effecting the provision of content over a television network, comprising ... a transmitter ... adapted to communicate the identity of ... candidate node server television set-top boxes to [a] client television set-top box to enable the client television set-top box to request transmission of ... requested content via the network from one or more of the candidate node server television set-top boxes," as recited in Claim 127. Thus, Claim 127 is allowable.

- 64 -

PAGE 67/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

Page 71 of 139

DEC-01-2006 21:22 From:DAVID GRAHAM 4089459912 To:USPTO P.68/68

RECEIVED
CENTRAL FAX CENTER
DEC 01 2006

CONCLUSION

Claims 1-123 were pending and were rejected. Claims 124-127 have been added. In view of the foregoing, it is requested that Claims 1-127 be allowed. If the Examiner wants to discuss any aspect of this application, the Examiner is invited to telephone Applicant's undersigned attorney at (408) 945-9912.

I hereby certify that this correspondence is being transmitted via facsimile to the U.S. Patent and Trademark Office, Group Art Unit 2155, facsimile number (571) 273-8300, on December 1, 2006.

12-1-06 David R. Graham
Date Signature

Respectfully submitted,

David R. Graham

David R. Graham
Reg. No. 36,150
Attorney for Applicant

- 65 -

PAGE 68/68 * RCVD AT 12/1/2006 11:04:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/18 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):16-52

Page 72 of 139

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/717,184 | 11/20/2000 | Trevor I. Blumenau | BLU-005 | 9528 |

7590 02/04/2009

David R. Graham
1337 Chewpon Avenue
Milpitas, CA 95035

| EXAMINER | |
|---|---|
| TRAN, PHILIP B | |
| **ART UNIT** | **PAPER NUMBER** |
| 2455 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/04/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/717,184 | BLUMENAU, TREVOR I. |
| | **Examiner** | **Art Unit** |
| | Philip B. Tran | 2455 |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *11 September 2008*.

2a)☒ This action is **FINAL**. 2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-127* is/are pending in the application.

4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☒ Claim(s) *1-34,77-94,121 and 124* is/are allowed.

6)☒ Claim(s) *35-38,40-55,57-76,95-111, 113-120,122,123 and 125-127* is/are rejected.

7)☒ Claim(s) *39,56 and 112* is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

## Response to Request for Reconsideration

### *Notice to Applicant*

1. This communication is in response to request for reconsideration filed 25 August 2008. No claims has been amended or added. Therefore, claims 1-127 are pending for further examination.

### *Claim Rejections - 35 USC § 103*

2. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

3. Claims 35-38, 40-55, 57-76, 95-111, 113-120, 122-123 and 125-127 are rejected under 35 U.S.C. 103(a) as being unpatentable over Kenner et al (Hereafter, Kenner), U.S. Pat. No. 5,956,716 in view of Guenthner et al (Hereafter, Guenthner), U. S. Pat. No. 6,134,588.

Regarding claim 35, Kenner teaches apparatus for effecting the provision of content over a network, comprising:

means for receiving a request for content from a client (i.e., requesting and retrieving video clips by the user at the user multimedia terminal) [see Abstract and Col. 4, Lines 43-64]; and

means for determining the location of the client within the network, means for identifying the location of a plurality of node servers within the network that have at least part of the requested content stored thereon (i.e., attaching the Regional Identifier

(Regional ID) to the query and using the Regional ID to efficiently determine from among many remote Index Managers (IMs) 34, which remote IM 34 contains the requested video segments) [see Fig. 3 and Col. 16, Lines 14-38 and Col. 18, Lines 26-53], and

means for selecting from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client (i.e., determining the closest server containing the request video clips and geographical distribution) [see Fig. 4 and Abstract and Col. 5, Lines 39-64 and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

In addition, Kenner further teach enabling the client to request transmission of the requested content via the network from one or more of the candidate node servers (i.e., communicating between the web server and the user terminal for transmitting web page and video clips to the user terminal) [see Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49].

Kenner does not explicitly teach means for communicating the identity of the candidate node servers to the client. However, Guenthner, in the same field of client-server communication for accessing the Web servers that host content requested by the Web browser endeavor, discloses using a list of IP addresses that are returned to the Web client upon an HTTP request wherein each of these IP addresses identifies a server that hosts the particular content that the user of the Web client has requested [see Guenthner, Fig. 3 and Col. 4, Lines 24-42]. It would have been obvious to one of ordinary skill in the art at the time of the invention was made to incorporate the teaching

of Guenthner into the teaching of Kenner in order enable the client efficiently to request and obtain the specified content stored in a particular server by using the identity of the particular server.

Regarding claims 36-38, Kenner further teaches wherein the determination of topological proximity to the client is performed using a breadth-first search to identify node servers that satisfy a criterion regarding topological proximity to the client, and further comprising means for storing a topological database including a topological map of the network, wherein the means for selecting uses the topological map in making determinations of topological proximity to the client, wherein the topological database further includes data regarding bandwidth capacity and/or latency between at least some of the network sites included in the topological map [see Fig. 4 and Col. 23, Lines 3-65].

Regarding claims 40-42, Kenner further teaches means for identifying a network site that will act as a node server for distribution of specified content, and means for providing the specified content to the node server, means for identifying the location of a prospective node server that desires to act as a node server for distribution of the specified content, means for identifying the location of one or more other existing node Servers that can act as a node server for distribution of the specified content, means for determining the topological proximity of the prospective node server to the existing node servers, wherein the prospective node server is selected as a node server for

distribution of the specified content if the prospective node server satisfies a criterion regarding topological proximity to the existing node servers, wherein the means for determining the topological proximity of the prospective node server to the existing node servers is performed using an annealing method [see Fig. 4 and Col. 23, Lines 3-65].

Regarding claims 43-45, Kenner further teaches means for storing data identifying available content that can be obtained by a client, and means for providing an identification of available content to the client, and means for storing data identifying content stored by the plurality of node servers, and wherein the content comprises visual content including moving images [see Fig. 4 and Col. 4, Line 43 to Col. 6, Line 16].

Regarding claims 46-48, Kenner further teaches wherein the network is a computer network, wherein the network is the Internet, and wherein the network is a television network [see Fig. 4 and Col. 8, Lines 14-50].

Regarding claims 49-51, Kenner further teaches wherein the apparatus is a core server, the system further comprising one of the plurality of node servers, the node server comprising means for storing at least part of the requested content, means for receiving a request to transmit content to the client, and means for transmitting the requested content to the client and the client comprising means for transmitting a request for content to the core server, means for receiving the identity of one or more

candidate node servers from the core server, means for selecting one or more of the candidate node servers from which to obtain content, means for transmitting a request to a selected node server to transmit content to the client, and means for receiving content in response to the request transmitted to the node server [see Fig. 4 and Abstract and Col. 5, Lines 17-64 and Col. 23, Lines 3-65].

Regarding claim 52, Kenner teaches apparatus for effecting the provision of content over a network, comprising:

means for identifying which of a plurality of sets of content or parts of the plurality of sets of content are stored by each of a plurality of node servers that are part of the network, wherein at least one of the plurality of sets of content or parts of the plurality of sets of content is stored on redundant node servers (i.e., attaching the Regional Identifier (Regional ID) to the query and using the Regional ID to efficiently determine from among many remote Index Managers (IMs) 34, which remote IM 34 contains the requested video segments) [see Fig. 3 and Col. 16, Lines 14-38 and Col. 18, Lines 26-53];

means for receiving a request from a client that is part of the network for transmission of a set of content to the client, wherein at least part of the requested set of content is stored on redundant node servers (i.e., requesting and retrieving video clips by the user at the user multimedia terminal) [see Abstract and Col. 4, Lines 43-64];

means for selecting from the plurality of node servers one or more candidate node servers that have stored thereon at least part of the requested set of content (i.e.,

determining the closest server containing the request video clips and geographical distribution) [see Fig. 4 and Abstract and Col. 5, Lines 39-64 and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

In addition, Kenner further teach enabling the client to request transmission of the requested content via the network from one or more of the candidate node servers (i.e., communicating between the web server and the user terminal for transmitting web page and video clips to the user terminal) [see Fig. 4 and Col. 22, Line 63 to Col. 23, Line 49].

