## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| QUANTUM TECHNOLOGY INNOVATIONS, LLC, | Civil Action No. 24-cv-01103-MMG |
| Plaintiff, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| SHOWTIME NETWORKS INC., SHOWTIME DIGITAL INC., AND PARAMOUNT GLOBAL, | |
| Defendants. | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF</u>

## <u>DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

I.    Introduction and Summary of Argument ................................................ 1

II.   Procedural History and the Amended complaint ................................... 3

III.  Background ............................................................................................. 4

     A.   Parties.............................................................................................. 4

     B.   The '376 Patent ............................................................................... 5

     C.   Prosecution History of the '376 Patent ........................................... 6

IV.   Legal Standards...................................................................................... 8

     A.   Rule 12(b)(6) Motion to Dismiss..................................................... 8

     B.   Patent Eligibility Under 35 U.S.C. § 101........................................ 9

     C.   Patent Eligibility Is Properly Decided on a Motion to Dismiss...... 10

     D.   Pleading Requirements for Patent Infringement Allegations .......... 11

V.    Argument .............................................................................................. 11

     A.   The '376 Patent Is Invalid Under 35 U.S.C. § 101 ........................ 11

          i.   *Alice* Step One: The '376 Patent Is Directed to an Abstract Idea............... 12

          ii.   *Alice* Step Two: The '376 Patent Does Not Recite an Inventive Concept .. 17

          iii.  Claim 37 Is Representative of the Claims of the '376 Patent .................... 20

     B.   The Amended Complaint Fails to State a Claim Because It Does Not Plausibly Allege All Limitations of the Asserted Claim ........................................ 21

     C.   Plaintiff's Direct Infringement Allegations Are Insufficient........................... 23

VI.   Conclusion ........................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016) ............... 15, 17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ............................................. passim

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 8

*AuthWallet, LLC v. Block, Inc.*, 602 F. Supp. 3d 620 (S.D.N.Y. 2022) ............................... passim

*Automated Tracking Sols., LLC v. The Coca-Cola Co.*, 723 Fed. Appx. 989 (Fed. Cir. 2018) ... 21

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.),*
  687 F.3d 1266 (Fed. Cir. 2012) ........................................................................................ 11, 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 8, 23

*Berkheimer v. HP Inc.,* 881 F.3d 1360 (Fed. Cir. 2018) ............................................................. 10

*Bilski v. Kappos*, 561 U.S. 593 (2010) ..................................................................................... 1, 16

*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021) ................................. 11, 22, 24

*Bridge & Post, Inc. v. Verizon Commc'ns*, Inc., 778 F. App'x 882 (Fed. Cir. 2019) .................... 18

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) ............................... 1, 13, 18

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) .................................................. 18

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) ............................................... 15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014) ............................................................................................. 21

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) ........................... 17

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) ................................................ 10, 20

*Diamond v. Diehr*, 450 U.S. 175 (1981) ....................................................................................... 1

*Diatek Licensing LLC v. AccuWeather, Inc.*, 1:21-cv-11144-JPC (S.D.N.Y. Mar. 24, 2023) ..... 10

*DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271 (S.D.N.Y. 2014) .............. 11

*DigiMedia Tech, LLC v. ViacomCBS Inc.*, 592 F. Supp. 3d 291 (S.D.N.Y. 2022) ..................... 10

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018)).............................. 11

*Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529 (Fed. Cir. 2020) ....................... 2, 9

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) ................... 13, 15, 19, 20

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)................................................ 13

*EscapeX IP LLC v. Block, Inc.*, 652 F. Supp. 3d 396 (S.D.N.Y. 2023)....................................... 10

*In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607 (Fed. Cir. 2016) .......................................... 15

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, No. 2022-1861,
    2024 WL 89642 (Fed. Cir. Jan. 9, 2024) ................................................................................. 9

*Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315 (Fed. Cir. 2017) ................................ 18

*Invincible IP LLC v. SAS Inst. Inc.*, No. 22 CIV. 4490 (AKH),
    2022 WL 3668322 (S.D.N.Y. Aug. 25, 2022)..................................................................... 3, 11

*Kickstarter, Inc. v. Fan Funded, LLC*, No. 11 CIV. 6909 (KPF),
    2015 WL 3947178 (S.D.N.Y. June 29, 2015) ........................................................................ 13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) .......................... 10, 18

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ............................................ 8

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314 (Fed. Cir. 2016)) ............ 21

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) ................................ 10, 17

*Realtime Tracker, Inc. v. RELX, Inc.*, 659 F. Supp. 3d 384 (S.D.N.Y. 2023) .................. 10, 11, 21

*Sanderling Management, Ltd., v. Snap, Inc.*, 65 F.4th 698 (Fed. Cir. 2023)................................ 10

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ........................................ 10, 19

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017) ........................ 8

*Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353 (Fed Cir. 2020).............................. 9

*Stylitics, Inc. v. Findmine, Inc.*, 1:22-cv-02983-PGG (S.D.N.Y. Feb 21, 2023) ........................ 10

*Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358 (Fed. Cir. 2021)............................... 11

*Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355 (Fed. Cir. 2023) ............................ 9, 16

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014).................................................. 15

*WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929 (Fed. Cir. 2020) ................................... 8, 10, 14

**Statutes**

35 U.S.C. § 101.......................................................................................................................... 1, 9

35 U.S.C. § 271........................................................................................................................ 23, 24

Defendants Showtime Networks Inc., Showtime Digital Inc., and Paramount Global (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint of Plaintiff Quantum Technology Innovations, LLC ("Plaintiff").  Defendants previously moved to dismiss on April 29, 2024.  Dkt. 21 and 22.

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff alleges that Defendants infringe U.S. Patent No. 7,650,376 (the "'376 Patent") by distributing media content via the website https://www.sho.com and paying a third-party (*e.g.*, Akamai Technologies) for hosting the content.  *See* Dkt. 27-2, pp. 1, 16-17.  Defendants move to dismiss the claims asserted against them for two independent reasons.