Kenner does not explicitly teach means for communicating the identity of the candidate node servers to the client. However, Guenthner, in the same field of client-server communication for accessing the Web servers that host content requested by the Web browser endeavor, discloses using a list of IP addresses that are returned to the Web client upon an HTTP request wherein each of these IP addresses identifies a server that hosts the particular content that the user of the Web client has requested [see Guenthner, Fig. 3 and Col. 4, Lines 24-42]. It would have been obvious to one of ordinary skill in the art at the time of the invention was made to incorporate the teaching of Guenthner into the teaching of Kenner in order enable the client efficiently to request and obtain the specified content stored in a particular server by using the identity of the particular server.

Regarding claims 53-55, Kenner further teaches wherein the candidate node servers do not include all of the redundant node servers on which requested content is

stored, and further comprising means for storing data representing a topological map of the network and means for determining the location of the client within the network, and wherein the means for selecting one or more candidate node servers further comprises means for selecting one or more candidate node servers that are determined to be topologically proximate to the client, wherein the determination of topological proximity to the client is performed using a breadth-first search to identify node servers that satisfy a criterion regarding topological proximity to the client [see Fig. 4 and Abstract and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

Regarding claims 57-59, Kenner further teaches means for identifying a network site that will act as a node server for distribution of specified content, and means for providing the specified content to the node server, means for identifying the location of a prospective node server that desires to act as a node server for distribution of the specified content, means for identifying the location of one or more other existing node servers that can act as a node server for distribution of the specified content, means for determining the topological proximity of the prospective node server to the existing node servers, wherein the prospective node server is selected as a node server for distribution of the specified content if the prospective node server satisfies a criterion regarding topological proximity to the existing node servers, wherein the means for determining the topological proximity of the prospective node server to the existing node servers is performed using an annealing method [see Fig. 4, and Abstract and Col. 16, Lines 14-61 and Col. 23, Lines 3-65].

Regarding claims 60-62, Kenner further teaches means for storing data identifying available sets of content that can be obtained by a client, and means for providing an identification of available sets of content to the client, means for storing data identifying which of the plurality of sets of content or parts of the plurality of sets of content are stored by each of a plurality of node servers, wherein the content comprises visual content including moving images [see Fig. 4 and Col. 4, Line 43 to Col. 6, Line 16].

Regarding claims 63-65, Kenner further teaches wherein the network is a computer network, wherein the network is the Internet, and wherein the network is a television network [see Fig. 4 and Col. 8, Lines 14-50].

Regarding claims 66-68, Kenner further teaches the node server comprising means for storing a set of content or part of a set of content, means for receiving a request to transmit a set of content or part of a set of content to the client, and means for transmitting the requested set of content or part of a set of content to the client and the client comprising means for transmitting a request for a set of content to the core server, means for receiving the identity of one or more candidate node servers from the core server, means for selecting one or more of the candidate node servers from which to obtain content, means for transmitting a request to a node server to transmit a set of content or part of a set of content to the client, and means for receiving a set of content

or part of a set of content in response to the request transmitted to the node server [see Fig. 4 and Abstract and Col. 5, Lines 17-64 and Col. 23, Lines 3-65].

Claim 69 is rejected under the same rationale set forth above to claim 52. In addition, Kenner further teaches a television set top box [see Col. 8, Lines 14-25 and Col. 21, Lines 19-35].

Regarding claim 70, Kenner further teaches apparatus as in claim 69, further comprising means for ascertaining which node server television set-top boxes transmitted content to the client television set-top box and which content each node server television set-top box transmitted [see Col. 5, Lines 16-64 and Col. 8, Lines 14-25 and Col. 21, Lines 19-35].

Claims 71-72 are rejected under the same rationale set forth above to claims 57-59.

Regarding claim 73, Kenner further teaches the content comprises visual content including moving images [see Col. 6, Lines 1-16].

Claims 74-76 are rejected under the same rationale set forth above to claims 66-68.

Claim 95 is rejected under the same rationale set forth above to claim 35.

Claims 96-98 are rejected under the same rationale set forth above to claims 36-38.

Claim 99 is rejected under the same rationale set forth above to claim 39.

Claims 100-102 are rejected under the same rationale set forth above to claims 40-42.

Claims 103-104 are rejected under the same rationale set forth above to claims 43-45.

Claims 105-107 are rejected under the same rationale set forth above to claims 49-51.

Claim 108 is rejected under the same rationale set forth above to claim 52.

Claims 109-111 are rejected under the same rationale set forth above to claims 53-55.

Claims 113-115 are rejected under the same rationale set forth above to claims 57-59.

Claims 116-117 are rejected under the same rationale set forth above to claims 60-62.

Claims 118-120 are rejected under the same rationale set forth above to claims 66-68.

Claim 122 is rejected under the same rationale set forth above to claim 35.

Claim 123 is rejected under the same rationale set forth above to claim 52.

Claim 125 is rejected under the same rationale set forth above to claim 35.

Claim 126 is rejected under the same rationale set forth above to claim 52.

Claim 127 is rejected under the same rationale set forth above to claim 69.

***Allowable Subject Matter***

4. Claims 1-34, 77-94, 121 and 124 are allowed.

5. Claims 39, 56 and 112 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

***Response to Arguments***

6. Claims 1-34, 77-94, 121 and 124 are allowed over prior art of record and claims 39, 56 and 112 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims. Therefore, applicant's arguments are moot (especially for claims 1, 121, 124 and dependent claims of claim 1).

7. Further, applicant's arguments have been fully considered but they are not persuasive because of the following reasons:

Applicant argues that Kenner does not teach a client requests transmission of content from a node server [see pages 6-8 of Remarks].

The examiner respectfully disagrees. Based on the reasonable broadest interpretation, the node server is just a server that distributes content to the clients. Therefore, Kenner does teach enabling the client to request transmission of the requested content via the network from one or more of the candidate node server. That is, communicating between the web server and the user terminal for transmitting web page and video clips to the user terminal [see Kenner, Fig. 4 and Col. 22, Line 63 to

Col. 23, Line 49]. The claim limitation does not explicitly distinguish the functionality of node server and core server and does not explicitly require indirect or direct distribution of content to clients.

On the other hand, Guenthner, in the same field of client-server communication for accessing the Web servers that host content requested by the Web browser endeavor, discloses using a list of IP addresses that are returned to the Web client upon an HTTP request wherein each of these IP addresses identifies a server that hosts the particular content that the user of the Web client has requested [see Guenthner, Fig. 3 and Col. 4, Lines 24-42]. It would have been obvious to one of ordinary skill in the art at the time of the invention was made to incorporate the teaching of Guenthner into the teaching of Kenner in order enable the client efficiently to request and obtain the specified content stored in a particular server by using the identity of the particular server.

In view of the foregoing, the examiner asserts that the combination of cited references (combination of Kenner et al, U.S. Pat. No. 5,956,716 and Guenthner et al, U. S. Pat. No. 6,134,588) still teaches or suggests the subject matter recited in independent claims 35, 52, 69, 95, 108, 122, 123, 125-127. Accordingly, the examiner respectfully maintains the rejections for claims 35-76, 95-111, 113-120, 122-123 and 125-127 as shown above.