First, the claims of the '376 Patent are not patent-eligible under 35 U.S.C. § 101.  As explained below, the only asserted claim (claim 37) is directed to the abstract idea of incentivizing performance of a service—in particular, "an owner of [a] node server is offered an incentive as compensation for transmission of the specified content."  *See* Section V(A).  In other words, Plaintiff's claims are directed to the most fundamental of all business practices—compensation for services performed—in the field of content distribution.  Thus, the asserted claim falls squarely in the category of claims related to traditional business practices, applied in a given technology area, that the courts have repeatedly found to be directed to abstract ideas.  *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285-86 (Fed. Cir. 2018) ("fundamental practices long prevalent in our system of commerce are abstract ideas") (cleaned up); *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010) ("the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment") (citing *Diamond v. Diehr*, 450 U.S. 175, 191-92 (1981)).  Claims directed to abstract ideas are not eligible for patent protection.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

Nothing that Plaintiff has alleged in the Amended Complaint transforms this abstract claim into patentable subject matter.  This patent does not involve any new hardware, software, or other computer technology for content distribution over a network.   To the contrary, the specification of the '376 Patent admits that content delivery networks using a "multiplicity of servers at key places (nodes)" were generally known at the time of filing.  Ex. A, '376 Patent at 1:40-56.[1]  The asserted claim also does not recite any hardware more specific than a generic network, *i.e.*, a network with a "node server" and "client."  Rather, it simply recites an existing and known network system to implement the abstract idea of offering an incentive as compensation.  Such patent claims directed to traditional business practices without improving the underlying computer technology are ineligible for patent protection as a matter of law.  *See Alice*, 573 U.S. at 225.  Plaintiff's descriptions of various purported improvements over conventional systems in the Amended Complaint are legally irrelevant because those supposed innovations are not tethered to the claims.  *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) ("Any allegation about inventiveness, wholly divorced from the claims or the specification does not defeat a motion to dismiss; only plausible and specific factual allegations that *aspects of the claims* are inventive are sufficient.") (cleaned up) (emphasis in original); *see also* Section V(A).

Second, the Amended Complaint still fails to plausibly allege that the limitation of claim 37 requiring "instructions for ascertaining that the node server transmitted the specified content to the client" and that "an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client" is met by the Defendants' accused streaming

---

[1] Exhibits cited in this memorandum refer to Exhibits A-B to the Second Declaration of Michael H. Jones, submitted herewith.

app.  *See* Section V(B).  Instead of providing facts that could plausibly support an allegation that Defendants' product includes these specific limitations, Plaintiff relies on assumptions regarding the business practices of third parties.  *See id.*  Plaintiff assumes that Defendants "must" satisfy the claim because an unrelated party, Akamai Technologies, charges for its web-hosting services— irrespective of whether said charges are tied to transmission of the specified content from a particular node server, as required by the claim.  *See* Dkt. 27-2, p. 16.  This is insufficient and fails to provide notice as to any specific actions that allegedly meet the claim requirements.  *See Invincible IP LLC v. SAS Inst. Inc.*, No. 22-4490, 2022 WL 3668322, at *1 (S.D.N.Y. Aug. 25, 2022) ("at a bare minimum, to survive a motion to dismiss, a complaint alleging patent infringement must … allege that that the accused products meet each and every element of at least one claim").  Plaintiff's direct infringement allegations are insufficient for the additional reasons that: (i) Plaintiff fails to identify a "computer readable storage medium or media encoded with one or more computer programs" that Defendants make, use, sell, or offer to sell, as would be required for direct infringement; and (ii) the claim chart inconsistently maps the claimed "instructions" to both the client's device and a "main server," without connection to the accused streaming app.  *See* Section V(C).

## II.   PROCEDURAL HISTORY AND THE AMENDED COMPLAINT

Defendants moved to dismiss the complaint on April 29, 2024, for failure to state a claim because the '376 Patent is not patent-eligible under 35 U.S.C. § 101 and because the infringement allegations were deficient.  Dkt. 22, pp. 6-9.  In response, Plaintiff filed the present Amended Complaint.  Dkt. 27.  Despite its verbosity, the Amended Complaint does not cure the previously-identified deficiencies with respect to §101.  Merely labeling responsive arguments "Amended Complaint" instead of "Responsive Brief" cannot save a plaintiff from the legal conclusion that its

patent is not subject-matter eligible.  Moreover, Plaintiff's arguments, however lengthy, cannot

shift the focus of the § 101 analysis away from the claims themselves.  *See AuthWallet, LLC v.*

*Block, Inc.*, 602 F. Supp. 3d 620, 628 (S.D.N.Y. 2022) ("The focus of a Section 101 inquiry is on

the asserted claims."), *aff'd sub nom. In re AuthWallet, LLC*, No. 2022-1842, 2023 WL 3330298

(Fed. Cir. May 10, 2023).  With respect to infringement, Plaintiff took no steps at all to address

the issues raised by the motion to dismiss.  *See* Dkt. 22, Sections IV(B)-(C).[2]  The chart with

Plaintiff's infringement theory remains unchanged, despite Defendants' clear explanation that it is

internally inconsistent and fails to allege a plausible infringement claim.  *Compare* Dkt. 27-2 *with*

Dkt. 1-2.

## III.    BACKGROUND

### A.    Parties

Defendants are leading producers of premium entertainment content and provide popular

video streaming platforms.  For instance, Defendants were early adopters of online streaming of

original content, feature films, comedy specials, documentaries, and sports programming—first

launching a streaming website in 2010 (as "Showtime Anytime") and a counterpart app on the iOS

App Store and on the Google Play platform in 2011 and 2012, respectively.  Defendants' streaming

services have since evolved, expanding the ever-growing libraries of content and enhancing user

experience in terms of accessibility and quality.

Plaintiff, which does not offer any products or services of its own, is a patent assertion

entity.  *See, e.g.*, Dkt. 1, ¶ 2 ("QTI is in the business of licensing patented technology.").  Plaintiff

was incorporated in June 2021 and purportedly acquired the '376 Patent from High Bandwidth,

---

[2] Defendants interpret Plaintiff's removal of allegations related to infringement by end-users as withdrawal of the indirect infringement claims, and an indication that this action is limited to infringement via Defendants' alleged testing.  *Compare* Dkt. 1, ¶¶ 37-43 *with* Dkt. 27, ¶¶ 120-135.