***Conclusion***

8. THIS ACTION IS MADE FINAL. Applicant is reminded of the extension of time policy as set forth in 37 CAR 1.136(a).

A SHORTENED STATUTORY PERIOD FOR REPLY TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE MAILING DATE OF THIS ACTION. IN THE EVENT A FIRST REPLY IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 CAR 1.136(A) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT, HOWEVER, WILL THE STATUTORY PERIOD FOR REPLY EXPIRE LATER THAN SIX MONTHS FROM THE MAILING DATE OF THIS FINAL ACTION.

9. Any inquiry concerning this communication or earlier communications from the examiner should be directed to Philip Tran whose telephone number is (571) 272-3991. The Group fax phone number is (571) 273-8300. If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Saleh Najjar, can be reached on (571) 272-4006.

10. Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

/Philip B Tran/
Primary Examiner, Art Unit 2455
Feb 1, 2009



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/717,184 | 11/20/2000 | Trevor I. Blumenau | BLU-005 | 9528 |

7590 03/17/2009

David R. Graham
1337 Chewpon Avenue
Milpitas, CA 95035

| EXAMINER | |
|---|---|
| TRAN, PHILIP B | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2455 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/17/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| ***Office Action Summary*** | **Application No.** 09/717,184 | **Applicant(s)** BLUMENAU, TREVOR I. | |
|---|---|---|---|
| | **Examiner** Philip B. Tran | **Art Unit** 2455 | |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *02 March 2009*.

2a)☐ This action is **FINAL**. 2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-34,39,56,77-94,99,112,121,124 and 128-192* is/are pending in the application.

4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☒ Claim(s) *77-94,99 and 112* is/are allowed.

6)☒ Claim(s) *1-34, 39, 56, 121, 124, 128-192* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

## DETAILED ACTION

### *Claim Rejections - 35 USC § 112*

1. The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The analysis under 35 U.S.C. 112, first paragraph, requires that the scope of protection sought be supported by the specification disclosure. The pertinent inquiries include determining (1) whether the subject matter defined in the claims is described in the specification and (2) whether the specification disclosure as a whole is to enable one skilled in the art to make and use the claimed invention. However, the examiner only concentrates on the first determination.

(1) Claims 124 (independent claim) and 128-160 are rejected under 35 U.S.C. 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention.

The "invention" for the purpose of the first paragraph analysis is defined by the claims. The description requirement is simply that the claimed subject matter must be described in the specification. The function of the description requirement is to ensure that the applicant had possession of the invention on the filing date of the application. The application need not describe the claim limitations exactly, but must be sufficiently clear for one of ordinary skill in the art to recognize that the applicant's invention

encompasses the recited limitations. The description requirement is not met if the application does not expressly or inherently disclose the claimed invention.

Specification does not explicitly describe nor is sufficiently clear for one of ordinary skill in art to recognize the following steps as recited in independent claim 124:

- "… **a receiver**... and **a transmitter**…"

Applicant does not cites anywhere in the present application specification indicating that "… **a receiver**… and **a transmitter**…" Thus it is unclear how the present specification can supports the claimed limitations "… **a receiver** … and **a transmitter** …" in claim 124.

Therefore, claims 124 (independent claim) and 128-160 are unclear that the one ordinarily skilled in the art cannot recognize the encompassed claimed limitations.

***Claim Rejections - 35 USC § 112***

2. The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

3. Claims 1-34, 39, 56, 124 and 128-160 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Regarding claims 1-34, 39, 56, 124 and 128-160, it is not clear that applicant intended to claim apparatus/device or application/software instruction.

If applicant intended to claim apparatus/device, the apparatus/device cannot be just code/application/software instruction. Within the meaning of 101, a machine/device is "a concrete thing, consisting of parts or of certain devices and combinations of

devices.” Burr v. Duryee, 68 U.S. (1 Wall.) 531, 570 (1863)”. Therefore, claims 1-34, 39, 56, 124 and 128-160 are incomplete or inaccurate as claimed as apparatus/device.

If Applicant intended to claim application/code/software instruction, the claims 1-34, 39, 56, 124 and 128-160 are just limited to a functional descriptive materials consisting of application per se, instead of being defined as including tangible embodiments (i.e., a computer-readable storage medium such as memory device, storage medium, etc.)

Regarding claims 1-34, 39, 56, 124 and 128-160, it is not clear that “means for receiving” and "means for communicating" and "means for ascertaining", etc. are hardware components or software components. In case if those “means for” are software components, it appears that claims 1-34, 39, 56, 124 and 128-160 are not “apparatus/device” because apparatus/device cannot be just software. Therefore, claims 1-34, 39, 56, 124 and 128-160 are incomplete or inaccurate as apparatus/ device.

***Claim Rejections - 35 USC § 101***

3. 35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

4. Claims 1-34, 39, 56, 124 and 128-160 are rejected under 35 U.S.C. 101 because the claimed invention is directed to non-statutory subject matter. The claims are system claims (e.g., claims 22-34 and 148-160 indicate that claims 1-34, 39, 56, 124 and 128-160 are system claims). However, it is not clear that “means for receiving” and "means for communicating" and "means for ascertaining", etc. are hardware components or

software components, given that no explicit hardware embodiments of the "means for" can be found in the specifications. Therefore, the claims are directed to non-statutory subject matter. Correction is required.

5. Claims 121 and 161-192 are also rejected under 35 U.S.C. § 101.

As per claims 121 and 161-192, these appear to be directed toward a method or process for effecting the provision of content cover a network. Based on Supreme Court precedent, and recent Federal Circuit decisions, the Office's guidance to examiners is that a § 101 process must (1) be tied to another statutory class (such as a particular apparatus) or (2) transform underlying subject matter (such as an article or materials) to a different state or thing. ***Diamond v. Diehr, 450 U.S. 175, 184 (1981); Parker v. Flook, 437 U.S. 584, 588 n.9 (1978); Gottschalk v. Benson, 409 U.S. 63, 70 (1972); Cochrane v. Deener, 94 U.S. 780,787-88 (1876)***.

An example of a method claim that would not qualify as a statutory process would be a claim that recited purely mental steps. Thus, to qualify as a § 101 statutory process, the claim should positively recite the other statutory class (the thing or product) to which it is tied, for example by identifying the apparatus that accomplishes the method steps, or positively recite the subject matter that is being transformed, for example by identifying the material that is being changed to a different state. In the instant application, applicant's method steps fail the first prong of the new Federal Circuit decision since they are not required to be tied to another statutory class and can be performed without the use of a particular apparatus. Furthermore, the method steps fail to unambiguously require transformation of underlying subject matter to a different

state or thing. The mere steps of identifying, providing, receiving, communicating and ascertaining information is not a transformation and is not statutory subject matter.

Thus, claims 121 and 161-192 are non-statutory since they are not requisitely tied to another statutory class and they do not requisitely transform underlying subject matter to a different state or thing.

***Response to Arguments***

6. There is no art rejection. Claims 77-94, 99 and 112 are allowable over prior art of record. Claims 124 (independent claim) and 128-160 are rejected under 35 U.S.C. 112, first paragraph. Claims 1-34, 39, 56, 124 and 128-160 are rejected under 35 U.S.C. 112, second paragraph. Claims 1-34, 39, 56, 121,124 and 128-192 are rejected under 35 U.S.C. 101 because the claimed invention is directed to non-statutory subject matter.

7. A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS ACTION IS SET TO EXPIRE THREE MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION. FAILURE TO RESPOND WITHIN THE PERIOD FOR RESPONSE WILL CAUSE THE APPLICATION TO BECOME ABANDONED (35 U.S.C. § 133). EXTENSIONS OF TIME MAY BE OBTAINED UNDER THE PROVISIONS OF 37 CAR 1.136(A).