LLC in the same month.  Since acquiring the '376 Patent, Plaintiff has asserted it in twelve different actions—five of which settled prior to any defendant's answer.

**B.    The '376 Patent**

The '376 specification and claims are directed to the "provision of content over a network by a content provider" and "enlisting one or more network sites to facilitate the distribution of content," where the enlisted network sites are "offered an incentive as compensation" for their distribution of the content.  Ex. A, '376 Patent at 1:20-26; *id.* at claims 1, 35-37, 55-57, 90.  The "Background of the Invention" describes well-known network systems for delivering content over the Internet using a "multiplicity of servers at key places (nodes)."  Ex. A, '376 Patent at 1:40-56 The specification describes the alleged invention as the distribution of content, "facilitated by making use of network site(s) throughout the network to dispense some part or all of the content on behalf of the content provider."  Ex. A, '376 Patent at 2:8-24.  Network sites are recruited to dispense content by offering incentives:

> In one particularly advantageous aspect of the invention, **the owner of a site on the network can be provided with one or more incentives to make that network site a node server**. Such incentives can include, for example, access to premium content from the core server (or other content providing site), access to free content from a content providing site (e.g., a free movie, free software, a free software upgrade), access to content that has been modified in a desirable way (e.g., content without advertising), loyalty program credits (e.g., frequent flyer miles), cash, or some combination of such incentives…. [T]he invention contemplates the use of any incentive or combination of **incentives to induce a network site owner to allow their site to be used as a node server**.

*Id.* at 4:34-47 (emphasis added); *see also id.* at 2:25-34.

Independent claims 37 and 57 are the only claims identified in the Amended Complaint. The attached claim chart alleges infringement of only claim 37, which is exemplary and reads:

> 37. A computer readable storage medium or media encoded with one or more computer programs including instructions for effecting the provision of content over a network, comprising:

> instructions for receiving a request from a client for specified content;
>
> instructions for communicating to the client the identity of a node server having the specified content stored thereon, thereby enabling the client to request transmission of the specified content from the node server; and
>
> instructions for ascertaining that the node server transmitted the specified content to the client, **wherein an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client**.

Ex. A, '376 Patent at 27:62-28:9 (emphasis added). As illustrated above, the asserted claim recites conventional instructions for handling requests for content, and then echoes the purported advancement of the specification—offering an incentive for transmission of specified content.

### C.     Prosecution History of the '376 Patent

The '376 Patent issued from Pat. Appl. No. 09/717,184 (the "'184 Application), which was filed on March 27, 2000, and claims priority to Provisional Appl. No. 60/192,165 as a "continuation-in-part." Ex. A, '376 Patent at 1:10-16.

The '376 Patent includes 123 claims, all of which were rejected by the Examiner under 35 U.S.C. §§ 102 and 103 as anticipated by or obvious in view of prior art, or as directed to ineligible subject matter under § 101, at various points during prosecution. *See* Ex. B, File History at pp. 1-16 (12-02-2005 Non-Final Rejection); pp. 29-52 (06-01-2006 Final Rejection); pp. 117-132 (02-04-2009 Final Rejection); pp. 153-160 (03-17-2009 Non-Final Rejection). The applicant was able to gain allowance in two ways:

First, the applicant emphasized the "incentive as compensation" and related aspects of the claims to distinguish the prior art. *See, e.g.*, Ex. B, File History at pp. 17-28 (03-02-2006 Applicant Arguments), p. 20 ( "Kenner et al. also do not teach or suggest that an owner of a node server can be offered an incentive as compensation for transmission of specified content to a client."); pp. 53-72 (12-01-2006 Applicant Arguments), p.61 (arguing that the prior art was directed to "compensation to a content owner for allowing its content to be provided to others" and "not

compensation for transmitting specified content to others").

The significance of these limitations for the purported novelty of the '376 Patent is further evidenced by Examiner's reasoning for rejecting or allowing specific claims. For example, the Examiner rejected the claims that did not have the compensation-related claim limitations because the prior art disclosed "an apparatus for effecting provision of content over a network, comprising of means for identifying content stored on node servers within the network, receiving a request from a client for specific content, selecting a node server from a plurality of node servers having the requested content, and communicating the identity of the candidate node server to the client to enable the client to request transmission of the requested content." *See, e.g., id.* at pp. 73-97 (02-23-2007 Non-Final Rejection), pp. 80, 82-83, 86 (finding Kenner to teach all limitations of Claims 35, 52, and 108); pp. 98-116 (04-25-2008 Non-Final Rejection), pp. 106-111, 114 (finding Kenner in view of Guenther to disclose all limitations of Claims 35, 52, and 108); pp. 117-132 (02-04-2009 Final Rejection), pp. 119-121, 123-124, 128 (finding Kenner in view of Guenther to disclose all limitations of Claims 35, 52, and 108). The Examiner recognized that the claims' recitations regarding basic functionality of handling client requests for content, selecting nodes, and distributing the content via the nodes, were already well known. *See id.* The claims were only allowed after they were amended to include the limitation requiring "ascertaining which of the one or more of the candidate node servers transmitted request content to the client, wherein an owner of such node is offered an incentive as compensation for transmission of requested content to the client." *See id.* at pp. 133-152 (03-02-2009 Amendment(s) to the Claims), p. 142-143, 151-152 (Amending (then) Claims 39, 56, and 112 to include all limitations of base Claims 35, 52, and 108, respectively); *see also id.* at pp. 117-132 (02-04-2009 Final Rejection), p. 129 (Claims 39, 56, and

112 "would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims").