8. Any inquiry concerning this communication or earlier communications from the examiner should be directed to Philip Tran whose telephone number is (571) 272-3991. The Group fax phone number is (571) 273-8300. If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Saleh Najjar, can be reached on (571) 272-4006.

9. Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

/Philip B Tran/
Primary Examiner, Art Unit 2455
Mar 14, 2009

RECEIVED
CENTRAL FAX CENTER
JUN 17 2009

AMENDMENT(S) TO THE CLAIMS

1. (Currently amended) Apparatus for effecting the provision of content over a network, comprising a core server, the core server comprising:

means for receiving a request from a client for specified content;

means for communicating to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server; and

means for ascertaining that the node server transmitted the specified content to the client, wherein an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client.

2. (Original) Apparatus as in Claim 1, wherein the incentive varies in accordance with the bandwidth and/or latency performance of the node server in transmitting the specified content to the client.

3. (Original) Apparatus as in Claim 2, wherein the incentive varies in accordance with the bandwidth and/or latency performance of the node server relative to the bandwidth and/or latency characteristics of one or more other node servers that can provide the specified content to the client.

PAGE 3/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

4. (Original) Apparatus as in Claim 1, wherein the incentive varies in accordance with the number and/or topological proximity of one or more other node servers that can provide the specified content to the client.

5. (Original) Apparatus as in Claim 1, wherein the incentive varies in accordance with the time of day at which the node server transmits the specified content to the client.

6. (Original) Apparatus as in Claim 1, wherein the means for ascertaining that the node server transmitted the specified content to the client further comprises means for obtaining information regarding the characteristics of the transmission of the content.

7. (Original) Apparatus as in Claim 6, wherein the means for obtaining information regarding the characteristics of the transmission of the content further comprises means for obtaining information regarding when the content was delivered.

8. (Original) Apparatus as in Claim 6, wherein the means for obtaining information regarding the characteristics of the transmission of the content further comprises means for obtaining information regarding the bandwidth and/or latency performance associated with the transmission of the content.

PAGE 4/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

9. (Currently amended) Apparatus as in Claim 1, the core server further comprising:

means for identifying a plurality of node servers within the network that have at least part of the specified content stored thereon;

means for selecting from the plurality of node servers one or more candidate node servers; and

means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the specified content via the network from one or more of the candidate node servers.

10. (Currently amended) Apparatus as in Claim 9, the core server further comprising:

means for determining the location of the client within the network;

means for identifying the locations of the plurality of node servers that have at least part of the requested content stored thereon; and

wherein the means for selecting one or more candidate node servers further comprises means for selecting from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client.

PAGE 5/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

11. (Original) Apparatus as in Claim 10, wherein the determination of topological proximity to the client is performed using a breadth-first search to identify node servers that satisfy a criterion regarding topological proximity to the client.

12. (Currently amended) Apparatus as in Claim 1, the core server further comprising:

means for identifying a network site that will act as a node server for distribution of the specified content; and

means for providing the specified content to the node server.

13. (Previously presented) Apparatus as in Claim 12, wherein the means for identifying a network site that will act as a node server for distribution of the specified content further comprises:

means for identifying the location of a prospective node server that desires to act as a node server for distribution of the specified content;

means for identifying the location of one or more other existing node servers that can act as a node server for distribution of the specified content; and

means for determining the topological proximity of the prospective node server to the existing node servers, wherein the prospective node server is selected as a node server for distribution of the specified content if the

PAGE 6/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

prospective node server satisfies a criterion regarding topological proximity to the existing node servers.

14. (Original) Apparatus as in Claim 13, wherein the means for determining the topological proximity of the prospective node server to the existing node servers is performed using an annealing method.

15. (Currently amended) Apparatus as in Claim 1, <u>the core server</u> further comprising:

means for storing data identifying available content that can be obtained by a client; and

means for providing an identification of available content to the client.

16. (Currently amended) Apparatus as in Claim 1, <u>the core server</u> further comprising means for storing data identifying the location of the node server.

17. (Original) Apparatus as in Claim 1, wherein the content comprises visual content including moving images.

18. (Original) Apparatus as in Claim 1, wherein the network is a computer network.

19. (Original) Apparatus as in Claim 18, wherein the network is the Internet.

PAGE 7/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

20. (Original) Apparatus as in Claim 1, wherein the network is a television network.

21. (Original) Apparatus as in Claim 1, wherein the network is a wireless communications network.

22. (Currently amended) ~~A system including an apparatus~~ Apparatus as in Claim 1, ~~wherein the apparatus is a core server, the system~~ further comprising the node server, the node server comprising:

means for storing the specified content;

means for receiving a request to transmit the specified content to the client; and

means for transmitting the specified content to the client.

23. (Currently amended) ~~A system~~ Apparatus as in Claim 22, wherein:

the core server further comprises:

means for identifying a network site that will act as a node server for distribution of the specified content; and

means for providing the specified content to the node server; and

the node server further comprises means for receiving the specified content from the core server.

PAGE 8/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

24. (Currently amended) ~~A system~~ Apparatus as in Claim 22, wherein the core server and the node server are each implemented at least in part in a computer.

25. (Currently amended) ~~A system~~ Apparatus as in Claim 22, wherein the node server is implemented at least in part in a television set-top box.

26. (Currently amended) ~~A system~~ Apparatus as in Claim 22, wherein the node server is implemented at least in part in a portable device.

27. (Currently amended) ~~A system~~ Apparatus as in Claim 22, the system further comprising the client, the client comprising:

means for transmitting the request for the specified content to the core server;

means for receiving the identity of the node server from the core server; and

means for receiving the specified content from the node server.

28. (Currently amended) ~~A system~~ Apparatus as in Claim 27, wherein the node server and the client are each implemented at least in part in a television set-top box.

29. (Currently amended) ~~A system including an apparatus~~ Apparatus as in Claim 1, ~~wherein the apparatus is a core server, the system~~ further comprising the client, the client comprising:

means for transmitting the request for the specified content to the core server;

means for receiving the identity of the node server from the core server; and

means for receiving the specified content from the node server.

30. (Currently amended) ~~A system~~ Apparatus as in Claim 29, wherein the client further comprises means for transmitting a request to the node server to transmit the specified content to the client.

31. (Currently amended) ~~A system~~ Apparatus as in Claim 29, wherein the client further comprises:

means for monitoring the characteristics of the transmission of the specified content from the node server to obtain auditing information regarding the transmission of the specified content from the node server to the client; and

means for transmitting the auditing information to the core server.

32. (Currently amended) ~~A system~~ Apparatus as in Claim 29, wherein the core server and the client are each implemented at least in part in a computer.

33. (Currently amended) ~~A system~~ Apparatus as in Claim 29, wherein the client is implemented at least in part in a television set-top box.

34. (Currently amended) ~~A system~~ Apparatus as in Claim 29, wherein the client is implemented at least in part in a portable device.

35-38. (Canceled)

39. (Currently amended) Apparatus for effecting the provision of content over a network, comprising a core server, the core server comprising:

means for receiving a request for content from a client;

means for determining the location of the client within the network;

means for identifying the location of a plurality of node servers within the network that have at least part of the requested content stored thereon;

means for selecting from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client;

means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers; and

means for ascertaining which of the one or more of the candidate node servers transmitted requested content to the client, wherein an owner of such node server is offered an incentive as compensation for transmission of requested content to the client.