Second, the applicant overcame the subject matter eligibility rejections based on § 101 by adding limitations related to specific hardware, such as servers. *See, e.g.*, *id.* at pp. 161-203 (06-17-2009 Applicant's Amendments to the Claims and Arguments), pp. 201-202 (arguing addition of limitations relating to a "core server" and "node server" overcomes §101 rejection). While this may have been a defensible argument in 2009, the Federal Circuit has made clear that invoking the use of computers and familiar networks as a tool to perform a fundamental economic practice does not make the claims any less abstract. *See, e.g., WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929, 933 (Fed. Cir. 2020) (collecting cases). The '376 Patent would not have been allowed under the current Federal Circuit law regarding patent eligibility.

## IV.     LEGAL STANDARDS

### A.     Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the non-moving party. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, a court "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," such as the patent claims, specification, or prosecution materials. *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (citation omitted).

Moreover, it is a bedrock principle of *Twombly/Iqbal* that courts are "not bound to accept as true a legal conclusion couched as a factual allegation" at the 12(b)(6) stage—a principle that

extends to consideration of patent-eligibility under § 101.  *See e.g. AuthWallet, LLC*, 602 F. Supp. 3d at 628 (S.D.N.Y. 2022) (quoting *Iqbal*, 556 U.S. at 678).  For instance, the Federal Circuit has "repeatedly held that the district court need not accept a patent owner's conclusory allegations of inventiveness."  *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, No. 2022-1861, 2024 WL 89642, at *4 (Fed. Cir. Jan. 9, 2024) (citation omitted); *see also Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."). Importantly, and as is the case here, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification does not defeat a motion to dismiss; only plausible and specific factual allegations that *aspects of the claims* are inventive are sufficient."  *Dropbox, Inc.*, 815 F. App'x at 538 (cleaned up) (emphasis in original); *see also Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1364 (Fed. Cir. 2023) (rejecting  arguments that "are not tethered to the *asserted claims*, which do not require [alleged inventive aspects]") (emphasis in original).

### B.  Patent Eligibility Under 35 U.S.C. § 101

Section 101 allows inventors to obtain patents on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  However, "this provision contains an important implicit exception: Laws of nature, natural phenomena, or abstract ideas are not patentable."  *Alice*, 573 U.S. at 216 (citations omitted).  To guide the inquiry into whether a patent is drawn from patent-ineligible subject matter, the Supreme Court has established a two-step framework, known as the *Alice* test, in which a court determines: (1) "whether the claims at issue are directed to one of those patent-ineligible concepts," *i.e.*, a law of nature, natural phenomenon, or abstract idea, and, if so, (2) whether the elements of the claim, considered "both individually and 'as an ordered combination' … 'transform the nature of the claim' into a patent-eligible application."  *Id.* at 217 (quoting *Mayo Collaborative Servs. V.*

*Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)).  The Supreme Court has described step two

of this analysis as a search for an "inventive concept."  *Id.* at 217-18.  The focus of a § 101 inquiry

is on the asserted claims, and not what is disclosed in the specification or alleged in the pleadings.

*See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012); *see also AuthWallet, LLC*,

602 F. Supp. 3d at 635.

        **C.**      **Patent Eligibility Is Properly Decided on a Motion to Dismiss**

        The Federal Circuit has affirmed that subject matter eligibility under Section 101 is a

question of law suitable for resolution at the pleading stage of a patent case.  *SAP Am., Inc. v.*

*InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) ("Like other legal questions based on

underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c)

motion where the undisputed facts, considered under the standards required by that Rule, require

a holding of ineligibility under the substantive standards of law."); *WhitServe LLC*, 809 F. App'x

at 932.  Indeed, Courts in this district routinely invalidate patents under § 101 pursuant to Rule

12(b)(6) at the pleadings stage.  *See, e.g., DigiMedia Tech, LLC v. ViacomCBS Inc.*, 592 F. Supp.

3d 291, 298 (S.D.N.Y. 2022) (quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir.

2018)); *Realtime Tracker, Inc. v. RELX, Inc.*, 659 F. Supp. 3d 384 (S.D.N.Y. 2023); *EscapeX IP*

*LLC v. Block, Inc.*, 652 F. Supp. 3d 396 (S.D.N.Y. 2023); *Diatek Licensing LLC v. AccuWeather,*

*Inc.*, 1:21-cv-11144-JPC, Dkt. 31 (S.D.N.Y. Mar. 24, 2023); *Stylitics, Inc. v. Findmine, Inc.*, 1:22-

cv-02983-PGG, Dkt. 48 (S.D.N.Y. Feb 21, 2023). And, because patent eligibility is a matter of

law, "courts are not required to defer to Patent Office determinations as to eligibility." *Sanderling*

*Mgmt., Ltd., v. Snap, Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023) (citing *OIP Techs., Inc. v.*

*Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).

        Additionally, claim construction "is not an inviolable prerequisite to a validity

determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687

F.3d 1266, 1273 (Fed. Cir. 2012).  Where the invention disclosed is invalid "under any reasonable construction," there is no need for the Court to undertake claim construction.  *Realtime Tracker, Inc.*, 659 F. Supp. 3d at 401 (quoting *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 289–90 (S.D.N.Y. 2014)).  Here, there are no claim construction issues that would affect the eligibility analysis.

### D.    Pleading Requirements for Patent Infringement Allegations

A patent infringement plaintiff "cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."  *Bot M8 LLC*, 4 F.4th at 1353-54  ("[A]llegations that are merely consistent with infringement are insufficient," and where "the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim.") (emphasis in original).  "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Id.* at 1353.  Direct infringement of a claim under 35 U.S.C. § 271(a) requires a plaintiff show the accused infringer's manufacture, sale, offer to sale, or use "of each and every element of the [claim]."  *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1369 (Fed. Cir. 2021).  Thus, to survive a motion to dismiss, a complaint must "allege that the accused products meet each and every element of at least one claim of the asserted patents."  *Invincible IP LLC*, 2022 WL 3668322 at *1 (citing *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018)).

## V.    ARGUMENT

### A.    The '376 Patent Is Invalid Under 35 U.S.C. § 101

Plaintiff frames the invention of the '376 Patent as "improv[ing] the functionality, efficiency, and reliability of network content distribution systems," but the asserted claim does not include limitations that do any of those things.  *See* Dkt. 27, ¶ 43; *see also, supra,* Section III(B).