40-55. (Canceled)

56. (Currently amended) Apparatus for effecting the provision of content over a network, comprising a core server, the core server comprising:

means for identifying which of a plurality of sets of content or parts of the plurality of sets of content are stored by each of a plurality of node servers that are part of the network, wherein at least one of the plurality of sets of content or parts of the plurality of sets of content is stored on redundant node servers;

means for receiving a request from a client that is part of the network for transmission of a set of content to the client, wherein at least part of the requested set of content is stored on redundant node servers;

PAGE 12/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

means for selecting from the plurality of node servers one or more candidate node servers that have stored thereon at least part of the requested set of content;

means for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers; and

means for ascertaining which of the one or more of the candidate node servers transmitted requested content to the client, wherein an owner of such node server is offered an incentive as compensation for transmission of requested content to the client.

57-76. (Canceled)

77. (Original) A computer readable storage medium or media encoded with one or more computer programs including instructions for effecting the provision of content over a network, comprising:

instructions for receiving a request from a client for specified content;

instructions for communicating to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server; and

PAGE 13/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

instructions for ascertaining that the node server transmitted the specified content to the client, wherein an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client.

78. (Original) A computer readable storage medium or media as in Claim 77, wherein the instructions for ascertaining that the node server transmitted the specified content to the client further comprise instructions for obtaining information regarding the characteristics of the transmission of the content.

79. (Original) A computer readable storage medium or media as in Claim 78, wherein the instructions for obtaining information regarding the characteristics of the transmission of the content further comprise instructions for obtaining information regarding when the content was delivered.

80. (Original) A computer readable storage medium or media as in Claim 78, wherein the instructions for obtaining information regarding the characteristics of the transmission of the content further comprise instructions for obtaining information regarding the bandwidth and/or latency performance associated with the transmission of the content.

PAGE 14/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

81. (Original) A computer readable storage medium or media as in Claim 77, further comprising:

instructions for identifying a plurality of node servers within the network that have at least part of the requested content stored thereon;

instructions for selecting from the plurality of node servers one or more candidate node servers; and

instructions for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the specified content via the network from one or more of the candidate node servers.

82. (Original) A computer readable storage medium or media as in Claim 81, further comprising:

instructions for determining the location of the client within the network;

instructions for identifying the locations of the plurality of node servers that can act as a node server for distribution of the specified content;

instructions for identifying the locations of the plurality of node servers that have at least part of the requested content stored thereon;

wherein the instructions for selecting one or more candidate node servers further comprise instructions for selecting from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client.

PAGE 15/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

83. (Original) A computer readable storage medium or media as in Claim 82, wherein the determination of topological proximity to the client is performed using a breadth-first search to identify node servers that satisfy a criterion regarding topological proximity to the client.

84. (Original) A computer readable storage medium or media as in Claim 77, further comprising:

instructions for identifying a network site that will act as a node server for distribution of the specified content; and

instructions for providing the specified content to the node server.

85. (Previously presented) A computer readable storage medium or media as in Claim 84, wherein the instructions for identifying a network site that will act as a node server for distribution of the specified content further comprise:

instructions for identifying the location of a prospective node server that desires to act as a node server for distribution of the specified content;

instructions for identifying the location of one or more other existing node servers that can act as a node server for distribution of the specified content; and

instructions for determining the topological proximity of the prospective node server to the existing node servers, wherein the prospective node server is selected as a node

PAGE 16/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

server for distribution of the specified content if the prospective node server satisfies a criterion regarding topological proximity to the existing node servers.

86. (Original) A computer readable storage medium or media as in Claim 85, wherein the instructions for determining the topological proximity of the prospective node server to the existing node servers comprise instructions for performing an annealing method.

87. (Original) A computer readable storage medium or media as in Claim 77, further comprising:

instructions for storing data identifying available sets of content that can be obtained by a client; and

instructions for providing an identification of available sets of content to the client.

88. (Original) A computer readable storage medium or media as in Claim 77, further comprising instructions for storing data identifying the location of the node server.

89. (Original) A computer readable storage medium or media as in Claim 77, further comprising:

instructions for storing content at a node server;

instructions for receiving a request at a node server to transmit content to a client; and

PAGE 17/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

instructions for transmitting content from a node server to a client in response to a request for that content.

90. (Original) A computer readable storage medium or media as in Claim 89, further comprising:

instructions for identifying a network site that will act as a node server for distribution of the specified content;

instructions for providing the specified content to the node server; and

instructions for receiving at the node server the specified content provided by the core server.

91. (Previously presented) A computer readable storage medium or media as in Claim 89, further comprising:

instructions for transmitting from the client a request for specified content to the core server;

instructions for receiving at the client the identity of a node server from the core server; and

instructions for receiving at the client the specified content from a node server.

92. (Original) A computer readable storage medium or media as in Claim 77, further comprising:

instructions for transmitting from the client a request for specified content to the core server;

PAGE 18/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

instructions for receiving at the client the identity of a node server from the core server; and

instructions for receiving at the client the specified content from a node server.

93. (Original) A computer readable storage medium or media as in Claim 92, further comprising instructions for transmitting a request from the client to the node server to transmit specified content to the client.

94. (Original) A computer readable storage medium or media as in Claim 92, further comprising:

instructions for monitoring the characteristics of the transmission of the specified content from the node server to obtain auditing information regarding the transmission of the specified content from the node server to the client; and

instructions for transmitting the auditing information to the core server.

95-98. (Canceled)

99. (Previously presented) A computer readable storage medium or media encoded with one or more computer programs including instructions for effecting the provision of content over a network, comprising:

PAGE 19/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

instructions for receiving a request for content from a client;

instructions for determining the location of the client within the network;

instructions for identifying the location of a plurality of node servers within the network that have at least part of the requested content stored thereon;

instructions for selecting from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client;

instructions for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers; and

instructions for ascertaining which of the one or more of the candidate node servers transmitted requested content to the client, wherein an owner of such node server is offered an incentive as compensation for transmission of requested content to the client.

100-111. (Canceled)

112. (Previously presented) A computer readable storage medium or media encoded with one or more computer programs including instructions for effecting the provision of content over a network, comprising:

PAGE 20/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

instructions for identifying which of a plurality of sets of content or parts of the plurality of sets of content are stored by each of a plurality of node servers that are part of the network, wherein at least one of the plurality of sets of content or parts of the plurality of sets of content is stored on redundant node servers;

instructions for receiving a request from a client that is part of the network for transmission of a set of content to the client, wherein at least part of the requested set of content is stored on redundant node servers;

instructions for selecting from the plurality of node servers one or more candidate node servers that have stored thereon at least part of the requested set of content;

instructions for communicating the identity of the candidate node servers to the client to enable the client to request transmission of the requested content via the network from one or more of the candidate node servers; and

instructions for ascertaining which of the one or more of the candidate node servers transmitted requested content to the client, wherein an owner of such node server is offered an incentive as compensation for transmission of requested content to the client.

113-120. (Canceled)

121. (Currently amended) A method for effecting the provision of content over a network, comprising the steps of:

identifying at a core server a network site that will act as a node server for distribution of specified content;

providing from the core server the specified content to the node server;

receiving at the core server a request from a client for the specified content;

communicating from the core server the identity of the node server to the client to enable the client to request transmission of the specified content from the node server; and

ascertaining at the core server that the node server transmitted the specified content to the client, wherein an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client.

122-123. (Canceled)

124. (Currently amended) Apparatus for effecting the provision of content over a network, comprising a core server, the core server comprising:

a receiver, wherein:

the receiver is adapted to receive a request from a client for specified content; and

PAGE 22/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

the receiver is adapted to receive an identification of a node server that transmitted the specified content to the client, wherein an owner of the node server so identified is offered an incentive as compensation for transmission of the specified content to the client; and

a transmitter, wherein the transmitter is adapted to communicate to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server so identified.