As admitted in the specification and by Plaintiff, the basics of content distribution via one or more nodes were well known and commonplace, and the "inventions" were performed with traditional computer systems. *See* Dkt 27, ¶ 104; *see also* '376 Patent at 1:40-56. Thus, the claims were only allowed over the prior art based on the inclusion of limitations requiring "incentivization as compensation." *See* Section III(C). Indeed, Plaintiff's allegations of infringement assume that Defendants "must" pay the owner of a node server (e.g., Akamai Technologies) for services. *See, e.g.,* Dkt. 27-2, p. 16. But providing compensation in return for performance of a service is a fundamental economic practice long prevalent in our system of commerce, not a technological advancement that improves the network content distribution systems themselves. Accordingly, the claims are not patent-eligible under 35 U.S.C. § 101 as a matter of law, and the Amended Complaint should be dismissed.

### i.  *Alice* Step One: The '376 Patent Is Directed to an Abstract Idea

The claims are directed to the abstract idea of providing compensation for a service. This abstract idea is found in claim 37's requirement that "an owner of the node server is offered an incentive as compensation for transmission of the specified content to the client." *See* Ex. A, '376 Patent at 28:5-9.[3]

At *Alice* step one, a court analyzes the claims to "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. 208 at 217 (citation omitted). The Federal Circuit has "described the first-stage inquiry as looking at the focus of the claims,

---

[3] To the extent that Plaintiff emphasizes that the claim also requires "ascertaining that the node server transmitted the specified content" before "offer[ing] an incentive as compensation," this does not alter the abstract idea. In any transaction, one must always ascertain whom to pay and whether the service has been performed before paying for a service. "[A]scertaining that the node server transmitted the specified content to the client" is just part of the same abstract idea – providing compensation for a service.

their character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citations and internal quotation marks omitted). Where, as here, the claims at issue involve computers, the Federal Circuit has instructed that courts must "consider whether the focus of the claims is on a specific asserted improvement in computer capabilities, or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *BSG Tech LLC*, 899 F.3d at 1286 (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016)) (internal quotations omitted).

The '376 Patent is not directed to a specific improvement in computer functionality, but, instead, to using computers as a tool to provide compensation to incentivize the distribution of content. The '376 Patent references modern-day technology like "servers," "Internet," "latency," "bandwidth," etc., but parties have relied upon the sort of negotiated compensation for services described in the patent for centuries. *See* Ex. A, '376 Patent, 10:11-16 ("Node server owners can, for example, visit the core server site to **work out an arrangement** with the core server owner regarding which video programs or parts of video programs are to be distributed by the node server **and the incentive arrangement** associated with distribution of those video programs.") (emphasis added); *id.* at 4:37-44 ("incentives can include … cash"). "The Supreme Court has held that fundamental practices long prevalent in our system of commerce are abstract ideas." *BSG Tech LLC*, 899 F.3d at 1285 (citing *Alice*, 573 U.S. at 219).

Here, the focus of the claims is providing "an incentive as compensation" for a service. Courts have routinely held that incentivization or compensation are abstract ideas. *See, e.g., Kickstarter, Inc. v. Fan Funded, LLC*, No. 11-6909 (KPF), 2015 WL 3947178, at *11 (S.D.N.Y. June 29, 2015), *aff'd*, 654 F. App'x 481 (Fed. Cir. 2016) (finding "concept of incentive-based funding is incontestably similar to other fundamental economic concepts, and to other types of

organizing human activity, both of which have been found to be abstract ideas by the Supreme Court and the Federal Circuit") (internal quotation marks omitted) (collecting cases); *AuthWallet, LLC*, 602 F. Supp. 3d at 631 (finding patent "directed to the abstract idea and well-established business practice of processing payments during a sales transaction where a benefit, such as a discounted payment, is given to the purchaser for use in future transactions").

Moreover, adding conventional computer components to well-known business practices does not change the *Alice* step one analysis.  The Federal Circuit and Supreme Court have repeatedly held that "use of standard computers and networks to carry out [fundamental economic practices]—more speedily, more efficiently, more reliably, does not make the claims any less directed to that abstract idea." *WhitServe LLC*, 809 F. App'x at 933 (collecting cases).  For example, in *AuthWallet, LLC v. Block, Inc.*, the Federal Circuit affirmed that a patent relating to novel and improved methods and systems for processing financial transaction data was "directed to the abstract idea and well-established business practice of processing payments during a sales transaction where a benefit, such as a discounted payment, is given to the purchaser for use in future transactions." *AuthWallet, LLC*, 602 F. Supp. 3d at 631 (further reasoning that patent described use of computer technology to provide the same "discounted transaction that is common among brick-and-mortar retailers").  Indeed, in *Alice* itself, the Supreme Court found the patent-at-issue to be directed to the abstract concept of intermediated settlement, "a fundamental economic practice long prevalent in our system of commerce," despite the claim's recitation of a generic computer.  *Alice*, 573 U.S. at 218-23.  Here, the '376 Patent attempts to do the same—claim the abstract idea of incentivization or compensation for a service by incorporating a generic network system.

Even assuming, *arguendo*, that the network system described as claimed in the '376 Patent is not a recitation of a generic environment, courts have routinely found claims regarding content distribution to be directed to abstract ideas.  *See, e.g., Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) (holding "delivering user-selected media content to portable devices is an abstract idea"); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) (determining claims directed to an abstract idea when "drawn to the idea of capturing and transmitting data from one device to another"); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (concluding claims reciting "recording ... transmitting ... and storing" digital images were directed to an abstract idea); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (finding the "process of receiving copyrighted media,…offering the media in exchange for watching the selected ad,…allowing the consumer access to the media, and receiving payment from the sponsor of the ad all describe an abstract idea").  Moreover, combining abstract ideas—e.g., content distribution and incentivization or compensation for service—does not render the claims patent-eligible.  *See Elec. Power Grp., LLC*, 830 F.3d at 1354 (determining claims were "clearly focused on the combination of [multiple] abstract-idea processes," rather than on "an improvement in computers as tools").