125-127. (Canceled)

128. (Previously presented) Apparatus as in Claim 124, wherein the incentive varies in accordance with the bandwidth and/or latency performance of the node server in transmitting the specified content to the client.

129. (Previously presented) Apparatus as in Claim 128, wherein the incentive varies in accordance with the bandwidth and/or latency performance of the node server relative to the bandwidth and/or latency characteristics of one or more other node servers that can provide the specified content to the client.

PAGE 23/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

130. (Previously presented) Apparatus as in Claim 124, wherein the incentive varies in accordance with the number and/or topological proximity of one or more other node servers that can provide the specified content to the client.

131. (Previously presented) Apparatus as in Claim 124, wherein the incentive varies in accordance with the time of day at which the node server transmits the specified content to the client.

132. (Currently amended) Apparatus as in Claim 124, <u>the core server</u> further comprising computational apparatus, wherein the receiver, transmitter and/or computational apparatus are further adapted to obtain information regarding the characteristics of the transmission of the content.

133. (Previously presented) Apparatus as in Claim 132, wherein the information regarding the characteristics of the transmission of the content comprises information regarding when the content was delivered.

134. (Previously presented) Apparatus as in Claim 132, wherein the information regarding the characteristics of the transmission of the content comprises information regarding the bandwidth and/or latency performance associated with the transmission of the content.

135. (Currently amended) Apparatus as in Claim 124, wherein:

the receiver is further adapted to receive an identification of a plurality of node servers within the network that can act as a node server for distribution of the specified content;

the ~~apparatus~~ core server further comprises computational apparatus adapted to select from the plurality of node servers one or more candidate node servers; and

the transmitter is further adapted to communicate the identity of the candidate node servers to the client to enable the client to request transmission of the specified content via the network from one of the candidate node servers.

136. (Previously presented) Apparatus as in Claim 135, wherein:

the receiver is further adapted to receive an identification of the locations of the plurality of node servers that can act as a node server for distribution of the specified content;

the receiver, transmitter and/or computational apparatus are further adapted to determine the location of the client within the network; and

the computational apparatus is further adapted to select from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client.

PAGE 25/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

137. (Previously presented) Apparatus as in Claim 136, wherein the determination of topological proximity to the client is performed using a breadth-first search to identify node servers that satisfy a criterion regarding topological proximity to the client.

138. (Currently amended) Apparatus as in Claim 124, <u>the core server</u> further comprising computational apparatus, wherein the receiver, transmitter and/or computational apparatus are adapted to identify a network site that will act as a node server for distribution of the specified content, and wherein the transmitter is further adapted to provide the specified content to the node server.

139. (Previously presented) Apparatus as in Claim 138, wherein the computational apparatus is further adapted to i) identify the location of a prospective node server that desires to act as a node server for distribution of the specified content; ii) identify the location of one or more other existing node servers that can act as a node server for distribution of the specified content; iii) determine the topological proximity of the prospective node server to the existing node servers, wherein the prospective node server is selected as a node server for distribution of the specified content if the prospective node server satisfies a criterion regarding topological proximity to the existing node servers.

140. (Previously presented) Apparatus as in Claim 139, wherein the determination of the topological proximity of the prospective node server to the existing node servers is performed using an annealing method.

141. (Currently amended) Apparatus as in Claim 124, the core server further comprising data storage apparatus for storing data identifying available content that can be obtained by a client, and wherein the transmitter is further adapted to provide an identification of available content to the client.

142. (Currently amended) Apparatus as in Claim 124, the core server further comprising data storage apparatus for ^U^^ring data identifying the location of the node server.

143. (Previously presented) Apparatus as in Claim 124, wherein the content comprises visual content including moving images.

144. (Previously presented) Apparatus as in Claim 124, wherein the network is a computer network.

145. (Previously presented) Apparatus as in Claim 144, wherein the network is the Internet.

146. (Previously presented) Apparatus as in Claim 124, wherein the network is a television network.

PAGE 27/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

147. (Previously presented) Apparatus as in Claim 124, wherein the network is a wireless communications network.

148. (Currently amended) ~~A system including an apparatus~~ Apparatus as in Claim 124, ~~wherein the apparatus is a core server, the system~~ further comprising the node server, the node server comprising:

data storage apparatus for storing the specified content;

a receiver adapted to receive a request to transmit the specified content to the client; and

a transmitter adapted to transmit the specified content to the client.

149. (Currently amended) ~~A system~~ Apparatus as in Claim 148, wherein:

the core server further comprises computational apparatus adapted to identify a network site that will act as a node server for distribution of the specified content, and wherein the transmitter of the core server is further adapted to provide the specified content to the node server; and

the ~~transmitter~~ receiver of the node server is further adapted to receive the specified content from the core server.

PAGE 28/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

150. (Currently amended) ~~A system~~ Apparatus as in Claim 148, wherein the core server and the node server are each implemented, at least in part, in a computer.

151. (Currently amended) ~~A system~~ Apparatus as in Claim 148, wherein the node server is implemented, at least in part, in a television set-top box.

152. (Currently amended) ~~A system~~ Apparatus as in Claim 148, wherein the node server is implemented, at least in part, in a portable device.

153. (Currently amended) ~~A system~~ Apparatus as in Claim 148, ~~the system~~ further comprising the client, the client comprising:

a transmitter adapted to transmit the request for the specified content to the core server;

a receiver adapted to receive the identity of the node server from the core server and to receive the specified content from the node server.

154. (Currently amended) ~~A system~~ Apparatus as in Claim 153, wherein the node server and the client are each implemented, at least in part, in a television set-top box.

PAGE 29/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

155. (Currently amended) ~~A system including an apparatus~~ Apparatus as in Claim 124, ~~wherein the apparatus is a core server, the system~~ further comprising the client, the client comprising:

a transmitter adapted to transmit the request for the specified content to the core server;

a receiver adapted to receive the identity of the node server from the core server and to receive the specified content from the node server.

156. (Currently amended) ~~A system~~ Apparatus as in Claim 155, wherein the transmitter of the client is further adapted to transmit a request to the node server to transmit the specified content to the client.

157. (Currently amended) ~~A system~~ Apparatus as in Claim 155, wherein the client further comprises computational apparatus, wherein the receiver, transmitter and/or computational apparatus of the client are adapted to monitor the characteristics of the transmission of the specified content from the node server to obtain auditing information regarding the transmission of the specified content from the node server to the client, and wherein the transmitter of the client is further adapted to transmit the auditing information to the core server.

158. (Currently amended) ~~A system~~ Apparatus as in Claim 155, wherein the core server and the client are each implemented, at least in part, in a computer.

159. (Currently amended) ~~A system~~ Apparatus as in Claim 155, wherein the client is implemented, at least in part, in a television set-top box.

160. (Currently amended) ~~A system~~ Apparatus as in Claim 159, wherein the client is implemented, at least in part, in a portable device.

161. (Previously presented) A method as in Claim 121, wherein the incentive varies in accordance with the bandwidth and/or latency performance of the node server in transmitting the specified content to the client.

162. (Previously presented) A method as in Claim 161, wherein the incentive varies in accordance with the bandwidth and/or latency performance of the node server relative to the bandwidth and/or latency characteristics of one or more other node servers that can provide the specified content to the client.

PAGE 31/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

163. (Previously presented) A method as in Claim 121, wherein the incentive varies in accordance with the number and/or topological proximity of one or more other node servers that can provide the specified content to the client.

164. (Previously presented) A method as in Claim 121, wherein the incentive varies in accordance with the time of day at which the node server transmits the specified content to the client.

165. (Currently amended) A method as in Claim 121, wherein the step of ascertaining at the core server that the node server transmitted the specified content to the client comprises the step of obtaining at the core server information regarding the characteristics of the transmission of the content.