In anticipation of Defendants' renewed § 101 argument, Plaintiff proclaims that the claims are directed to patentable subject matter and, in doing so, couches legal conclusions as factual allegations.  *See* Dkt. 27, ¶¶ 77-89.  For the purposes of the *Alice* analysis, the Court does not need to accept as true Plaintiff's statements that are either legally wrong or untethered to the claims.

For example, Plaintiff alleges that the "technical problems addressed by the claimed inventions of '376 Patent include the delivery of content, including high-bandwidth content, to large numbers of client devices asynchronously and/or on-demand in a scalable and reliable

manner." Dkt. 27, ¶ 97. Plaintiff further alleges that the "claimed inventions comprised inventive improvements over prior technologies in order to overcome problems…related to computer networks, content distribution, and database management…including in combination with the provision of high-bandwidth content over the Internet from a content provider to many clients, the ability to provide clients with multiple pieces of content, and the ability to access and communicate with the user's client device at various times, including in order to distribute content at a time chosen by the user, including via a network which is accessible via a web browser or similar functionality." *Id.*, ¶ 114; *see also id.*, ¶ 91-92. However, <u>none</u> of these alleged technical improvements—"high-bandwidth content", "large numbers of client devices", "asynchronous and/or on-demand delivery of content", "scalable and reliable manner", "database management", "providing clients with multiple pieces of content", "access via a web browser", "third-party node servers" etc.—are in Claim 37. Thus, those arguments may be disregarded throughout the *Alice* analysis. *See, e.g.,* '376 Patent at 27:62-28:9; *see also Trinity Info Media*, 72 F.4th at 1364 (rejecting Plaintiff's arguments that "are not tethered to the *asserted claims*, which do not require [alleged inventive aspects].") (emphasis in original).

Moreover, Plaintiff alleges that "[n]one of the elements that comprise the claimed apparatuses, systems, computer readable media, or methods that are described in the claims of the '376 Patent are abstract" because "the computer readable storage media, client, core server, node server, and network interfaces are physical and/or tangible things known to a person of ordinary skill in the art ('POSITA') in light of the specification." Dkt. 27, ¶ 85 (internal citations omitted). This argument is legally wrong. Merely including a computer readable storage medium as a "tangible thing" in a claim does not render the claim patent eligible. *See, e.g.*, *Bilski*, 561 U.S. at 610-11. Moreover, changing the form of a claim—e.g., from a method claim to an apparatus or

system claim—does not alter the underlying abstract idea. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011) ("[T]he basic character of a process claim drawn to an abstract idea *is not changed* by claiming only its performance by computers, *or by claiming the process embodied in program instructions on a computer readable medium*") (emphasis added).

Plaintiff also alleges that the claims of the '376 Patent do not preempt their field because "the claims of the '376 Patent do not provision content as in the prior art, but, instead, provision content by a core server providing the content to distributed node servers to provision to clients." Dkt. 27, ¶ 117. Again, this is legally irrelevant. Just because the claims do not preempt all ways of distributing content does not make them any less abstract. *See OIP Techs., Inc*, 788 F.3d at 1362–63 ("This concept of 'offer based pricing' is similar to other fundamental economic concepts found to be abstract ideas by the Supreme Court and this court…And that the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract.") (internal citations omitted).

Additionally, the Amended Complaint alleges that "the claimed inventions could not be done manually or in one's head" because they "necessarily require implementation via…computers including one or more networks, a core server, [and] a node server." *See* Dkt. 27, ¶¶ 88-89. This allegation appears to attempt to flip the legal principle—that claims essentially applying mental processes are within the abstract-idea category—on its head. That is, simply because the claim may not be directed to a mental process, does not preclude finding the claim to be directed to an abstract idea. *See, e.g., Affinity Labs*, 838 F.3d at 1269 (Fed. Cir. 2016).

### ii. *Alice* Step Two: The '376 Patent Does Not Recite an Inventive Concept

At *Alice* step two, a court must search for an "inventive concept," *i.e.*, an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to

significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–18 (quoting *Mayo*, 566 U.S. at 72-73). Specifically, the courts assess "whether the claim limitations *other than* the invention's use of the ineligible concept to which it was directed were well-understood, routine, and conventional." *Bridge & Post, Inc. v. Verizon Commc'ns*, Inc., 778 F. App'x 882, 892 (Fed. Cir. 2019) (citing *BSG Tech LLC*, 899 F.3d at 1290) (emphasis in original).

Claim 37 of the '376 Patent does not contain an "inventive concept" and there is no element or combination of elements that adds "significantly more" to the claim. Importantly, the abstract idea itself—the offer of an incentive as compensation for the transmission of the content—cannot provide this inventive concept to save the claim. *See BSG Tech LLC*, 899 F.3d at 1290 ("a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept"). Thus, the inventive concept must be present in the remainder of the claim in order to survive *Alice* step two.

Plaintiff alleges that claimed invention discloses "a particular architecture and way in which the provisioning of specified high-bandwidth content over the Internet can be accomplished from a core server to a client." Dkt. 27, ¶ 82. Such allegations are insufficient to overcome the fact that the claim language itself, when stripped of the limitation requiring "incentivization as compensation," merely recites receiving and delivering data between conventional devices. Courts have found such features to be routine computer functions, insufficient to provide an inventive concept. *See, e.g., Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1329 (Fed. Cir. 2017) (finding "the sending and receiving information to execute the database search, e.g., receiving a request for information and delivering record" to be "routine computer functions"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (holding "[t]hat a computer receives and sends the information over a network—with no further specification—is not even arguably

inventive"); *Elec. Power Grp.*, 830 F.3d at 1355 ("[I]nvocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea") (internal quotations omitted).