166. (Currently amended) A method as in Claim 165, wherein the step of obtaining information at the core server regarding the characteristics of the transmission of the content comprises the step of obtaining information at the core server regarding when the content was delivered.

167. (Currently amended) A method as in Claim 165, wherein the step of obtaining information at the core server regarding the characteristics of the transmission of the content comprises the step of obtaining information at the core server regarding

PAGE 32/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

the bandwidth and/or latency performance associated with the transmission of the content.

168. (Currently amended) A method as in Claim 121, further comprising the steps of:

identifying at the core server a plurality of node servers within the network that can act as a node server for distribution of the specified content;

selecting by the core server from the plurality of node servers one or more candidate node servers; and

communicating from the core server the identity of the candidate node servers to the client to enable the client to request transmission of the specified content via the network from one of the candidate node servers.

169. (Currently amended) A method as in Claim 168, further comprising the steps of:

determining by the core server the location of the client within the network;

identifying at the core server the locations of the plurality of node servers that can act as a node server for distribution of the specified content; and

wherein the step of selecting by the core server one or more candidate node servers comprises the step of selecting by the core server from the plurality of node servers one or more candidate node servers that are determined to be topologically proximate to the client.

170. (Previously presented) A method as in Claim 169, wherein the determination of topological proximity to the client is performed using a breadth-first search to identify node servers that satisfy a criterion regarding topological proximity to the client.

171. (Currently amended) A method as in Claim 121, wherein the step of identifying a network site that will act as a node server for distribution of the specified content further comprises the steps of:

identifying at the core server the location of a prospective node server that desires to act as a node server for distribution of the specified content;

identifying at the core server the location of one or more other existing node servers that can act as a node server for distribution of the specified content;

determining by the core server the topological proximity of the prospective node server to the existing node servers, wherein the prospective node server is selected as a node server for distribution of the specified content if the prospective node server satisfies a criterion regarding topological proximity to the existing node servers.

PAGE 34/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

172. (Previously presented) A method as in Claim 171, wherein the step of determining the topological proximity of the prospective node server to the existing node servers is performed using an annealing method.

173. (Currently amended) A method as in Claim 121, further comprising the steps of:

storing at the core server data identifying available content that can be obtained by a client; and

providing from the core server an identification of available content to the client.

174. (Currently amended) A method as in Claim 121, further comprising the step of storing at the core server data identifying the location of the node server.

175. (Previously presented) A method as in Claim 121, wherein the content comprises visual content including moving images.

176. (Previously presented) A method as in Claim 121, wherein the network is a computer network.

177. (Previously presented) A method as in Claim 176, wherein the network is the Internet.

178. (Previously presented) A method as in Claim 121, wherein the network is a television network.

179. (Previously presented) A method as in Claim 121, wherein the network is a wireless communications network.

180. (Currently amended) A method as in Claim 121, ~~wherein the steps of identifying a network site that will act as a node server, providing the specified content to the node server, receiving a request from a client for the specified content, communicating the identity of the node server to the client, and ascertaining that the node server transmitted the specified content to the client are performed by a core server, the method~~ further comprising the ~~following~~ steps ~~performed by a node server~~ of:

storing at the node server the specified content;

receiving at the node server a request to transmit the specified content to the client; and

transmitting from the node server the specified content to the client.

181. (Currently amended) A method as in Claim 180, ~~wherein the steps performed by the node server~~ further ~~comprise~~ comprising the step of receiving at the node server the specified content from the core server.

PAGE 36/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

182. (Previously presented) A method as in Claim 180, wherein the steps performed by the core server and the steps performed by the node server are each implemented, at least in part, in a computer.

183. (Previously presented) A method as in Claim 180, wherein the steps performed by the node server are implemented, at least in part, in a television set-top box.

184. (Previously presented) A method as in Claim 180, wherein the steps performed by the node server are implemented, at least in part, in a portable device.

185. (Currently amended) A method as in Claim 181, ~~the method~~ further comprising the ~~following~~ steps ~~performed by a client~~ of:

transmitting from a client the request for the specified content to the core server;

receiving at the client the identity of the node server from the core server; and

receiving at the client the specified content from the node server.

186. (Previously presented) A method as in Claim 185, wherein the steps performed by the node server and the steps performed by the client are each implemented, at least in part, in a television set-top box.

PAGE 37/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

187. (Currently amended) A method as in Claim 121, ~~wherein the steps of identifying a network site that will act as a node server, providing the specified content to the node server, receiving a request from a client for the specified content, communicating the identity of the node server to the client, and ascertaining that the node server transmitted the specified content to the client are performed by a core server, the method~~ further comprising the ~~following~~ steps ~~performed by a client~~ of:

transmitting from the client the request for the specified content to the core server;

receiving at the client the identity of the node server from the core server; and

receiving at the client the specified content from the node server.

188. (Currently amended) A method as in Claim 187, ~~wherein the steps performed by~~ the ~~client~~ further ~~comprise~~ comprising the step of transmitting from the client a request to the node server to transmit the specified content to the client.

189. (Currently amended) A method as in Claim 187, ~~wherein the steps performed by the client~~ further ~~comprise~~ comprising the steps of:

monitoring by the client the characteristics of the transmission of the specified content from the node server to obtain auditing information regarding the transmission of

PAGE 38/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

06/17/2009 21:16 4089459912 DAVID R. GRAHAM PAGE 39/45

the specified content from the node server to the client; and

transmitting from the client the auditing information to the core server.

190. (Previously presented) A method as in Claim 187, wherein the steps performed by the core server and the steps performed by the client are each implemented, at least in part, in a computer.

191. (Previously presented) A method as in Claim 187, wherein the steps performed by the client are implemented, at least in part, in a television set-top box.

192. (Previously presented) A method as in Claim 187, wherein the steps performed by the client are implemented, at least in part, in a portable device.

- 38 -

PAGE 39/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

Page 133 of 139

REMARKS

Claims 1-34, 39, 56, 77-94, 99, 112, 121, 124 and 128-192 are pending. Claims 77-94, 99 and 112 have been allowed. Claims 1-34, 39, 56, 124 and 128-160 were rejected under 35 U.S.C. § 112. Claims 1-34, 39, 56, 121, 124 and 128-192 were rejected under 35 U.S.C. § 101. Claims 1, 9, 10, 12, 15, 16, 22-34, 39, 56, 121, 124, 132, 135, 138, 141, 142, 148-160, 165-169, 171, 173, 174, 180, 181, 185 and 187-189 have been amended. Reconsideration and allowance of Claims 1-34, 39, 56, 77-94, 99, 112, 121, 124 and 128-192 is requested.

Rejection of Claims under 35 U.S.C. § 112

In the Office Action, Claims 124 and 128-160 were rejected under 35 U.S.C. § 112, first paragraph. The Office Action stated:

> The "invention" for the purpose of the first paragraph analysis is defined by the claims. The description requirement is simply that the claimed subject matter must be described in the specification. The function of the description requirement is to ensure that the applicant had possession of the invention on the filing date of the application. The application need not describe the claim limitations exactly, but must be sufficiently clear for one of ordinary skill in the art to recognize that the applicant's invention encompasses the recited limitations. The description requirement is not met if the application does not expressly or inherently disclose the claimed invention.
>
> Specification does not explicitly describe nor is sufficiently clear for one of ordinary skill in art to recognize the following steps as recited in independent claim 124:
> "... a receiver ... and a transmitter ..."