Moreover, contrary to Plaintiff's attempt to frame the claimed invention as "a particular architecture," the only claimed network components are routine servers, fulfilling requests from clients.  Dkt. 27, ¶ 82; *see, supra,* Section III(B) (highlighting the specification's description of known network systems).  Indeed, the '376 Patent goes to great lengths to explain that the claimed features regarding the network and content distribution were conventional:

> "In general, the invention can be implemented **using any content distribution network**. For example, the invention can be implemented to facilitate distribution of content **over a computer network such as the Internet (and, in particular, the World Wide Web portion of the Internet**)." (4:63-67)

> "[W]hen the invention is implemented on the Internet, **conventional software and hardware, as is well known, can be used to transmit an appropriate Web page or pages from a computer** at a core server network site to a computer at the client network site in response to a request received by the core server from the client for an identification of the content available for transmission to the client." (8:36-43)

> "**Any network site other than one that is part of the core server can potentially perform the functions of a node server** in a system according to the invention." (10:19-22)

> "[T]hese functions can be accomplished **using a conventional Web browser** that enables a prospective client to access a Web site maintained on the core server. The core server can be implemented to enable the client to communicate with the core server prior to requesting particular content to learn about characteristics of that content and/or possible node servers from which that content can be obtained, so that the client owner can make a preliminary assessment regarding whether it is feasible or desirable to obtain the content." (14:1-10)

Ex A., '376 Patent.  Both the "node server" and "client" of the claim can be implemented on a personal computer.  *See id.* at 11:39-55, 11:61-67, 13:38-44, 13:50-54; *SAP Am., Inc.*, 898 F.3d at 1168 ("the specification makes clear that off-the-shelf computer technology is usable to carry out the analysis").  In light of the specification, the claims require nothing more than "off-the-shelf,

conventional computer ... technology for gathering, sending, and presenting the desired information." *Elec. Power Grp.*, 830 F.3d at 1355.

Plaintiff also admits that there were known content distribution systems using multiple nodes to provision content over a network, and thus, that the alleged invention is simply paying third parties to use already-existing servers. *See* Dkt. 27, ¶ 105-107. For example, the Amended Complaint provides that "as of the priority date of the Patent-in-Suit, there have been various, albeit vastly inferior, means outside of the claimed invention for achieving the ends of provisioning high-bandwidth content over a network, including on the Internet"—and said "approaches included local clustering of servers in a single location; deploying clusters in a few locations and synching or mirroring the clusters; and/or using multiple internet service providers ('ISPs') to connect to the Internet (referred to as 'multihoming')." *Id.*, ¶ 46; *see also id.*, ¶ 104.

Further, irrespective of Plaintiff's arguments, the unclaimed technical improvements explored in the specification of the '376 Patent are legally irrelevant. The patent owner did not connect "a particular architecture" capable of provisioning "specified high-bandwidth content over the Internet" to the claims. *See generally* Section III(C). Rather, the patent owner chose to draft the claims with generic network components. And a court need not consider unclaimed elements in a Section 101 inquiry, as the focus is solely on the claims. *See Dealertrack, Inc.*, 674 F.3d at 1334; *see also AuthWallet, LLC*, 602 F. Supp. 3d at 635.

### iii.   Claim 37 Is Representative of the Claims of the '376 Patent

Plaintiffs admit in the Amended Complaint that Claims 37 and 57 are "exemplary" of the claims of the '376 patent. Dkt. 27, ¶ 87. Claim 37 is the only claim charted (i.e., the only claim for which there are claims of infringement); therefore, only "exemplary" claim 37 is explicitly addressed herein. Claim 57 is a "method" claim with steps similar to the limitations of claim 37.

If Plaintiff were to assert one or more of the other independent claims of the '376 Patent, including claim 57, those claims are functionally identical in that they are all linked to the same abstract idea as claim 37 and fail to claim eligible subject matter for the same reasons.  *See* Ex. A, '376 Patent at claims 1, 35-37, 55-57, 90 (all independent claims requiring that the owner of the "node server is offered an incentive as compensation").  The only difference is the form in which the claims were drafted, which does not affect the subject matter eligibility analysis.  *See, e.g., Realtime Tracker, Inc.*, 659 F. Supp. 3d at 408 (quoting *Bancorp Servs., L.L.C.*, 687 F.3d at 1277). Some dependent claims recite features that are not explicitly mentioned in their corresponding independent claims, such as topological proximity considerations.  But, as compared to claim 37 and the other independent claims all requiring "incentive as compensation," these claims do not "differ in any manner that is material to the patent-eligibility inquiry."  *See Realtime Tracker, Inc.*, 659 F. Supp. 3d at 395 (quoting *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016)).  Thus, as the Plaintiff suggests, the Court may treat claim 37 as representative or "exemplary" of the others.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348-49 (Fed. Cir. 2014); *Automated Tracking Sols., LLC v. The Coca-Cola Co.*, 723 Fed. Appx. 989, 991 (Fed. Cir. 2018)/

**B.    The Amended Complaint Fails to State a Claim Because It Does Not Plausibly Allege All Limitations of the Asserted Claim**

Plaintiff's Amended Complaint fails to state a plausible claim for patent infringement under the *Iqbal*/*Twombly* standard because Plaintiff has not sufficiently alleged that all limitations of the claim are covered by the accused streaming app.

Claim 37 requires "instructions for ascertaining that **the node server** transmitted **the specified content** to the client, wherein an owner of **the node server** is offered an incentive as compensation for transmission of **the specified content** to the client."  Ex. A, '376 Patent, 28:5-9

(emphasis added).   In other words, the claim requires that the computer program includes instructions to verify that a particular node server ("the node server") delivered particular content ("the specified content") to a client, and that the owner of that particular node server is compensated for the delivery of the particular content to the client.   Plaintiff has failed to plausibly allege these required features of the claim.   Instead, Plaintiff broadly alleges that content is *received* by a client using the app, and that there "must" be compensation for third-party storage and transmission services.   *See* Dkt. 27-2, pp. 13-17.   This is plainly deficient.