PAGE 40/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

> Applicant does not cites anywhere in the present application specification indicating that "... a receiver ... and a transmitter ..." Thus it is unclear how the present specification can supports the claimed limitations "... a receiver ... and a transmitter ..." in claim 124.
>
> Therefore, claims 124 (independent claim) and 128-160 are unclear that the one ordinarily skilled in the art cannot recognize the encompassed claimed limitations.

Though Applicant's specification does not specifically use the terms "receiver" and "transmitter," the functions performed by the receiver and transmitter in Applicant's claims (e.g., receiving, transmitting, communicating, providing) are clearly described throughout Applicant's specification, and that those functions can be performed by apparatus denoted generally as a "receiver" and/or a "transmitter" would certainly be clear to one of ordinary skill in the art. The Office Action states that "[t]he description requirement is not met if the application does not expressly or inherently disclose the claimed invention" and that Applicant's specification does not provide such disclosure. However, as indicated above, in view of the description throughout Applicant's specification of the functions performed by the receiver and transmitter recited in Applicant's claims, Applicant contends that such receiver and transmitter are, at least, inherently disclosed therein and, consequently, the receiver and transmitter recited in Claims 124 and 128-160 meet the requirements of the first paragraph of 35 U.S.C. § 112.

In the Office Action, Claims 1-34, 39, 56, 124 and 128-160 were rejected under 35 U.S.C. § 112, second paragraph as being indefinite. The Office Action stated:

> [I]t is not clear that applicant intended to claim apparatus/device or application/software instruction.
>
> If applicant intended to claim apparatus/device, the apparatus/device cannot be just code/application/software instruction. Within the meaning of 101, a machine/device is "a concrete thing, consisting of parts or of certain devices and combination of devices. [citation omitted] Therefore, claims 1-34, 39, 56, 124 and 128-160 are incomplete or inaccurate as claimed as apparatus/device.
>
> If Applicant intended to application/code/software instruction, the claims 1-34, 39, 56, 124 and 128-160 are just limited to a functional descriptive materials consisting of application per se, instead of being defined as including tangible embodiments (i.e., a computer-readable storage medium such as memory device, storage medium, etc.)
>
> Regarding claims 1-34, 39, 56, 124 and 128-160, it is not clear that "means for receiving" and "means for communicating" and "means for ascertaining", etc. are hardware components or software components. In case if those "means for" are software components, it appears that claims 1-34, 39, 56, 124 and 128-160 are not "apparatus/device" because apparatus/device cannot be just software. Therefore, claims 1-34, 39, 56, 124 and 128-160 are incomplete or inaccurate as apparatus/device.

Applicant has amended Claims 1, 9, 10, 12, 15, 16, 22-34, 39, 56, 124, 132, 135, 138, 141, 142 and 148-160 to make clearer that Claims 1-34, 39, 56, 124 and 128-160 recite apparatus: those claims now include recitations that the apparatus includes a core server and can further include a node server and/or client. Apparatus/hardware/devices that can be used to implement a core server, node server and client in accordance with the invention are described at various places in Applicant's specification. Apparatus/hardware/devices that can be used to implement a core server in accordance with the invention are described at, for example, page 13, lines 8-31; page 14, lines 8-

PAGE 42/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

18; and page 14, line 29 to page 15, line 9 of Applicant's specification. Apparatus/hardware/devices that can be used to implement a node server in accordance with the invention are described at, for example, page 21, lines 13-32 of Applicant's specification. Apparatus/hardware/devices that can be used to implement a client in accordance with the invention are described at, for example, page 26, lines 3-19 of Applicant's specification.

In view of the foregoing, it is requested that the rejections of Claims 1-34, 39, 56, 124 and 128-160 under 35 U.S.C. § 112 be withdrawn.

Rejection of Claims under 35 U.S.C. § 101

In the Office Action, Claims 1-34, 39, 56, 124 and 128-160 were rejected under 35 U.S.C. § 101. The Office Action stated:

> The claims are system claims (e.g., claims 22-34 and 148-160 indicate that claims 1-34, 39, 56, 124 and 128-160 are system claims). However, it is not clear that "means for receiving" and "means for communicating" and "means for ascertaining", etc. are hardware components or software components, given that no explicit hardware embodiments of the "means for" can be found in the specifications. Therefore, the claims are directed to non-statutory subject matter. Correction is required.

As discussed above, Applicant has amended Claims 1, 9, 10, 12, 15, 16, 22-34, 39, 56, 124, 132, 135, 138, 141, 142 and 148-160 to make clearer that Claims 1-34, 39, 56, 124 and 128-160 recite apparatus (that includes a core server and can further include a node server and/or client) and therefore recite statutory subject matter.

PAGE 43/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

In the Office Action, Claims 121 and 161-192 were rejected under 35 U.S.C. § 101. The Office Action stated:

> [T]hese appear to be directed toward a method or process for effecting the provision of content cover a network. Based on Supreme Court precedent, and recent Federal Circuit decisions, the Office's guidance to examiners is that a § 101 process must (1) be tied to another statutory class (such as a particular apparatus) or (2) transform underlying subject matter (such as an article or materials) to a different state or thing. [citations omitted]
>
> An example of a method claim that would not qualify as a statutory process would be a claim that recited purely mental steps. Thus, to qualify as a § 101 statutory process, the claim should positively recite the other statutory class (the thing or product) to which it is tied, for example, by identifying the apparatus that accomplishes the method steps, or positively recite the subject matter that is being transformed, for example by identifying the material that is being changed to a different state. In the instant application, applicant's method steps fail the first prong of the new Federal Circuit decision since they are not required to be tied to another statutory class and can be performed without the use of a particular apparatus. Furthermore, the method steps fail to unambiguously require transformation of underlying subject matter to a different state or thing. The mere steps of identifying, providing, receiving, communicating and ascertaining information is not a transformation and is not statutory subject matter.
>
> Thus, claims 121 and 161-192 are non-statutory since they are not requisitely tied to another statutory class and they do not requisitely transform underlying subject matter to a different state or thing.

Claims 121, 165-169, 171, 173, 174, 180, 181, 185 and 187-189 have been amended to recite that the steps of the methods of Claims 121 and 161-192 are tied to a core server, node server and/or client, as appropriate. Thus, the steps of the methods of Claims 121 and 161-192 are tied to particular machine(s) and therefore those claims recite statutory subject matter.

PAGE 44/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22

RECEIVED
CENTRAL FAX CENTER
JUN 17 2009

In view of the foregoing, it is requested that the rejection of Claims 1-34, 39, 56, 121, 124 and 128-192 were under 35 U.S.C. § 112 be withdrawn.

CONCLUSION

Claims 1-34, 39, 56, 77-94, 99, 112, 121, 124 and 128-192 were pending. Claims 77-94, 99 and 112 have been allowed. Claims 1-34, 39, 56, 121, 124 and 128-192 were rejected. Claims 1, 9, 10, 12, 15, 16, 22-34, 39, 56, 121, 124, 132, 135, 138, 141, 142, 148-160, 165-169, 171, 173, 174, 180, 181, 185 and 187-189 have been amended. In view of the foregoing, it is requested that Claims 1-34, 39, 56, 77-94, 99, 112, 121, 124 and 128 192 be allowed. If the Examiner wants to discuss any aspect of this application, the Examiner is invited to telephone Applicants' undersigned attorney at (408) 945-9912.

I hereby certify that this correspondence is being transmitted via facsimile to the U.S. Patent and Trademark Office, facsimile number (571) 273-8300, on June 17, 2009.

6-17-09 David R. Graham
Date Signature

Respectfully submitted,

David R. Graham

David R. Graham
Reg. No. 36,150
Attorney for Applicant

PAGE 45/45 * RCVD AT 6/17/2009 11:59:04 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/31 * DNIS:2738300 * CSID:4089459912 * DURATION (mm-ss):10-22