As to "instructions for ascertaining that the node server transmitted the specific content to the client," Plaintiff alleges that this is shown by the *client's receipt* of specified content—i.e., transmission of data packets and a URL.   *See* Dkt. 27-2, pp. 13-15.   There are no factual allegations relating to "ascertaining," let alone facts that would support an allegation that Defendants' streaming app includes "instructions" to confirm whether a particular node server has delivered the requested content to a given client.   Plaintiff does include the unsupported assertion that "instructions stored on the main server ascertain[] that the specified content is being transmitted to the user from the requested node server."   *Id.*   at p. 14.   However, boilerplate statements that merely track the claim language, without support, are insufficient to survive a motion to dismiss. *See, e.g., Bot M8 LLC*, 4 F.4th at 1355   (affirming dismissal when "allegations are conclusory, merely track the claim language, and do not plausibly allege" limitations of the claim).

As to "compensation," Plaintiff asserts that Defendants' app "offer[s] an incentive as compensation [to an owner of a node server] for transmission of the specified content to the client" by citing non-party Akamai's pricing plans. Dkt. 27-2, p. 16.   Plaintiff makes no factual allegations that any "incentive as compensation" is provided to Akamai for transmitting "the specified content to the client" and instead assumes that "it must be Showtime offers an incentive as compensation

to the owner of the node server (e.g., Akamai Technologies) for storage and transmission of the content to the user." *Id.* Plaintiff fails to link this incentivization to providing particular content to a particular client, rather than payment for generic hosting functions.

Because Plaintiff's allegations in the Amended Complaint and attached claim chart do not plausibly allege infringement of the '376 Patent, and because Defendants previously identified this exact deficiency in the original Complaint, dismissal with prejudice is appropriate here.

### C.    Plaintiff's Direct Infringement Allegations Are Insufficient

Under the *Iqbal/Twombly* pleading standards, a claim for infringement must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Plaintiff's direct infringement allegations are deficient, and the flaws in its reasoning are apparent in two ways: (i) according to Plaintiff, the claim requires a "tangible thing" in the form of a computer readable storage medium or media, but Plaintiff has not alleged that Defendants make, use, sell, or offer to sell any such object as would be required for direct infringement under 35 U.S.C. §271(a); and (ii) Plaintiff inconsistently mapped the "instructions" to both the client's device and the "main server," thereby undermining its direct infringement allegations.

First, Plaintiff alleges that "the computer readable storage media, client, core server, node server, and network interfaces [of the claims] **are physical and/or tangible things**."  Dkt. 27, ¶ 85 (emphasis added) (internal citation omitted).  Plaintiff further alleges that Defendants "makes, uses, sells, and/or offers to sell an app that includes instruction for effecting the provision of content (e.g., music, comedy, or podcasts) over a network."  *See id.*, ¶ 8; *see also* Dkt. 27-2, p. 1 (alleging Defendants provide a streaming app that is "the media encoded with a computer program").  Thus, if we accept Plaintiff's own assertions as true, there must exist a tangible object with the accused "instructions," and a plausible allegation that Defendants have made, used, sold,

or offered for sale this object.  *See* 35 U.S.C. § 271(a).  However, Plaintiff fails to identify any

such tangible object, or articulate plausible facts showing that such an object contains the claimed

instructions.  *See Bot M8 LLC*, 4 F.4th at 1354.  For at least this reason, the direct infringement

claim fails.

Second, Plaintiff provides inconsistent mapping throughout the claim charts, alleging the

presence of the claimed "instructions" on both the client device and a "main server."  Because

Plaintiff's allegations rely on instructions in at least two places, it is not plausible that Defendants

have made, used, sold, or offered to sell a "computer readable storage medium or media encoded"

with all of the "instructions" recited in the claim.  There are no facts that could save Plaintiff's

allegations—the structure and wording of the claim precludes its infringement theory.

For example, Plaintiff alleges that the user interface at https://www.sho.com/, which is

presented in a browser on the user's device, demonstrates "instructions for receiving a request

from a client."  *See* Dkt. 27-2, pp. 3-4 (showing use of "the Showtime global navigation menu or

search bar to receive an input request from a user for specified content like movies, series, sports,

comedy, etc.") ("instructions within the app").  For other aspects of the claim, Plaintiff summarily

argues that the evidence shows "the instructions stored on the main server."  *Id.*, pp. 11, 14.  Thus,

according to the Plaintiff, the claimed "instructions" are both evidenced by client-side code and

the Showtime website, and also present on a "main server."  These allegations are internally

inconsistent and inconsistent with the claims.  Moreover, Plaintiff does not allege any link between

the "instructions" on a "main server" and the accused app, which forms the basis of Plaintiff's

direct infringement claim.   *See* Dkt. 27, ¶ 126 ("the Accused Instrumentalities practice the

technology claimed by the '376 Patent").  Because Plaintiff's own incomplete, and inconsistent,

allegations show that the direct infringement claims are not plausible, they should be dismissed.

## VI.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their

motion to dismiss the Plaintiff's Amended Complaint with prejudice.


Dated: June 24, 2024                              Respectfully submitted,

                                    By:    /s/ Sharon L. Davis
                                           Sharon L. Davis (*pro hac vice*)
                                           sdavis@rothwellfigg.com
                                           Steven M. Lieberman (Bar No. SL8687)
                                           slieberman@rothwellfigg.com
                                           Michael H. Jones (*pro hac vice*)
                                           mjones@rothwellfigg.com
                                           Rothwell, Figg, Ernst & Manbeck P.C.
                                           901 New York Avenue, N.W. Suite 900 E
                                           Washington, DC 20001
                                           Telephone: (202) 783-6040
                                           Facsimile: (202) 783-6031

                                           *Attorneys for Defendants Showtime*
                                           *Networks Inc., Showtime Digital Inc., and*
                                           *Paramount Global*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 24, 2024, I filed the foregoing with the Clerk of Court using

the CM/ECF system which will provide notification of such filing to the following:

David A. Ward
**KLUGER HEALEY, LLC**
521 Newman Springs Road, Suite 23
Lincroft, New Jersey 07738
Tel: (973) 307-0800
Fax: (888) 635-1653
dward@klugerhealy.com

Randall Garteiser
**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Tel: (903) 705-7420
Fax: (903) 405-3999
rgarteiser@ghiplaw.com

*/s/ Nasri V. B. Hage*
Nasri V. B. Hage
Rothwell Figg Ernst & Manbeck, P.C.